UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

———————————————————————————

DAVID C. LETTIERI,

                         Plaintiff,

v.                                                                3:23-CV-1547
                                                                  (BKS/ML)

NEW YORK STATE TROOPERS; NEW
YORK STATE TROOPER DOE; THE
BROOME COUNTY HUMANE
SOCIETY; DAVID GASKA; KAREN
MATSON; VESTAL ANIMAL HOSPITAL;
and VESTAL ANIMAL VETERINARIAN
DOE,

                         Defendants.

———————————————————————————

APPEARANCES:                                                      OF COUNSEL:

DAVID C. LETTIERI
  Plaintiff, *Pro Se*
Devens Federal Medical Center
Post Office Box 879
Ayer, Massachusetts 01432


MIROSLAV LOVRIC, United States Magistrate Judge

## **REPORT and RECOMMENDATION**

## I.     BACKGROUND

### A.     Procedural History

Plaintiff David C. Lettieri ("Plaintiff") commenced this civil rights action *pro se* in the

district court for the Western District of New York on June 9, 2023, on a form complaint

alleging that his rights were violated by Defendant New York State Police.  (Dkt. No. 1.)

Plaintiff did not pay the filing fee for this action and sought leave to proceed *in forma pauperis* ("IFP").  (Dkt. No. 2.)

On June 27, 2023, District Judge Lawrence Vilardo administratively terminated the action and directed Plaintiff that, if he wished to reopen the action, he must notify the court in writing within 30 days.  (Dkt. No. 3.)  Judge Vilardo noted that the writing must include either (1) a properly supported motion to proceed IFP with the required certification of Plaintiff's inmate trust fund account and authorization, or (2) the filing fee.  (*Id*.)

On August 21, 2023, Plaintiff filed an amended motion for leave to proceed IFP.  (Dkt. No. 7.)  On December 11, 2023, Judge Vilardo re-opened the matter and ordered that it be transferred to the Northern District of New York.  (Dkt. No. 8.)

On January 29, 2024, the undersigned denied Plaintiff's amended motion for leave to proceed IFP.  (Dkt. No. 10.)  On March 1, 2024, Plaintiff filed a notice of interlocutory appeal seeking review of the undersigned's denial of his IFP motion.  (Dkt. No. 12.)  On July 23, 2024, the Second Circuit dismissed Plaintiff's appeal.  (Dkt. No. 17.)

On January 6, 2025, Chief United States District Judge Brenda K. Sannes directed administrative closure of this action for failure to comply with the filing fee requirement.  (Dkt. No. 20.)

On January 21, 2025, Plaintiff filed a second amended motion for leave to proceed IFP together with an inmate authorization form.  (Dkt. Nos. 21, 22.)  On January 21, 2025, Chief Judge Sannes directed the Clerk of the Court to restore the action to the Court's active docket. (Dkt. No. 23.)

On January 27, 2025, the undersigned denied Plaintiff's second amended motion for leave to proceed IFP as incomplete.  (Dkt. No. 25.)  On April 1, 2025, Chief Judge Sannes

directed that the action be administratively closed for failure to comply with the filing fee requirement.  (Dkt. No. 28.)

On April 21, 2025, Plaintiff filed a third amended motion to proceed IFP.  (Dkt. No. 31.) On April 22, 2025, Chief Judge Sannes directed the Clerk of the Court to restore the action to the Court's active docket.  (Dkt. No. 32.)

On May 6, 2023, the undersigned issued an Order and Report-Recommendation that granted Plaintiff's third amended IFP application and recommended that Plaintiff be granted thirty days from the date that the District Court files its order on the Report-Recommendation within which to file an amended complaint, for initial review by this Court, naming a proper defendant or defendants not subject to the Eleventh Amendment bar as defendant(s) in this action.  (Dkt. No. 33.)

On May 30, 2025, Plaintiff filed an Amended Complaint.  (Dkt. No. 36.)  On June 2, 2025, Chief Judge Sannes reviewed Plaintiff's Amended Complaint and noted that he was permitted to file the Amended Complaint as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1).  (Dkt. No. 39.)  As a result, Chief Judge Sannes rejected the undersigned's Report-Recommendation as moot to the extent that it recommended dismissal of the Complaint and referred the Amended Complaint for initial review pursuant to 28 U.S.C. § 1915.  (*Id.*)

**B.      Amended Complaint**

Construed as liberally[1] as possible, Plaintiff's Amended Complaint appears to allege that

his civil rights were violated by Defendants New York State Troopers,[2] New York State Trooper

Doe, the Broome County Humane Society, David Gaska, Karen Matson,[3] Vestal Animal

Hospital, and Vestal Animal Veterinarian Doe (collectively "Defendants").[4]  (*See generally* Dkt.

No 36.)

The Amended Complaint is far from clear but appears to allege that August 11, 2020,

Plaintiff brought his girlfriend's dog to Defendant Vestal Animal Hospital because the dog

appeared ill.  (Dkt. No. 36 at ¶ 6.)  Plaintiff alleges that he paid $1,000 on a credit card as a down

payment for medical treatment of the dog.  (*Id*. at ¶ 7.)  The Amended Complaint alleges that

Defendant Vestal Veterinarian Doe instructed Plaintiff to call every day for an update on the

progress of the dog.  (*Id*. at ¶ 8.)  Plaintiff alleges that Defendant Vestal Veterinarian Doe

diagnosed Plaintiff's girlfriend's dog with "a nertology disease in which needed physical

therapy."  (*Id*. at ¶ 9.)

---

[1]      The court must interpret *pro se* complaints to raise the strongest arguments they suggest.
*Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790
(2d Cir. 1994)).

[2]      Plaintiff refers to Defendant New York State Police as "New York State Troopers" in the
Amended Complaint.  However, the entities appear to be synonymous.

[3]      Plaintiff's handwriting throughout the Amended Complaint is difficult to decipher.  The
caption of the Amended Complaint appears to refer to defendant "Karen Muten."  (Dkt. No. 36
at 1.)  However, the Amended Complaint refers to a "Karen Matson."  (Dkt. No. 36 at ¶¶ 3, 12.)
For sake of clarity, the undersigned refers to this individual as "Karen Matson."

[4]      The Clerk of the Court is directed to add defendants New York State Trooper Doe, the
Broome County Humane Society, David Gaska, Karen Matson, Vestal Animal Hospital, and
Vestal Animal Veterinarian Doe, to the caption of this action.

Plaintiff alleges that he was instructed to pick the dog up on August 18, 2020, so that treatment could continue at home.  (Dkt. No. 36 at ¶¶ 11-12.)  Plaintiff alleges that upon arrival at Defendant Vestal Animal Hospital, he paid an additional $2,000 to an individual that he thought was an employee but was Defendant Matson.  (*Id*. at ¶ 13.)[5]  The Amended Complaint alleges that approximately twenty minutes later, "a state trooper" arrived and threatened to arrest Plaintiff if he did not surrender the dog to Defendant Broome County Humane Society.  (*Id*.)[6]

The Amended Complaint alleges that Defendant Gaska directed Plaintiff to sign a form[7] and Plaintiff questioned Defendant Gaska about a lawsuit related to the wrongful killing of Plaintiff's cat.  (Dkt. No. 36 at ¶ 14.)  Plaintiff alleges that "the state trooper" threatened to assault and arrest Plaintiff if he did not sign the form.  (*Id*. at ¶ 15.)  The Amended Complaint alleges that Plaintiff had "no ownership to the animal in which he could sign it over."  (Dkt. No. 36 at ¶ 17.)

Plaintiff alleges that at some unspecified time later he "found out" that on August 11, 2020, Defendant Gaska came onto his property and killed six rats, two rabbits, and four guinea pigs.  (Dkt. No. 36 at ¶ 18.)  The Amended Complaint also alleges that Defendant Gaska stole Plaintiff's laptop.  (*Id*. at ¶ 19.)

Plaintiff alleges that he went to the office of Defendant New York State Troopers to file a report and have Defendant Gaska arrested but was told to file a lawsuit.  (*Id*. at ¶ 20.)

---

[5]    The Amended Complaint contains two paragraphs labeled 13.  The allegations contained herein span the bottom of page 2 and top of page 3 of the Amended Complaint.

[6]    The allegations contained herein are the first full paragraph contained on page 3 of the Amended Complaint.

[7]    It is unclear what the form is that the Amended Complaint refers to.

The Amended Complaint alleges that Defendant Broome County Humane Society is deputized to act as a peace officer with respect to New York State Agriculture and Market laws. (Dkt. No. 36 at ¶ 21.)

Plaintiff alleges that Defendants have refused to refund him any of the money that was "taken." (*Id.* at ¶ 22.)

Based on these factual allegations, the Amended Complaint asserts the following fourteen causes of action: (1) a claim of unlawful search and seizure pursuant to the Fourth Amendment and 42 U.S.C. § 1983 against Defendants related to the taking of Plaintiff's girlfriend's dog ("First Claim"); (2) a claim of slander and libel based on statements Defendants made that Plaintiff is a person who abuses animals ("Second Claim"); (3) a claim of abuse of process based on the threat to arrest Plaintiff ("Third Claim"); (4) a claim that Plaintiff's right against unreasonable searches and seizures has been violated by Defendants pursuant to the Fourth Amendment and 42 U.S.C. § 1983 ("Fourth Claim"); (5) a claim that Defendant Gaska "forc[ed] Plaintiff] to surrender property" in violation of the Fourth Amendment and 42 U.S.C. § 1983 ("Fifth Claim"); (6) a claim of excessive force against Defendant State Trooper Doe based on his threatened use of bodily harm ("Sixth Claim"); (7) a claim that Defendants committed the crime of frauds and swindles pursuant to 18 U.S.C. § 1341 ("Seventh Claim"); (8) a claim that Defendants committed the crime of fraud by wire, radio, or television pursuant to 18 U.S.C. § 1343 ("Eighth Claim"); (9) a claim that Defendants committed common law fraud ("Ninth Claim"); (10) a claim that Defendants committed the crime of interference with commerce by threats or violence pursuant to 18 U.S.C. § 1951 ("Tenth Claim"); (11) a claim that Defendants committed the crime of laundering monetary instruments pursuant to 18 U.S.C. § 1956 ("Eleventh Claim"); (12) a claim that Defendants New York State Troopers, Broome County

Humane Society, and Vestal Animal Hospital are all liable pursuant to *Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978) ("Twelfth Claim"); (13) a claim that Defendant New York State Trooper Doe violated Plaintiff's right to counsel pursuant to the Sixth Amendment and 42 U.S.C. § 1983 ("Thirteenth Claim"); and (14) a claim that Defendant Vestal Animal Hospital committed malpractice ("Fourteenth Claim").  (Dkt. No. 36 at 4-11.)  As relief, Plaintiff seeks monetary damages, and injunctive relief in the form of, *inter alia*: (1) termination of Defendants Gaska, Matson, and Vestal Animal Veterinarian Doe, (2) termination of the right to practice medicine with respect to Defendant Vestal Animal Hospital, and (3) reformation of policies.

Plaintiff was granted IFP status.  (Dkt. No. 33.)

## II.    LEGAL STANDARD FOR INITIAL REVIEW OF THE COMPLAINT

Because Plaintiff is proceeding *in forma pauperis*, his Amended Complaint must be reviewed in accordance with 28 U.S.C. § 1915(e)(2)(B).  The legal standard governing review of a pleading pursuant to 28 U.S.C. § 1915(e)(2)(B) was discussed at length in the Order and Report-Recommendation issued by the undersigned dated May 5, 2025.  (Dkt. No. 33 at 5-6.)

## III.    ANALYSIS

### A.    Claims Pursuant to 42 U.S.C. § 1983

#### 1.    Plaintiff's Claims Against Defendant New York State Troopers and New York State Trooper Doe in his Official Capacity

New York State is immune from suits pursuant to 42 U.S.C. § 1983 seeking either legal or equitable relief, under the Eleventh Amendment.  *Papasan v. Allain,* 478 U.S. 265, 276 (1986); *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 98-100 (1984); *see Ognibene v. Niagara Cnty. Sheriff's Dep't*, 03-CV-0678, 2003 WL 24243989, at *3 (W.D.N.Y. Dec. 1, 2003) ("To the extent the plaintiff names various state courts as defendants and seeks either legal or equitable relief against them under § 1983, they are immune from such suit under

7

the Eleventh Amendment.").  The Eleventh Amendment's immunity extends to the New York

State Police as an agency of the State of New York.  *See, e.g., Riley v. Cuomo*, 17-CV-1631,

2018 WL 1832929, *4 (E.D.N.Y. Apr. 16, 2018) (holding that the New York State Police, as a

division in the executive department of the State, is immune from claims under § 1983);

*Finkelman v. New York State Police*, 06-CV-8705, 2007 WL 4145456, *3 (S.D.N.Y. Nov. 15,

2007) (holding that the Eleventh Amendment barred the plaintiff's suit seeking monetary

damages under § 1983 against New York State Police).

In addition, any claim against a government employee in his official capacity is treated as

a claim against the municipality.  *Malay v. City of Syracuse*, 638 F. Supp. 2d 303, 311 (N.D.N.Y.

July 14, 2009) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).  Thus, any claims that Plaintiff

asserts against Defendant New York Trooper Doe in his official capacity should be dismissed

based on Eleventh Amendment immunity as well.[8]

As a result, I recommend that Plaintiff's claims against Defendant New York State

Troopers and New York State Trooper Doe in his official capacity be dismissed because they are

immune from suit.

### 2.    Claims Against Defendant Broome County Humane Society

"Because the United States Constitution regulates only the Government, not private

parties, a litigant claiming that his constitutional rights have been violated must first establish

that the challenged conduct constitutes state action."  *Flagg v. Yonkers Sav. & Loan Ass'n,* 396

---

[8]    A § 1983 claim for monetary damages properly brought against a state trooper in his or her individual capacity is not barred by the Eleventh Amendment.  *See Estes-El v. Town of Indian Lake*, 954 F. Supp. 527, 537 (N.D.N.Y. Feb. 4, 1997) (Munson, J.).  Individual capacity suits seek to impose individual liability upon a government officer who has caused the deprivation of a federal right while acting under color of state law.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

F.3d 178, 186 (2d Cir. 2005) (internal quotation marks omitted).  "A plaintiff pressing a claim of

violation of his constitutional rights under § 1983 is thus required to show state action."

*Tancredi v. Metro. Life Ins. Co.,* 316 F.3d 308, 312 (2d Cir. 2003); *see also Brentwood Acad. v.*

*Tenn. Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 295 n. 2 (2001) ("If a defendant's conduct

satisfies the state-action requirement of the Fourteenth Amendment, the conduct also constitutes

action 'under color of state law' for § 1983 purposes.").

"[S]tate action requires both an alleged constitutional deprivation 'caused by the exercise

of some right or privilege created by the State or by a rule of conduct imposed by the State or by

a person for whom the State is responsible,' and that 'the party charged with the deprivation

must be a person who may fairly be said to be a state actor.'"  *Am. Mfrs. Mut. Ins. Co. v.*

*Sullivan,* 526 U.S. 40, 50 (1999) (quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937

(1982)).  "Conduct that is formally 'private' may become so entwined with governmental

policies or so impregnated with a governmental character that it can be regarded as governmental

action."  *Rendell–Baker v. Kohn,* 457 U.S. 830, 847 (1982) (internal quotation marks omitted).

But a private entity does not become a state actor for purposes of § 1983 merely on the basis of

"the private entity's creation, funding, licensing, or regulation by the government."  *Cranley v.*

*Nat'l Life Ins. Co. of Vt.,* 318 F.3d 105, 112 (2d Cir. 2003).  Rather, "there must be such a close

nexus between the [s]tate and the challenged action" that the state is "*responsible* for the specific

conduct of which the plaintiff complains."  *Cranley*, 318 F.3d at 111 (internal quotation marks

omitted).

Supreme Court cases on the subject of state action "have not been a model of

consistency," and we therefore have "no single test to identify state actions and state actors.

Rather, there are a host of factors that can bear on the fairness of an attribution of a challenged

action to the State." *Cooper v. U.S. Postal Serv.,* 577 F.3d 479, 491 (2d Cir. 2009) (internal

quotation marks omitted). Three main tests have emerged:

> For the purposes of section 1983, the actions of a nominally private entity
> are attributable to the state . . . (1) [when] the entity acts pursuant to the
> coercive power of the state or is controlled by the state ("the compulsion
> test"); (2) when the state provides significant encouragement to the entity,
> the entity is a willful participant in joint activity with the state, or the
> entity's functions are entwined with state policies ("the joint action test"
> or "close nexus test"); or (3) when the entity has been delegated a public
> function by the state ("the public function test").

*Sybalski v. Indep. Grp. Home Living Program, Inc.,* 546 F.3d 255, 257 (2d Cir. 2008) (internal

quotation marks, brackets, and punctuation omitted). The fundamental question under each test is

whether the private entity's challenged actions are "fairly attributable" to the state. *Rendell–*

*Baker,* 457 U.S. at 838, 102 S.Ct. 2764; *see also Am. Mfrs. Mut. Ins. Co.,* 526 U.S. at 50, 119

S.Ct. 977; *Cooper,* 577 F.3d at 491.

Here, the Amended Complaint alleges that "a state trooper . . . threat[ened] to arrest the

plaintiff if [he] didn't surrender the dog to the Broome County Humane Society" (Dkt. No. 36 at

¶ 13) and that "[t]he Broome County Humane Society is clothed with state law, New York State

Law because of making them a peace officer in the agriculture and market laws." (Dkt. No. 36

at ¶ 21.) These allegations fail to plausibly suggest that Defendant Broome County Humane

Society violated Plaintiff's constitutional rights; in fact, these allegations fail to allege that

Defendant Broome County Humane Society took <u>any</u> action against Plaintiff.

Moreover, the Amended Complaint fails to allege facts plausibly suggesting that

Defendant Broome County Humane Society's alleged actions are fairly attributable to the state.

In *Fabrikant v. French*, the Second Circuit held that inspectors for the Society for Prevention of

Cruelty to Animals (SPCA) were state actors when they seized, detained, and performed surgery

on animals previously cared for by the plaintiff during the "exercise[e of] investigatory and law-

enforcement powers—powers that indisputably constitute state action." *Fabrikant v. French*, 691 F.3d 193, 208.

Here, the Amended Complaint fails to allege facts plausibly suggesting the exercise of any power constituting state action by Defendant Broome County Humane Society. Even construing the Amended Complaint with the utmost liberality—as is discussed below in Parts III.A.3 and III.A.6. below—the actions allegedly taken by Defendants Matson and Gaska fail to plausibly suggest the exercise of any investigatory or law enforcement powers.

As a result, I recommend that Plaintiff's claims against Defendant Broome County Humane Society be dismissed for failure to state a claim upon which relief may be granted.

### 3.    Claims Against Defendant Matson

The Amended Complaint appears to allege that Defendant Matson is an employee of Defendant Broome County Humane Society. (Dkt. No. 36 at ¶ 3.) A careful review of the Amended Complaint reveals that Defendant Matson is listed in the caption,[9] mentioned in the list of defendants (Dkt. No. 36 at ¶ 3), and it is alleged that she accepted Plaintiff's $2,000 payment on August 18, 2020 (*id.* at ¶ 13). (*See generally* Dkt. No. 36.)

To hold an individual liable for damages in a section 1983 action, a plaintiff must allege that the individual was "personally involved" in the constitutional violation of which he complains. *See Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). Thus, the Amended Complaint fails to state a cognizable claim against Defendant Matson. *See,*

---

[9]    As set forth above in note 3, Plaintiff appears to refer to Defendant Matson as "Karen Muten" in the caption.

*e.g., Cipriani v. Buffardi*, 06-CV-0889, 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007) (citation omitted) ("A complaint cannot be maintained against a defendant who is listed in the caption, but against whom no facts are alleged in the body of the complaint.").

Plaintiff's sole allegation that Defendant Matson accepted his payment on August 18, 2020, fails to plausibly suggest her involvement in a constitutional violation.  Moreover, these allegations fail to plausibly suggest that Defendant Matson was a state actor in her acceptance of payment.

As a result, I recommend that any claims against Defendant Matson be dismissed for failure to state a claim upon which relief may be granted.

### 4.    Plaintiff's First Claim: Unreasonable Seizure

Plaintiff's first cause of action is an unlawful seizure claim pursuant to the Fourth Amendment and is asserted against all Defendants.  (Dkt. No. 36 at 4.)  Plaintiff alleges that Defendants unlawfully took his girlfriend's dog.  (*Id*.)

Under the Fourth Amendment, a "seizure of property occurs when there is some meaningful interference with an individual's possessory interests in that property."  *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).  "The unreasonable removal or killing of a companion animal constitutes an unconstitutional seizure of personal property under the Fourth Amendment."  *Carroll v. County of Monroe*, 712 F.3d 649, 651 (2d Cir. 2013).  To claim an unconstitutional seizure, "a party must first assert a possessory interest in an item seized."  *United States v. Fields*, 113 F.3d 313, 320 (2d Cir. 1997).  If a possessory interest is established, a court must then assess whether the seizure was reasonable under the Fourth Amendment, which requires a court to "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interest alleged to

justify the intrusion and determine whether the totality of the circumstances justified the particular sort of seizure."  *Carroll*, 712 F.3d at 651; *see also Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 71 (1992).

Here, Plaintiff alleges that he had "no ownership to the animal" and was not authorized to sign over any rights to the dog.  (Dkt. No. 36 at ¶ 17.)  Throughout the Amended Complaint, Plaintiff consistently refers to the dog as his girlfriend's dog.  (*See, e.g.,* Dkt. No. 36 at ¶¶ 5, 6, 9, 16, 23, 40.)  Hence, Plaintiff fails to assert a possessory interest in the dog allegedly seized.

As a result, I recommend that Plaintiff's unlawful seizure claim pursuant to the Fourth Amendment and 42 U.S.C. § 1983 against Defendants (Dkt. No. 36 at 4) be dismissed for failure to allege standing.[10]  *See Newsome v. Bogan*, 617 F. Supp. 3d 133, 146 (W.D.N.Y. 2022) (denying a motion for summary judgment where the plaintiff claimed that the dogs that were seized were his and provided evidence regarding his ownership of the dogs).

### 5.    Plaintiff's Third Claim: Abuse of Process

Plaintiff's third cause of action for abuse of process is asserted against Defendant New York State Trooper Doe and alleges that he improperly threatened to arrest Plaintiff, which "would have started a process that would [have] been dragged out [until] the [D]efendants got what they wanted."  (Dkt. No. 36 at 5.)

"Abuse of process has three essential elements: (1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in

---

[10]    Plaintiff's Fifth Claim alleges that Defendant Gaska "forc[ed him] to surrender property" which "could" have "violated the privilege of the Supreme Court" pursuant to *Stone v. Powell*, 428 U.S. 465 (1976).  (Dkt. No. 36 at ¶¶ 28-29 [there are two paragraphs labeled number 29, this citation refers to the paragraph labeled 29 that spans the bottom of page 5 and to the top of page 6 of the Amended Complaint].)  To the extent that Plaintiff refers to the surrender of his girlfriend's dog, he fails to allege a possessory interest in the dog and thus, lacks standing to pursue this claim.

a perverted manner to obtain a collateral objective." *Curiano v. Suozzi*, 469 N.E.2d 1324, 1326

(N.Y. 1984). More specifically, "[t]o prove abuse of process, plaintiff must show [the following

three elements]: (1) regularly issued process compelling the performance or forbearance of some

prescribed act, (2) the person activating the process must have been motivated to do harm

without economic or social excuse or justification, and (3) the person activating the process must

be seeking some collateral advantage or corresponding detriment to the plaintiff which is outside

the legitimate ends of process." *Bernard v. United States*, 25 F.3d 98, 104 (2d Cir. 1994) (citing

*Hornstein v. Wolf*, 109 A.D.2d 129, 134 (N.Y. App. Div., 2d Dep't 1985), *aff'd*, 67 N.Y.2d 721

(N.Y. 1986)); *see also Bd. of Ed. of Farmingdale Union Free Sch. Dist. v. Farmingdale

Classroom Teachers Ass'n, Inc., Local 1889 AFT AFL-CIO*, 38 N.Y.2d 397, 403-04 (N.Y. 1975)

("Despite the paucity of New York authority, three essential elements of the tort of abuse of

process can be distilled from the preceding history and case law. First, there must be regularly

issued process, civil or criminal, compelling the performance or forbearance of some prescribed

act. Next, the person activating the process must be moved by a purpose to do harm without that

which has been traditionally described as economic or social excuse or justification . . . Lastly,

defendant must be seeking some collateral advantage or corresponding detriment to the plaintiff

which is outside the legitimate ends of the process.") (citations omitted)

   With regard to the first element, the "process" in question must be "initiated . . . against

[the] plaintiff." 14 *N.Y. Prac., New York Law of Torts* § 1:88: "Abuse of process—Use of

regularly issued process" (Aug. 2023) (citing, *inter alia, Williams v. Williams*, 23 N.Y.2d 592,

596 (N.Y. 1969) ("Process is a direction or demand *that the person to whom it is directed* shall

perform or refrain from the doing of some prescribed act.") (emphasis added)). Moreover, the

"process" must be "issued by or filed in a court . . . ." *Id.* (citing *Glaser v. Kaplan*, 5 A.D.2d 829

(N.Y. App. Div., 2d Dep't 1958) ("The first cause of action . . . is not sufficient as one for abuse of process since the notice of lien and sale served and published by appellants was not process issued by or filed in a court.")).

Here, Plaintiff fails to allege facts plausibly suggesting the initiation of any process filed with a court. Instead, the process that Plaintiff alleges is an out-of-court threat to arrest Plaintiff. As this Court has recently held, "although an arrest is the sort of provisional remedy whose use may constitute an unlawful interference with the plaintiff's person or property, *threatening* to arrest the plaintiff . . . is not a legal process that is capable of being abused, because . . . a mere *threat* to effect a warrantless arrest—is not a legal process that is *regularly issued by or filed in a court* (unlike, for example, an arrest *warrant* issued by a judge, or the application for such a warrant which is filed in a court)." *Xydous v. City of Utica*, 24-CV-0135, 2025 WL 1755201, at *12 (N.D.N.Y. June 25, 2025) (Suddaby, J.).

As a result, I recommend that Plaintiff's abuse of process claim be dismissed for failure to state a claim upon which relief may be granted.

### 6.      Plaintiff's Fourth and Fifth Claims: Unlawful Search and Seizure Claim

The crux of Plaintiff's grievance appears to be the alleged unlawful taking of his girlfriend's dog and the circumstances surrounding that taking. (*See generally* Dkt. No. 36.) The Amended Complaint does not appear to challenge an allegedly unlawful search in this action. Hence, this claim appears to be duplicative of Plaintiff's First Claim which relates to the allegedly unlawful seizure of Plaintiff's girlfriend's dog. (*See* Part III.A.4. of this Report and Recommendation.) As a result, I recommend that it be dismissed for the reasons set forth above.

To the extent that these claims are construed as an unlawful search claim, I recommend that they be dismissed for failure to state a claim upon which relief may be granted.

When analyzing whether the challenged search violated an individual's Fourth Amendment rights, courts must first determine whether the search infringed on an interest of the individual that the Fourth Amendment was designed to protect. *Rakas v. Illinois*, 439 U.S. 128, 140 (1978). In other words, a party challenging a search must show a "legally cognizable privacy interest in the searched premises at the time of the search." *United States v. Ruggiero*, 824 F. Supp. 379, 391 (S.D.N.Y. 1993) (citing *Rawlings v. Kentucky*, 448 U.S. 98 (1980); *United States v. Salvucci*, 448 U.S. 83 (1980)). "[P]roperty rights are not the singular measure of Fourth Amendment violations;" *Soldal v. Cook Cnty.*, 506 U.S. 56, 64 (1992), "'the Fourth Amendment protects people, not places.'" *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018) (quoting *Katz v. United States*, 389 U.S. 347, 351 (1967)). "To succeed on a Fourth Amendment claim alleging an unlawful search, a plaintiff must demonstrate standing, which requires a showing that he had a reasonable expectation of privacy in the place that was searched." *Tarantino v. City of Ornell*, 615 F. Supp. 2d 102, 109 (W.D.N.Y. 2009), abrogated on other grounds, *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F. 3d 135 (2d Cir. 2010).

To the extent that an unlawful search claim is premised on Defendant Gaska's alleged presence on Plaintiff's property on August 11, 2020, it fails for two reasons.

First, the Amended Complaint fails to allege facts suggesting that Plaintiff had a reasonable expectation of privacy where Defendant Gaska allegedly was. More specifically, the Amended Complaint alleges merely that at some future time, Plaintiff "found out" that Defendant Gaska "came on the plaintiff['s] property." (Dkt. No. 36 at ¶ 18.) It is unclear where on Plaintiff's property that Defendant Gaska allegedly entered. For example, individuals have no reasonable expectation of privacy in outdoor common areas of apartment complexes. *Alicea v. City of Bridgeport*, No. 23-7435, 2025 WL 1982127, at *2 (2d Cir. July 17, 2025) (summary

order).  Moreover, surrounding areas of a home that a reasonable person would understand they could use to ingress and egress without trespassing are not considered curtilage of the home and may be accessed without a warrant.  *Alexander v. City of Syracuse*, 132 F.4th 129, 155 (2d Cir. 2025).  Hence, the Amended Complaint fails to allege facts plausibly suggesting that Defendant Gaska violated a reasonable expectation of privacy with his presence on Plaintiff's property.

Second, the Amended Complaint fails to allege facts plausibly suggesting that Defendant Gaska was a state actor during the alleged incident on August 11, 2020.  (*See generally* Dkt. No. 36.)  More specifically, the Amended Complaint fails to allege that Defendant Gaska, who appears to be an employee of Defendant Broome County Humane Society (Dkt. No. 36 at ¶ 3) was acting in concert with—or at the direction of—the state when he allegedly entered Plaintiff's property and killed six rats, two rabbits, and four guinea pigs.  (*Id*.); *see e.g., Newsome v. Bogan*, 795 F. App'x 72, 73 (2d Cir. 2020) (summary order) (holding that the complaint adequately alleged state involvement of the humane society and its representative (Plyter) where it alleged that (1) Plyter, in concert with the state, seized dogs from the plaintiff's house , (2) the police department instructed Plyter to consider the dogs abandoned, and (3) the police department instructed Plyter to not release the dogs to the plaintiff).

As a result, I recommend that Plaintiff's unlawful search claims be dismissed for failure to state a claim upon which relief may be granted.

### 7.    Plaintiff's Sixth Claim: Excessive Force

Plaintiff asserts that "the state trooper had threaten[ed him] with excessive force of bodily harm . . . to cover up the destruction of the dog."  (Dkt. No. 36 at ¶ 29 [page 6].)  Plaintiff's excessive force claim is thus, "best characterized as premised upon the threat of force.  As courts in this circuit have invariably held, threats of force, including the drawing of a gun, cannot

constitute excessive force as a matter of law." *Pierre v. City of New York*, 531 F. Supp. 3d 620, 627 (E.D.N.Y. 2021) (citing *Cabral v. City of New York*, 12-CV-4659, 2014 WL 4636433, at *11 (S.D.N.Y. Sept. 17, 2014) (collecting cases and dismissing claim based on drawing of gun), *aff'd*, 662 F. App'x 11 (2d Cir. 2016); *Just v. McGovern*, 11-CV-5076, 2013 WL 1809634, at *2 (E.D.N.Y. Apr. 29, 2013) (collecting cases)).

As a result, I recommend that Plaintiff's excessive force claim be dismissed for failure to state a claim upon which relief may be granted.

### 8.    Plaintiff's Thirteenth Claim: Right to Counsel

Plaintiff alleges that his Sixth Amendment right to counsel was violated when he requested a lawyer after he was threatened with arrest if he did not surrender his girlfriend's dog. (Dkt. No. 36 at ¶¶ 13, 46.)

In general, "a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him." *Kirby v. Illinois*, 406 U.S. 682, 688 (1972); *see also Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 349 (2d Cir. 1998) (quoting *Kirby*, 406 U.S. 688). When "the underlying charges against [a plaintiff] were state charges, the Court looks to state law to determine when the adversarial proceedings were initiated." *Nimkoff v. Dollhausen*, 751 F. Supp. 2d 455, 465 (E.D.N.Y. 2010) (citing *Deshawn E.*, 156 F.3d at 349). "Generally, New York State courts hold that 'a criminal proceeding, and with it the right to counsel, is initiated by the filing of an accusatory instrument.'" *Nimkoff*, 751 F. Supp. 2d at 465 (quoting *Deshawn E.*, 156 F.3d at 349). "In addition, the right to counsel attaches 'if substantial rights of the accused may be affected by a particular proceeding . . . .'" *Nimkoff*, 751 F. Supp. 2d at 465 (quoting *Meadows v. Kuhlmann*, 812 F.2d 72, 76 (2d Cir. 1987)). "[I]n New York State [this] includes 'when a defendant was

brought to the scene of the crime by court order, placed in a post-indictment lineup, or compelled to appear before a grand jury.'"  *Nimkoff*, 751 F. Supp. 2d at 465 (quoting *Deshawn E.*, 156 F.3d at 349).

Based on the allegations contained in the Amended Complaint, Plaintiff's request for counsel appears to have occurred during an investigatory juncture and not during a time when a court has jurisdiction over Plaintiff.  (Dkt. No. 36 at ¶¶ 13, 46.)  As a result, I recommend that Plaintiff's Sixth Amendment claim be dismissed for failure to state a claim upon which relief may be granted.  *See Deshawn E.*, 156 F.3d at 350 (dismissing the plaintiff's Sixth Amendment claim and holding that the questioning at issue occurred during the investigatory process and during a time when no court had jurisdiction over the plaintiffs); *Horton v. Schenectady Cnty.*, 21-CV-0983, 2023 WL 2552005, at *6 (N.D.N.Y. Mar. 16, 2023) (Kahn, J.) (dismissing the plaintiff's Sixth Amendment claims related to a request for counsel during an interrogation because the complaint did "not include facts showing that the filing of an accusatory instrument had occurred prior to [the] interrogation, or that [p]laintiff's rights were affected by a particular proceeding at that point in time.").

### 9.    Plaintiff's Twelfth Claim: Pursuant to *Monell*

A municipality may not be held liable solely because it employs a tortfeasor.  *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 36 (2010).  Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation.  *Monell*, 436 U.S. at 694; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979).  Official policy includes the decisions of

19

a government's lawmakers, the acts of policymaking officials, and practices that are so widespread as to "practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Municipal liability may also be shown by establishing that a policymaking official ordered or ratified the employees' actions either expressly or tacitly.

Finally, municipal liability can, under limited circumstances, be based upon a failure to properly train the municipality's employees. *Connick*, 563 U.S. at 61. However, municipal liability is most tenuous when a claim turns on the failure to train. *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*")). To satisfy the statute, a municipality's failure to train its employees must amount to "'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).

The Amended Complaint here essentially complains of one discrete incident, during which, Defendants State Trooper Doe, Gaska, and Vestal Animal Veterinarian Doe—who appear to be employed by Defendants New York State Troopers, Broome County Humane Society, and Vestal Animal Hospital, respectively—allegedly did not act properly. (Dkt. No. 36.) There is no indication that Plaintiff can assert a policy or custom which would support municipal liability against Defendants New York State Troopers, Broome County Humane Society, and Vestal Animal Hospital based on these facts. In addition, none of Plaintiff's allegations reflect a failure to train or "deliberate indifference" to the rights of persons who would come into contact with Defendants State Trooper Doe, Gaska, and Vestal Animal Veterinarian Doe.

As a result, I recommend that Plaintiff's *Monell* claim be dismissed.

20

**B.    Criminal Law Claims (Seventh Claim, Eighth Claim, Tenth Claim, and Eleventh Claim)**

To the extent that Plaintiff attempts to assert claims under 18 U.S.C. §§ 1341, 1343, 1951, and 1956, I recommend that they be dismissed because they do not create any causes of action that can be pursued by private plaintiffs.

"[A] private plaintiff cannot pursue a claim under the criminal statutes found in Title 18 of the United States Code." *Bennett v. New York State Thruway Auth.*, 22-CV-0337, 2024 WL 1053222, at *17 (N.D.N.Y. Mar. 11, 2024) (Hurd, J.). "It is a truism, and has been for many decades, that in our federal system crimes are always prosecuted by the Federal Government, not . . . by private complaints." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86-87 (2d Cir. 1972). Consequently, the Second Circuit has repeatedly held that there is no private right of action under Title 18 of the U.S. Code. *See, e.g.*, *Storm-Eggink v. Gottfried*, 409 F. App'x 426, 427 (2d Cir. 2011) (summary order) (collecting cases).

**C.    State Law Claims: Defamation (Slander/Libel; Second Claim), Common Law Fraud (Ninth Claim), and Malpractice (Fourteenth Claim)[11]**

Having found that all of Plaintiff's federal claims are subject to dismissal, I recommend that the Court decline to exercise jurisdiction over any state law claims. *See* 28 U.S.C. § 1367(c)(3) (providing that a district court "may decline to exercise supplemental jurisdiction

---

[11]    "Defamation . . . is the invasion of the interest in a reputation and good name," *Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001) (quoting *Hogan v. Herald Co.*, 84 A.D.2d 470, 446 (N.Y. App. Div. 4th Dep't 1982), *aff'd*, 58 N.Y.2d 630 (N.Y. 1982)), and "consist[s] of the twin torts of libel and slander," *Farrakhan v. Anti-Defamation League*, No. 24-1237, 2025 WL 24066, at *2 n.1 (2d Cir. Jan. 3, 2025) (alteration in original) (quoting *Albert*, 239 F.3d at 265). Defamation, common law fraud, and malpractice are all claims pursuant to New York State law. *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 291 (2d Cir. 2006) (referring to a cause of action for fraud as arising under New York law); *Button v. Breshears*, 24-CV-3757, 2025 WL 2771663, at *6 (S.D.N.Y. Sept. 26, 2025) (referring to a claim for defamation as arising under New York law); *Collins v. Felder*, 251 F. Supp. 3d 634, 636 (S.D.N.Y. 2017) (referring to a professional malpractice claim as arising under New York state law).

over [pendent state law claims] if . . . the district court has dismissed all claims over which it has

original jurisdiction"); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the

usual case in which all federal-law claims are eliminated before trial, the balance of factors to be

considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness,

and comity—will point toward declining to exercise jurisdiction over the remaining state-law

claims."); *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986) (citing *Kavit v. A.L.

Stamm & Co.*, 491 F.2d 1176, 1180 (1974)) (holding that "federal courts, absent exceptional

circumstances, should abstain from exercising pendent jurisdiction when federal claims in a case

can be disposed of by summary judgment").[12]

## IV.    OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se*

litigant without granting leave to amend at least once "when a liberal reading of the complaint

gives any indication that a valid claim might be stated."  *Branum v. Clark*, 927 F.2d 698, 704-05

(2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when

justice so requires.").  An opportunity to amend is not required, however, where "the problem

with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."

*Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding

L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact

sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated

differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is

---

[12]    In addition, the undersigned notes that the statute of limitations for defamation claims in
New York is one year.  N.Y. C.P.L.R. § 215(3).  The actions alleged in this action occurred more
than two years before the commencement of this action.  Hence, the statute of limitations for any
defamation claim has likely expired.

not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[13]

The problem with Plaintiff's claims against Defendant New York State Troopers and New York State Trooper Doe in his official capacity are substantive such that a better pleading will not cure the deficiency. As a result, I recommend that all claims against Defendants New York State Troopers and New York State Trooper Doe in his official capacity be dismissed without leave to amend.

However, out of deference to plaintiff's pro se status and because Plaintiff did not receive the benefit of the District Court's review of his Complaint, I recommend that he be granted thirty days from the date that the District Court files its order on this Report and Recommendation within which to file a second amended complaint against Defendants New York State Trooper Doe in his individual capacity, the Broome County Humane Society, David Gaska, Karen Matson, Vestal Animal Hospital, and Vestal Animal Veterinarian Doe.

If Plaintiff chooses to file a second amended complaint, he should note that he must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish

---

[13]    *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such second amended complaint will replace the existing Amended Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

      **ACCORDINGLY**, it is

      **ORDERED** that the Clerk of the Court shall add defendants New York State Trooper Doe, the Broome County Humane Society, David Gaska, Karen Matson, Vestal Animal Hospital, and Vestal Animal Veterinarian Doe, to the caption of this action; and it is further respectfully

      **RECOMMENDED** that Plaintiff's Amended Complaint (Dkt. No. 36) be (1) **DISMISSED WITH LEAVE TO AMEND** to the extent that it asserts claims against Defendants New York State Trooper Doe in his individual capacity, the Broome County Humane Society, David Gaska, Karen Matson, Vestal Animal Hospital, and Vestal Animal Veterinarian Doe, and **DISMISSED WITHOUT LEAVE TO AMEND** to the extent that it asserts claims against Defendant New York State Troopers and New York State Trooper Doe in his official capacity; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this report and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[14]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[15]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: October  8 , 2025
         Binghamton, New York

*Miroslav Lovric*

Miroslav Lovric
U.S. Magistrate Judge

---

[14]    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[15]    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Case 3:23-cv-01547-BKS-ML   Document 43   Filed 10/08/25   Page 26 of 115

Alicea v. City of Bridgeport, Not Reported in Fed. Rptr. (2025)

2025 WL 1982127

Only the Westlaw citation is currently available.

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

United States Court of Appeals, Second Circuit.

Maria ALICEA, Plaintiff-Appellant,

v.

CITY OF BRIDGEPORT, Bridgeport Police Department, Officer Rivera, Officer Granello, Officer Swix, Officer Laracuente, Joe Doe, Officer Cruz, Jane Doe, Defendants-Appellees.

No. 23-7435
|
July 17, 2025

Appeal from a judgment of the United States District Court for the District of Connecticut (Dooley, J.) entered on September 27, 2023.

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

**Attorneys and Law Firms**

For Plaintiff-Appellant: Maria Mercedes Alicea, pro se, Rocky Hill, CT.

For Defendants-Appellees: Raymond J. Rigat, John P. Bohannon, Jr., City Attorney's Office, Bridgeport, CT.

PRESENT: Steven J. Menashi, Eunice C. Lee, Alison J. Nathan, Circuit Judges.

### SUMMARY ORDER

**\*1** Maria Alicea, proceeding *pro se*, appeals from the judgment of the district court in favor of the City of Bridgeport, the Bridgeport Police Department, and five individual officers in her suit under 42 U.S.C. § 1983. Alicea

alleged that, in the course of conducting a wellness check in July 2020, the defendants violated her rights under the First, Fourth, and Thirteenth Amendments. The defendants moved to dismiss the First and Thirteenth Amendment claims against all defendants and the Fourth Amendment claims against the City and the Police Department. The district court granted the motion. *See Alicea v. City of Bridgeport*, No. 21-CV-1147, 2022 WL 2527975, at \*1 (D. Conn. July 7, 2022).

The individual officers later moved for summary judgment on the remaining Fourth Amendment claims. The district court construed the complaint as asserting Fourth Amendment claims based on (1) the officers' initial entry into Alicea's apartment, (2) the officers' re-entry into her apartment after she barricaded herself inside, and (3) the taking of Alicea to the hospital for evaluation. Alicea did not file a brief in opposition to the motion for summary judgment. The district court granted the motion, relying on the body camera footage that the officers submitted. *See Alicea v. City of Bridgeport*, No. 21-CV-1147, 2023 WL 5891146, at \*1 (D. Conn. Sept. 11, 2023). Alicea appealed. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal.

### I

"We review a district court's grant of summary judgment *de novo*." *Kravitz v. Purcell*, 87 F.4th 111, 118 (2d Cir. 2023). "Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* at 118-19 (internal quotation marks omitted). Although "[t]he non-moving party need not respond to the motion ... a non-response runs the risk of unresponded-to statements of undisputed facts [proffered] by the movant being deemed admitted." *Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014) (citing Fed. R. Civ. P. 56(e)(2)). "Before summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed." *Id.*

In this case, the district court admitted the officers' statements of material facts after ensuring that the statements were supported by sufficient record evidence. The district court relied on the officers' body camera footage and properly

Case 3:23-cv-01547-BKS-ML    Document 43    Filed 10/08/25    Page 27 of 115

Alicea v. City of Bridgeport, Not Reported in Fed. Rptr. (2025)

"viewed the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007).

## II

On appeal, Alicea argues that the district court erred by granting summary judgment on her claims that the officers violated the Fourth Amendment through an unlawful entry, reentry, and involuntary hospitalization.[1] We address each issue in turn.

## A

**\*2**  First, Alicea argues that the officers violated the Fourth Amendment by entering and remaining in the outdoor common areas of her apartment complex and by entering her apartment after her then-husband, Ramon Rios-Torres, opened the door. We disagree.

Alicea had no reasonable expectation of privacy in the outdoor common areas of the complex. *See United States v. Lewis*, 62 F.4th 733, 741 (2d Cir. 2023) (concluding that a defendant lacked "a reasonable expectation of privacy over the shared porch" absent additional "specific facts regarding the porch and his use of it"); *United States v. Jones*, 893 F.3d 66, 72-73 (2d Cir. 2018) (concluding that a defendant "had no legitimate expectation of privacy in the rear parking lot," which "was a common area accessible to other tenants," because "the parking lot was not subject to [his] exclusive control and was not within the curtilage of his home").

The officers also did not violate the Fourth Amendment when they first entered the apartment because they reasonably believed that they had consent to enter. "Consent may be express or implied," *United States v. Iverson*, 897 F.3d 450, 458 (2d Cir. 2018), and depends on whether "the facts available to the officer at the moment [would] warrant a man of reasonable caution in the belief that the consenting party had authority over the premises," *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990) (internal quotation marks omitted).

The officers reasonably believed that Rios-Torres had consented to their entry into the apartment and that he had the authority to do so. The officers arrived after Alicea's daughter called 911 and requested police assistance because her mother was acting "unstable and delusional." *Alicea*, 2023 WL 5891146, at \*3 (internal quotation marks omitted). The

daughter, who said she lived with Alicea, told the officers that Rios-Torres was Alicea's husband and lived with them in the apartment. The body camera footage shows that Rios-Torres opened the door for the officers and walked away without closing it, allowing the officers to enter the apartment. Rios-Torres did not object to the officers' presence in the apartment, and the officers left as soon as Alicea objected to their entry. Under these circumstances, the initial entry did not violate the Fourth Amendment.

## B

Second, Alicea argues that the officers violated the Fourth Amendment by reentering the apartment. We again disagree. Under the emergency aid exception to the warrant requirement, "law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Michigan v. Fisher*, 558 U.S. 45, 47 (2009) (internal quotation marks omitted). Such an entry is permitted if the officer has "an objectively reasonable basis for believing that an occupant is seriously injured or imminently threatened with such injury." *Brigham City v. Stuart*, 547 U.S. 398, 400 (2006).

In this case, the officers had an objectively reasonable basis to believe that Alicea was at risk of serious injury. The officers came to the apartment to conduct a welfare check on Alicea because of her daughter's concern for her well-being and safety. Alicea became increasingly agitated while the officers were outside her apartment. Alicea banged on the window, shouted obscenities at the officers and threw objects at them, smashed glass and scattered it on the ground outside her apartment, made a stabbing-like motion towards Rios-Torres with a long object, removed her clothing, moved items outside of her apartment to obstruct the entrance, and barricaded herself inside. After observing this conduct, the officers reasonably determined that an entry was necessary so they could transport Alicea to the hospital for an evaluation to protect herself and others.

## C

**\*3**  Third, Alicea argues that the officers violated the Fourth Amendment by hospitalizing her involuntarily. "A warrantless seizure for the purpose of involuntary hospitalization may be made only upon probable cause, that

Alicea v. City of Bridgeport, Not Reported in Fed. Rptr. (2025)

Case 3:23-cv-01547-BKS-ML    Document 43    Filed 10/08/25    Page 28 of 115

is, only if there are reasonable grounds for believing that the person seized is dangerous to herself or to others." *Anthony v. City of New York*, 339 F.3d 129, 137 (2d Cir. 2003) (internal quotation marks omitted). Here, that standard was met. Given Alicea's behavior, the officers reasonably believed that Alicea presented a risk of danger to herself or others. The substantial risk of danger became an actual and obvious danger when Alicea jumped out of the window and suffered severe injuries. The officers did not violate the Fourth Amendment by transporting her to the hospital for treatment.

* * *

We have considered Alicea's remaining arguments, which we conclude are without merit. For the foregoing reasons, we affirm the judgment of the district court.

**All Citations**

Not Reported in Fed. Rptr., 2025 WL 1982127

---

## Footnotes

1    Alicea does not challenge the dismissal of her claims under the First and Thirteenth Amendments or her claims against the City and the Police Department. Nor does she raise any arguments relating to the grant of summary judgment on her excessive force claim. "These issues are therefore abandoned." *Green v. Dep't of Educ. of City of N.Y.*, 16 F.4th 1070, 1074 (2d Cir. 2021).

---

**End of Document**                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1053222
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

William Paul BENNETT, Plaintiff,

v.

NEW YORK STATE THRUWAY AUTHORITY,
Joanne M. Mahoney, Mayor Matthew Driscoll,
James Konstalid, John Barr, Frank Multari, Mary
Boehm, Carlos Millan, Patrick Hoehn, Kevin Post,
Robert Dressing, Barry Oaksford, Michael Blais,
Todd Summerson, and David Naples, Defendants.

6:22-CV-337
|
Signed March 11, 2024

**Attorneys and Law Firms**

WILLIAM PAUL BENNETT, Plaintiff, Pro Se, 1610 North
George Street, Rome, NY 13440.

HON. LETITIA A. JAMES, New York State Attorney
General, ERIN P. MEAD, ESQ., STACEY A. HAMILTON,
ESQ., Ass't Attorneys General, Attorneys for Defendants,
The Capitol, Albany, NY 12224.

**DECISION and ORDER**

DAVID N. HURD, United States District Judge

**I. INTRODUCTION**

 **\*1** On April 8, 2022, *pro se* plaintiff William Paul
Bennett ("plaintiff"), a New York State Thruway Authority
("NYSTA") employee, filed this action alleging that his
employer and fourteen high-ranking or supervisory NYSTA
officials violated his civil rights by, *inter alia*, disciplining
him under policies and directives related to the COVID-19
pandemic. Dkt. No. 1. Along with his initial complaint,
plaintiff moved for leave to proceed *in forma pauperis* ("IFP
Application"), Dkt. No. 2, and to have counsel appointed
to assist him, Dkt. No. 4. Thereafter, plaintiff also filed an
amended complaint. Dkt. No. 5.

Plaintiff's amended complaint clocks in at 142 pages. It
asserts federal claims under various provisions of the U.S.
Constitution, the Americans with Disabilities Act ("ADA"),
Title VII of the Civil Rights Act of 1964 ("Title VII"),

42 U.S.C. § 1983, 18 U.S.C. §§ 241, 242, 351(e), 28
U.S.C. § 4101, and related state law. Plaintiff seeks a total
of $39,312,655.65 in damages as well as declaratory and
injunctive relief.

On June 10, 2022, U.S. Magistrate Judge Miroslav Lovric
conducted a review of plaintiff's IFP Application. Dkt. No.
6. There, Judge Lovric noted that plaintiff was still employed
by the NYSTA and receiving his regular, biweekly wages. *Id.*
Plaintiff also co-owned some real estate with a non-zero fair
market value. *Id.* Because his earnings and holdings put him
well above the poverty line, Judge Lovric denied plaintiff's
IFP Application. *Id.* Judge Lovric also denied plaintiff's
motion for counsel. *Id.* However, Judge Lovric gave plaintiff
thirty days in which to pay the filing fee. *Id.* Plaintiff promptly
did so. Thereafter, summonses were issued, Dkt. No. 10, and
all of the named defendants appeared in this action on July
25, 2022, Dkt. No. 20.

On October 31, 2022, defendants moved under Federal Rule
of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6) to dismiss
plaintiff's amended complaint. Dkt. Nos. 32, 33. Plaintiff
opposed. Dkt. No. 39. The matter was reassigned to this Court
on February 16, 2024. Dkt. No. 56.

The motion has been fully briefed and will be considered on
the basis of the submissions without oral argument. [1]

**II. BACKGROUND**
The following facts are taken from plaintiff's amended
complaint and its attached exhibits, Dkt. No. 5, and are
assumed true for the purpose of assessing defendants' motion
to dismiss.

On February 11, 2016, the NYSTA hired plaintiff in the title
of General Mechanic / HVAC worker. Am. Compl. at 14. [2]
Plaintiff's interview was conducted by defendant Oaksford
and non-party Chandler. *Id.* During the interview, plaintiff had
"a full beard and mustache." *Id.* Although neither Oaksford
nor Chandler mentioned it at the interview, plaintiff was later
told by Oaksford that he "would be required to shave for a
mandatory respirator fit test." *Id.* Plaintiff alleges that that
no maintenance employees besides Chandler "had used a
respirator during the preceding ten (10) years." *Id.*

 **\*2** Plaintiff submitted a "Request for Reasonable
Accommodation," in which he requested that he "be
permitted to be excused from shaving and the subsequent fit

test as respirators are not typically used by anyone in [his] job description." Am. Compl. at 14. According to plaintiff, "the presence of [his] facial hair was part of [his] firmly held religious beliefs and practices." *Id.* The NYSTA asked for "additional documentation." *Id.* Thereafter, plaintiff's request for a Reasonable Accommodation was granted. *Id.* at 14–15.

A year later, plaintiff received a notice informing him that he would need to re-apply for this Reasonable Accommodation. Am. Compl. at 15. When he asked why this was required, plaintiff "was informed by various NYSTA management and EEOC [Equal Employment Opportunity Commission] personnel that such re-application is to make sure that no change in status existed." *Id.* "NYSTA EEOC personnel instructed [plaintiff] to fill out the appropriate form and to put wording to the effect that there were no changes to the previous annual application." *Id.* Thereafter, plaintiff forwarded the re-application to EEOC. *Id.*

Shortly after mailing away his re-application, plaintiff and his co-workers "were assigned to a training class which was held in the break area" of the maintenance facility. Am. Compl. at 15. Defendant Post was the training class instructor. *Id.* At the end of the training, Post approached plaintiff "to tell [him] that he had seen [plaintiff's] second application for Reasonable Accommodation and that it was incomplete." *Id.* Post told plaintiff he "had to submit new documentation, specifically referring to a letter on Church letterhead from the parish priest." *Id.* Plaintiff responded that he had already followed the EEOC's instructions. *Id.*

At that time, Post "proceeded to raise his voice and chastise [plaintiff] in front of his [fellow co-workers] with words that included 'This isn't a fight you want to take on.' " Am. Compl. at 15. Plaintiff walked away. *Id.* But he did not file a grievance against Post. *Id.* Soon thereafter, plaintiff learned that an NYSTA employee named Chris Dulong "was also involved in disciplinary issues regarding facial hair and fit testing requirements" and was later terminated. *Id.* at 15–16.

Thereafter, plaintiff and non-parties Chandler and Bentley were assigned to a NYSTA facility in Utica. Am. Compl. at 16. At some point, Bentley was injured and unable to work. *Id.* So plaintiff took a "two[-]week period of employment known as 'Out of Title.' " *Id.* During that period, plaintiff learned and performed the duties of a "Maintenance Supervisor I," which is the job title that Bentley held. *Id.*

While performing in that position, plaintiff attempted to complete a job at a NYSTA facility in Herkimer. Am. Compl. at 16. But there was an issue with scheduling, so plaintiff told defendant Blais that the job would have to be rescheduled. *Id.* Blais "lost his temper" and "started yelling at [plaintiff]," including shouting that plaintiff didn't "care about taking care of matters at his facility." *Id.* Plaintiff "called" Blais on his "demeanor" and Blais "apologize[d] and revert[ed] to a civil tone." *Id*

On April 17, 2020, NYSTA, with the approval of defendants Mahoney, Driscoll, Konstalid, Barr, Multari, Boehm, and Millan, published and distributed a document called "Safety Gram #192." Am. Compl. ¶ 1. This document "is the first official mention of [a] requirement of use of masks or facial coverings and the proper use thereof." *Id.* According to plaintiff, this Safety Gram is a breach of a collective bargaining agreement that applies to him. *Id.* ¶¶ 1, 5, 18. According to plaintiff, one or more of the named defendants violated his civil rights by wrongfully applying this Safety Gram against him. *Id.* ¶¶ 2–4.

**\*3** On or about June of 2020, defendants "established a policy regarding a requirement that all YSTA employees complete a 'Wellness Survey.' " Am. Compl. ¶ 11. Plaintiff alleges that this policy is also a breach of the collective bargaining agreement. *Id.* Plaintiff further alleges that he suffered from an unidentified medical condition that made it difficult for him to complete this survey. *Id.* ¶ 13. Plaintiff alleges that defendant Post knew this. *Id.*

On or about July 21, 2020, plaintiff attended a training session at an NYSTA facility in Herkimer. Am. Compl. ¶ 15. The training was conducted by defendant Naples. *Id.* Plaintiff had previously talked with Naples about his Reasonable Accommodation related to his beard, so plaintiff approached Naples to tell him that he believed that Safety Gram #192 violated the collective bargaining agreement and his civil rights. *Id.* Plaintiff alleges that Naples "failed to act" on this verbal; *i.e.*, "non-written" request for a Reasonable Accommodation. *Id.*

On September 30, 2020, defendant Post issued a Memorandum to NYSTA employees about the then-ongoing COVID-19 pandemic. Ex. 7 to Am. Compl. at 88; Am. Compl. ¶ 51. Among other things, this Memorandum required all employees to wear masks indoors in "all public / common areas." *Id.* This Memorandum cautioned

Case 3:23-cv-01547-BKS-ML    Document 43    Filed 10/08/25    Page 31 of 115

Bennett v. New York State Thruway Authority, Not Reported in Fed. Supp. (2024)

that "blatant disregard for the protocols will be addressed appropriately." *Id.*

On October 1, 2020, plaintiff was using a urinal in the men's bathroom when defendant Blais entered the room and ordered plaintiff "to put a mask on." Am. Compl. ¶ 17. Plaintiff responded to Blais that he had two doctor's notes that allowed him "to not wear a mask as long as [he] was social distancing." *Id.* Defendant Blais reported this interaction to his supervisor, who in turn reported it to defendant Post. *Id.* ¶¶ 27, 31.

Several hours later, the NYSTA issued to plaintiff a Job Counseling Memo ("JCM") based on his failure to comply with the NYSTA safety policies and his failure to follow supervisory directives. Ex. 4 to Am. Compl. at 77; Am. Compl. ¶¶ 35, 37. The JCM warned plaintiff that "[s]imilar problems in the future may lead to an Unsatisfactory Performance Rating and/or disciplinary action." *Id.*

Later that day, plaintiff contacted defendant Naples, the EEOC official at the NYSTA, to tell him about what had happened in the bathroom and the JCM he had received. Am. Compl. ¶ 57. Naples "conceded that he should have done something with the information he received [from plaintiff] in July" and "instructed [plaintiff] to file a written request for a Reasonable Accommodation." *Id.*

On October 2, 2020, plaintiff submitted to the NYSTA a Request for a Reasonable Accommodation. Ex. 2 to Defs.' Mem., Dkt. No. 33-2.[3] This request sought to "not be required to wear a face covering when working alone or in areas where social distancing can be maintained." *Id.*

Plaintiff supported this request with a doctor's note that says he "has difficulty wearing the mask all the time" and "it is okay not to wear the mask if he is alone or working separately while adhering to social distancing and CDC guidelines." Ex. 3 to Defs.' Mem., Dkt. No. 33-3. A few days later, plaintiff sent to various named defendants an e-mail complaint about the October 1 JCM. Am. Compl. ¶ 59.

**\*4** On October 15, 2020, the NYSTA responded to plaintiff's Request for a Reasonable Accommodation. Compl. at 95. The letter explained that NYSTA would provide him with the following accommodations:

-You will be issued extra facemasks at the start of your day. You should adhere to the directive on face coverings as follows: "a face covering must be carried on your person

at all times while on Authority property and worn when social distancing (i.e., less than 6 feet distance cannot be achieved." You are permitted to remove your facemask as needed for medical reasons provided that you adhere to the above referenced policy and/or supervisor's directive. Please not that when in common areas (such as rest rooms, hallways, etc.) or approaching areas where employees may be gathered, masks are required to be worn.

Am. Compl. at 95.

On October 29, 2020, plaintiff received another JCM based on a "pattern of insubordination and disregard for safety procedures." Am. Compl. at 90; Am. Compl. ¶ 61. According to this JCM, plaintiff had violated COVID-19 safety directives on October 15 and again on October 29. *Id.* During the job counseling meeting on this second JCM, plaintiff alleges that defendant Oaksford told him that he "did not care if" plaintiff "had a Reasonable Accommodation," and that if he was unhappy about following orders he could grieve it through the union later. Am. Compl. ¶ 63. Various defendants signed the second JCM on November 16, 2020. *Id.* ¶¶ 67, 69, 71, 73, 75.

On December 7, 2020, plaintiff received a third JCM. Am. Compl. at 97. This disciplinary memo was issued for plaintiff's "pattern of failure to follow directives and disregard for safety protocols and procedures." *Id.* ¶ 77. This JCM stated that plaintiff continued to ignore the COVID-19 safety directives that required him to wear a mask in common areas. *Id.* at 97. As before, this JCM warned plaintiff that "[s]imilar problems in the future may lead to an Unsatisfactory Performance Rating and/or disciplinary action." *Id.*

On January 20, 2021, defendant Millan notified plaintiff that he was being charged with misconduct for his repeated violations of the COVID-19 safety policies. Am. Compl. at 103; Am. Compl. ¶ 87. This letter explained that a hearing would be conducted on the charge. *Id.* Thereafter, plaintiff, after consulting with a union representative and hiring his own lawyer, entered into a stipulation in which he agreed to plead guilty to the charges in the January 20, 2021 letter and pay a $610.80 fine. Am. Compl. at 101–102; Am. Compl. ¶¶ 87–94.

On February 8, 2021, defendant Hoehn notified plaintiff that he had received a "Report of Unsatisfactory Performance" for the rating period between February 11, 2020 through February 11, 2021." Am. Compl. at 107. This performance rating was based on the fact that plaintiff had received three

Case 3:23-cv-01547-BKS-ML   Document 43   Filed 10/08/25   Page 32 of 115

Bennett v. New York State Thruway Authority, Not Reported in Fed. Supp. (2024)

JCMs; *i.e.*, he had been repeatedly counseled for his failure to follow the NYSTA's COVID-19 directives. *Id.* As a result of this rating, plaintiff missed out a scheduled pay raise. Am. Compl. ¶ 95. He appealed the determination but the NYSTA affirmed the unsatisfactory rating. Compl. at 112.

On July 29, 2021, plaintiff filed a civil rights complaint with the New York State Division of Human Rights ("DHR") alleging that the NYSTA's denial of his pay raise was the result of sexual harassment, non-compliance with his reasonable accommodation, and retaliation. Ex. 6, Dkt. No. 33-6. The DHR conducted an investigation. *See* Am. Compl. at 12–13.

**\*5** On January 11, 2022, the DHR determined that there was no probable cause to believe that a violation occurred. Ex. 9, Dkt. No. 33-9. Thereafter, the EEOC adopted the DHR's findings and issued plaintiff a so-called "right-to-sue" letter on March 8, 2022. Ex. 10, Dkt. No. 33-10; Am. Compl. at 13.

## III. LEGAL STANDARDS

### A. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Forjone v. Dep't of Motor Vehicles*, 414 F. Supp. 3d 292, 297–98 (N.D.N.Y. 2019) (cleaned up). "The Second Circuit has drawn a distinction between two types of Rule 12(b)(1) motions: (i) facial motions and (ii) fact-based motions." *Nicholas v. Trump*, 433 F. Supp. 3d 581, 586 (S.D.N.Y. 2020); *see also Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) ("A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based.").

"A facial Rule 12(b)(1) motion is one based solely on the allegations of the complaint or the complaint and exhibits attached to it." *Nicholas*, 433 F. Supp. 3d at 586 (cleaned up). "A plaintiff opposing such a motion bears no evidentiary burden." *Id.* "Instead, to resolve a facial Rule 12(b)(1) motion, a district court must determine whether the complaint and its exhibits allege facts that establish subject matter jurisdiction." *Id.* "And to make that determination, a court must accept the complaint's allegations as true and draw all reasonable inferences in favor of the plaintiff." *Id.*

"Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the complaint and its exhibits." *Nicholas*, 433 F. Supp. 3d at

586 (quoting *Carter*, 822 F.3d at 57). "In opposition to such a motion, a plaintiff must come forward with evidence of their own to controvert that presented by the defendant, or may instead rely on the allegations in their pleading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing." *Id.* (cleaned up). "If a defendant supports his fact-based Rule 12(b)(1) motion with material and controverted extrinsic evidence, a district court will need to make findings of fact in aid of its decision as to the subject matter jurisdiction." *Id.*

### B. Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be enough to elevate the plaintiff's right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). So while legal conclusions can provide a framework for the complaint, they must be supported with meaningful allegations of fact. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

To assess this plausibility requirement, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In doing so, the court generally confines itself to the facts alleged in the pleading, any documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

## IV. DISCUSSION

**\*6** As an initial matter, plaintiff is *pro se*. So his filings must be held to less stringent standards. *Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012). As the Second Circuit has repeatedly warned, documents filed *pro se* "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that [they] suggest[ ]." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)).

Broadly construed, plaintiff's amended complaint alleges that the NYSTA (and the named defendants) violated his civil rights by writing him up in a series of three job counseling

Case 3:23-cv-01547-BKS-ML    Document 43    Filed 10/08/25    Page 33 of 115

Bennett v. New York State Thruway Authority, Not Reported in Fed. Supp. (2024)

memos (called JCMs) that led to formal charges of discipline and, eventually, an unsatisfactory job performance rating.

The amended complaint and a review of the supporting documentation establishes that plaintiff was issued the JCMs for repeatedly failing to wear a cloth face mask or other face covering inside certain NYSTA facilities and designated common areas in violation of the NYSTA's COVID-19 policies.

Plaintiff contends the JCMs were issued in an irregular and/or improper manner and violated a reasonable accommodation he had received based on his medical condition. According to plaintiff's amended complaint, these and other, related actions amounted to discrimination based on his disability, sex, and/or retaliation.

Notably, plaintiff's amended complaint describes two different reasonable accommodations: a medical accommodation he received vis-à-vis the COVID-19 protocols and an earlier, religious accommodation he received shortly after beginning his employment at NYSTA.

In particular, plaintiff alleges that he has a sincere religious belief that requires him to maintain facial hair and/or a beard. Am. Compl. at 14. The pleading alleges that when a supervisor told him he would need to shave his facial hair for a respirator fit test, he sought and received an accommodation that excused him from shaving or from taking the respirator fit test. [4] *Id.*

Importantly, however, there is no indication that the events described in the rest of plaintiff's complaint have anything to do with the accommodation that excused him from the facial-hair / fit-test requirements. Even broadly construed, the allegations about this religious accommodation are entirely distinct from the COVID-19 policy requirement to wear non-fitted disposable masks or other cloth face coverings while still maintaining his facial hair.

Wearing a non-fitted, disposable mask—not shaving his facial hair or fit-testing a respirator—is the requirement imposed by the COVID-19 protocol(s) about which plaintiff complains. Thus, because there is no possible religious-liberty claim that might attach to this fact pattern, the Court will not address this issue further. Instead, the rest of this opinion focuses on the reasonable accommodation plaintiff received vis-à-vis the COVID-19 protocols. [5]

**\*7** Plaintiff's amended complaint purports to assert federal claims under the ADA, Title VII, the U.S. Constitution, 42 U.S.C. § 1983, 18 U.S.C. §§ 241, 242, 351(e), and 28 U.S.C. § 4101.

#### A. The ADA

The ADA is divided into five separate titles: Employment (Title I), Public Services (Title II), Public Accommodations (Title III), Telecommunications (Title IV), and Miscellaneous Provisions (Title V). *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 169 (2d Cir. 2013).

The first three titles are the big ones. Together, they work to "forbid[ ] discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I ...; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." *Tennessee v. Lane*, 541 U.S. 508, 516–17 (2004). But Title V often comes up in litigation, too, since it protects people from retaliation, interference, coercion, or intimidation for engaging in any of the activities protected by the statute itself. 42 U.S.C. § 12203(a)–(b).

Plaintiff's allegations relate to his employment with the NYSTA, a New York State agency. ADA claims against a public employer implicate Title I and Title V. *See, e.g.*, *Mary Jo C.*, 707 F.3d at 171 (limiting discrimination claims by public employees to Title I); *Emmons v. City Univ. of N.Y.*, 715 F. Supp. 2d 394, 410 (E.D.N.Y. 2010) (noting that Title V concerns retaliation).

The problem for plaintiff is that the Eleventh Amendment shields New York State (and its constituent agencies, such as the NYSTA) from suit under these provisions of the ADA.

This is because "state governments and their agencies may not be sued in federal court unless they have waived their Eleventh Amendment immunity or there has been a valid abrogation of that immunity by Congress." *Jackson v. Battaglia*, 63 F. Supp. 2d 214, 219–20 (N.D.N.Y. 2014) (citation omitted).

With respect to these ADA claims in particular, "Congress has never abrogated New York's sovereign immunity from claims under Title I and V of the ADA and New York has never waived it." *Quadir v. N.Y. State Dep't of Labor*, 39 F. Supp. 3d 528, 537 (S.D.N.Y. 2014).

Case 3:23-cv-01547-BKS-ML    Document 43    Filed 10/08/25    Page 34 of 115

Bennett v. New York State Thruway Authority, Not Reported in Fed. Supp. (2024)

This immunity extends to "state officials at those agencies working on behalf of the state (*i.e.*, in their official capacities), *Emmons*, 715 F. Supp. 2d at 406, and will bar a plaintiff's claim "regardless of the type of relief sought," *Morales v. New York*, 22 F. Supp. 3d 256, 258 (S.D.N.Y. 2014). Consequently, ADA claims asserted against New York State, its agencies, or its officials under Title I or Title V are barred by the Eleventh Amendment. *Davis v. Vt., Dep't of Corr.*, 868 F. Supp. 2d 313, 322 (D. Vt. 2012).

Plaintiff's amended complaint also asserts these claims against high-ranking and/or supervisory NYSTA officials in their personal and official capacities. To the extent that plaintiff alleges these ADA claims against the individual defendants in their *personal* capacities, those claims must be dismissed because neither Title I nor Title V provide for individual liability in the employment context. *See, e.g.*, *Spiegel v. Schulmann*, 604 F.3d 72, 79–80 (2d Cir. 2010) (per curiam).

**\*8** Plaintiff's amended complaint also names these individual defendants in their *official* capacities. Under limited circumstances, a plaintiff can pursue an "official-capacity" claim against a public official using a doctrine called *Ex parte Young*, which evades the Eleventh Amendment's bar to suit. *Frantti v. New York*, 2017 WL 922062, at \*5 (N.D.N.Y. Mar. 8, 2017). But the doctrine is a narrow one: the plaintiff must plausibly allege (1) an ongoing violation of federal law; and (2) seek relief that can properly be characterized as forward-looking; *i.e.*, prospective. *Marino v. City Univ. of N.Y.*, 18 F. Supp. 3d 320, 333 (E.D.N.Y. 2014).

The problem here is that even broadly construed, the amended complaint describes, at most, completed violations of the ADA. Plaintiff filed this action in April of 2022, but the most recent significant event described with any detail in his amended complaint is the February 8, 2021 "unsatisfactory" rating that caused plaintiff to miss out on a promotion or pay raise. *See, e.g.*, Am. Compl. ¶ 95. And as of this writing, the State has rescinded the relevant COVID-19 protocols, so there is no existing NYTSA policy (that caused him these specific harms) which could be enjoined.

Thus, to the extent plaintiff has asserted claims under Title I or Title V of the ADA against NYSTA or against the named individual defendants in either their official or personal capacities, those claims must be dismissed as barred by sovereign immunity.[6]

### B. The Rehabilitation Act[7]

The Rehabilitation Act is a body of federal disability law that is available to plaintiff. Although the amended complaint does not reference this statute, the Rehabilitation Act of 1973 provides an avenue for possible relief against a state employer. *Quadir*, 39 F. Supp. 3d at 537 (construing *pro se* complaint as raising disability-related claims under the Rehabilitation Act).

New York has waived sovereign immunity on these claims. *Quadir*, 39 F. Supp. 3d at 537. "Like the ADA, the Rehabilitation Act prohibits disability-based discrimination, but it applies specifically to government agencies and other recipients of federal funds." *Frantti v. New York*, 414 F. Supp. 3d 257, 285 (N.D.N.Y. 2019) (citation omitted).

"[T]he Rehabilitation Act imports the discrimination standards of Title I of the ADA and the retaliation standards of Title V." *Quadir*, 39 F. Supp. 3d at 537; *Kelly v. N.Y. State Office of Mental Health*, 200 F. Supp. 3d 378, 390 (E.D.N.Y. 2016) ("Although its terms are broadly drawn, the Rehabilitation Act incorporates the standards of the [ADA].").

As an initial matter, however, any Rehabilitation Act claims against the individual defendants—whether in their personal capacities or their official ones—must be dismissed. *Frantti*, 2017 WL 922062, at \*4 (collecting cases dismissing these claims as redundant where claims could proceed directly against the state entity-employer). Instead, these claims must be asserted directly against plaintiff's employer: the NYSTA.

### 1. Discrimination & Accommodation

To make out a *prima facie* claim of employment discrimination against the NYSTA under the Rehabilitation Act, a plaintiff must allege (1) his employer is subject to the Act; (2) he was disabled within the meaning of the Act; (3) he was qualified to perform the essential functions of his job, with or without a reasonable accommodation; and (4) he suffered an adverse employment action because of his disability. *Larnard v. McDonough*, 578 F. Supp. 3d 371, 382 (W.D.N.Y. 2022). A failure-to-accommodate claim works much the same way, but just substitutes the fourth element with the question of whether the employer has refused to make a reasonable accommodation. *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020).

**\*9**  The Act borrows its definition of "disability" from the ADA. *Larnard*, 578 F. Supp. 3d at 383. The ADA defines a "disability" as any "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). [8]  Still, though, "[n]ot every impairment is a 'disability' within the meaning of the ADA." *Capobianco v. City of N.Y.*, 422 F.3d 47, 56 (2d Cir. 2005). Instead, there are two requirements: (1) the impairment must limit a "major life activity" and (2) the limitation must be "substantial." *Id.*

As to the first requirement, major life activities include core physical functions like walking, standing, lifting, and other common activities such as reading, concentrating, and working. 42 U.S.C. § 12102(2)(A). As to the second, an impairment qualifies as a disability "if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(ii).

In 2008, Congress amended the ADA "to make clear that the substantial-limitation requirement in the definition of 'disability' is not an exacting one." *Woolf*, 949 F.3d at 94. Even so, "[n]ot every impairment that affects an individual's major life activities is a *substantially* limiting impairment." *B.C. v. Mt. Vernon Sch. Dist.*, 837 F.3d 152, 160 (2d Cir. 2016) (cleaned up). As the Circuit has explained, "in assessing whether a plaintiff has a disability, [courts] have been careful to distinguish impairments which merely *affect* major life activities from those that *substantially limit* those activities." *Id.*

Upon review, plaintiff has not plausibly alleged that he suffered from any disability, or was regarded as having or suffering from a disability, under the Rehabilitation Act. In fact, a liberal reading of plaintiff's amended complaint does not even permit the inference that he was "disabled" at all.

Plaintiff repeatedly points out that he received doctor's notes from "two licensed physicians," but these notes do not relieve a plaintiff, even a *pro se* one, from the need to plausibly allege facts tending to establish a qualifying disability. That is especially so where, as here, the doctor's notes do not identify any particular disability.

Instead, these notes only say that plaintiff was allowed "to not wear a mask as long as [he] was social distancing." Am. Compl. ¶ 17; *see also* Pl.'s Opp'n, Dkt. No. 39 at 3. In his opposition, plaintiff contends that he also suffers from high

blood pressure. Pl.'s Opp'n at 11. But the mere fact of a diagnosis is not enough to establish a qualifying disability, either. *Weiss v. Cnty. of Suffolk*, 416 F. Supp. 3d 208, 214 (E.D.N.Y. 2018) ("[N]ot every impairment is a disability.").

To plausibly allege a disability-discrimination claim, the plaintiff needs to allege facts tending to show that he was substantially limited in his ability to perform a major life activity, or that his employer mistakenly regarded him as being so limited in one or more of those areas. *See, e.g.*, *Murphy v. United Parcel Serv., Inc.*, 527 U.S. 516, 521–22 (1999) (explaining contours of the "regarded as" provision). [9]

**\*10**  Plaintiff has not done so. Other than noting that his accommodation request involved the provision of extra personal protective equipment ("PPE") because he suffers from a "sporadic runny nose," plaintiff has not alleged that he suffered limitations in his ability to work his job at the NYSTA at all. Pl.'s Opp'n at 3.

Notably, plaintiff's claim(s) hinge upon the allegation he was subjected to COVID-19 workplace protocols that, both on its face and as applied, affected the other employees in his workplace, too. This is true of both the Safety Gram and the Wellness Survey requirements.

This kind of fact pattern; *i.e.*, mistreatment based on a broadly applicable policy, is ordinarily insufficient to raise a plausible discrimination claim. *See, e.g.*, *Niles v. N.Y. City Human Res. Admin.*, 2024 WL 496345, at \*6 (E.D.N.Y. Feb. 8, 2024); (finding same); *Newell v. State Univ. of N.Y. Westchester Cmty. Coll.*, 2023 WL 4082030, at \*4 (S.D.N.Y. June 20, 2023) (same).

In short, plaintiff has not plausibly alleged a disability-discrimination claim under the Act. *Kosiba v. Catholic Health Sys.*, 2022 WL 21784010, at \*7 (E.D.N.Y. Nov. 18, 2022) (Report & Recommendation) (finding same where plaintiff's ADA claims were based on an objection to workplace masking policy imposed during COVID-19 pandemic).

### 2. Hostile Work Environment

"Because the ADA echoes and expressly refer to Title VII, and because the two statutes have the same purpose—the prohibition of illegal discrimination in employment—it follows that disabled Americans should be able to assert hostile work environment claims under the ADA." *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019)

Case 3:23-cv-01547-BKS-ML    Document 43    Filed 10/08/25    Page 36 of 115

Bennett v. New York State Thruway Authority, Not Reported in Fed. Supp. (2024)

(cleaned up); *Kelly,* 200 F. Supp. 3d at 399 (assuming that a hostile work environment was actionable under the Rehabilitation Act).

To make out a hostile work environment claim, a plaintiff must plausibly allege that (1) the harassment was sufficiently severe or pervasive to alter the conditions of his employment; and (2) a specific basis exists for imputing the objectionable conduct to the employer." *Fox,* 918 F.3d at 74. "Although the victim must subjectively perceive the conduct as abusive, the misconduct shown also must be severe or pervasive enough to create an objectively hostile or abusive work environment." *Id.* (cleaned up).

"A plaintiff alleging a hostile work environment claim, therefore, must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [his] working environment." *Fox,* 918 F.3d at 74.

Upon review, this claim fails because plaintiff has not plausibly alleged that he suffered from a disability, which is a prerequisite to stating a hostile-work-environment claim in the disability context. *Kelly,* 200 F. Supp. 3d at 399–400. Even assuming otherwise, this claim would still fail. To be sure, plaintiff *subjectively* believed his working conditions to be hostile. *See, e.g.*, Dkt. No. 39 at 12 ("The assault took place while the Plaintiff was actively using the urinal, which, in the mind of the Plaintiff, makes the assault sexual in nature."). But subjective beliefs are not enough. In short, plaintiff has not plausibly alleged that, individually or collectively, the conditions described in the amended complaint might be considered *objectively* severe or pervasive.

### 3. Retaliation

**\*11**  The Rehabilitation Act prohibits retaliation against employees for their opposition to practices made unlawful by the Act. *Kelly,* 200 F. Supp. 3d at 402. To make out a *prima facie* case of retaliation, a plaintiff must show that (1) he engaged in an activity protected by the Act; (2) the employer was aware of this activity; (3) the employer took adverse action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity. *Vale v. Great Neck Water Pollution Control Dist.,* 80 F. Supp. 3d 426, 438 (E.D.N.Y. 2015); *Zuro v. Town of Darien,* 432 F. Supp. 3d 116, 126 (D. Conn. 2020).

Upon review, plaintiff's retaliation claim or claims must be dismissed. "It is well established that seeking a reasonable accommodation for a disability constitutes protected activity." *Laface v. E. Suffolk Boces,* 349 F. Supp. 3d 126, 129 (E.D.N.Y. 2018) (cleaned up). And even if the disability at issue is not one within the meaning of the Rehabilitation Act, an employee's request for an accommodation can still qualify as protected activity if it is made in good faith. *Id.*

In addition, the three JCMs, the formal disciplinary charges, and the unsatisfactory job performance rating (that caused plaintiff to miss out on a regularly scheduled promotion) qualify as "adverse actions," at least for the purpose of a motion to dismiss. [10]

Even so, plaintiff has not plausibly alleged causation between any of his conduct and one or more of these events. "A causal connection in retaliation claims can be shown either (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Natofsky,* 921 F.3d at 353 (cleaned up).

There are two, related reasons that plaintiff has not plausibly established causation. First, plaintiff's amended complaint alleges that the mask policy and the wellness survey implemented by the NYSTA applied equally to his co-workers. Second, the accommodation that plaintiff received on this topic did not exempt him from mask wearing.

Instead, the NYSTA provisioned him extra masks, required them to be carried on his person at all times, and stated that they must be *worn* in common areas and when social distancing could not be achieved. This accommodation language even lines up with the language from plaintiff's doctor's notes. The amended complaint's allegations, taken at face value, indicate that plaintiff received the three JCMs for repeatedly violating this accommodation language and the COVID-19 policy, not for engaging in "protected activity" under the Rehabilitation Act.

Although plaintiff characterizes the incidents in the complaint as *not* actually violating the policy (*e.g.*, when defendant Blais caught him without a mask in the men's bathroom, or when he was written up for not wearing a mask inside a larger garage

Case 3:23-cv-01547-BKS-ML    Document 43    Filed 10/08/25    Page 37 of 115

Bennett v. New York State Thruway Authority, Not Reported in Fed. Supp. (2024)

space), the question of whether employee conduct violated a policy is separate from the question of whether an employee has engaged in any "protected activity" for a retaliation claim. *Cf. Johnson v. Maximus Servs., LLC*, 2023 WL 5612826, at *4 (E.D.N.Y. Aug. 30, 2023) (concluding *pro se* plaintiff could not plausibly allege causation "because she refused to comply with the COVID-19 policy, not because she opposed it").

**\*12** As other district courts considering similar fact patterns have noted, a plaintiff who is "demonstrably at risk" of being disciplined for legitimate reasons prior to engaging in protected activity cannot "rely solely on temporal proximity" to establish retaliation. *Evans v. N.Y. City Dep't of Educ.*, 2023 WL 8034449, at *8 (S.D.N.Y. Nov. 20, 2023) (concluding same where plaintiff opposed workplace COVID-19 mandates).

### C. Title VII

Title VII "prohibits employment-related discrimination on the basis of race, color, religion, sex, or national origin and retaliation against employees who complain about discrimination." *Tassy v. Buttigieg*, 51 F.4th 521, 529 (2d Cir. 2022) (citation omitted); *see also Bostock v. Clayton County*, 590 U.S. 644, 649 (2020).

Upon review, plaintiff's amended complaint does not plausibly allege that NYSTA's workplace mask requirement, wellness survey requirement, or its enforcement of those COVID-19 policies against him, made any distinction based on one or more of the immutable or other characteristics protected by the statute; *e.g.*, his sex, race, or religion. Nor has plaintiff plausibly alleged that similarly situated individuals outside of one of these protected classes were treated better than him vis-à-vis these COVID-19 policies.

To the extent that plaintiff has attempted to allege a sexual harassment or "assault" claim based on his alleged interaction with defendant Blais, who observed plaintiff not wearing a mask in the men's bathroom and then reported it to a supervisor, that allegation is insufficient to plausibly allege this—or any other—kind of Title VII claim as a matter of law. Dkt. No. 39 at 12 ("The assault took place while the Plaintiff was actively using the urinal, which, in the mind of the Plaintiff, makes the assault sexual in nature.").

### D. U.S. Constitution & 42 U.S.C. § 1983

Plaintiff's amended complaint also asserts claims under several provisions of the U.S. Constitution and 42 U.S.C.

§ 1983. Am. Compl. at 7. Notably, however, "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). In other words, § 1983 is just the procedural mechanism used by a plaintiff to maintain a lawsuit based on a violation of a constitutional right. *Id.* Accordingly, plaintiff's allegations under § 1983 and the U.S. Constitution must be considered together. [11]

### 1. Fourth Amendment

The Fourth Amendment provides in relevant part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. These restrictions have been incorporated against the States through the Due Process Clause of the Fourteenth Amendment. *City of Ontario v. Quon*, 60 U.S. 746, 750 (2010); *Mapp v. Ohio*, 367 U.S. 643 (1961).

**\*13** Upon review, any § 1983 claim based on this general body of law must be dismissed. Broadly construed, plaintiff has attempted to assert a § 1983 false imprisonment claim, or perhaps a § 1983 excessive force claim, against Blais, the defendant identified by plaintiff as "confining" him or "assaulting" him.

Plaintiff alleges that on October 1, 2020, he was at a urinal in the men's bathroom when defendant Blais entered the room and ordered plaintiff "to put a mask on." Am. Compl. ¶ 17. Plaintiff responded to Blais that he had two doctor's notes that allowed him "to not wear a mask as long as [he] was social distancing." *Id.* Blais reported this to his supervisor. *Id.* ¶¶ 27, 31.

These allegations do not plausibly establish the kind of "confinement" that would state a § 1983 false imprisonment claim. Elsewhere, plaintiff makes reference to the fact that defendant Blais "assaulted" him by, among other things, "puffing his chest," "rushing" plaintiff, and "raising his voice in an aggressive manner," Am. Compl. ¶ 23, but a review of those allegations lead to the conclusion that they do not state a plausible claim for relief under this general body of federal law, either.

Putting a plaintiff in imminent fear of harm might give rise to one or more state-law claims, which plaintiff may re-file in state court.

Case 3:23-cv-01547-BKS-ML    Document 43    Filed 10/08/25    Page 38 of 115

Bennett v. New York State Thruway Authority, Not Reported in Fed. Supp. (2024)

**2. Sixth Amendment**

The Sixth Amendment provides in relevant part that: "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. XI. This restriction has been incorporated against the States through the Due Process Clause of the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400 (1965).

Upon review, any § 1983 claim based on this general body of law must be dismissed. Broadly construed, plaintiff alleges that defendants violated this right by generating false or inaccurate JCMs and enforcing discipline against him based on testimony for which he was not present and did not receive an opportunity to challenge in a meaningful way. Pl.'s Opp'n at 15.

The problem with this argument is that, at best, the JCMs are entirely *civil* or *administrative* in nature. The right to confront a witness "face-to-face," *Coy v. Iowa*, 487 U.S. 1012, 1017 (1988), the right to a "meaningful" cross-examination, *Alvarez v. Ercole*, 763 F.3d 223, 229–30 (2d Cir. 2014), and the other rights emanating from the Sixth Amendment's Confrontation Clause do not protect *civil* litigants or those facing purely administrative discipline, even from a public employer. *Turner v. Rogers*, 564 U.S. 431, 441 (2011) ("[T]he Sixth Amendment does not govern civil cases.").

In a civil or administrative setting, the Due Process Clause does protect a much more limited version of these rights, which will be discussed below.

**3. Bills of Attainder & Ex Post Facto Laws**

Plaintiff's amended complaint also references Article I, Section 9, Clause 3 of the U.S. Constitution, which states that "[n]o Bill of Attainder or ex post facto Law shall be passed."

A "bill of attainder" is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Reynolds v. Quiros*, 990 F.3d 286, 295 (2d Cir. 2021) (quoting *Nixon v. Admin. of Gen. Servs.*, 433 U.S. 425, 468 (1977)).

**\*14** But plaintiff has not identified a particular statute or provision that would offend this constitutional provision. Broadly construed, plaintiff appears to allege that the JCMs and the statutory basis on which he received the bad job performance rating violate this restriction.

However, those provisions do not operate as a bill of attainder because, among other things, they preserve the right to administratively appeal (which plaintiff did) and can be challenged in other settings, such as in a state-court petition. In short, there is no indication that the JCMs, the Safety Gram about masking, the Wellness Survey, the formal discipline, or the unsatisfactory rating "fall[ ] within the historical meaning of legislative punishment." *ACORN v. United States*, 618 F.3d 125, 136 (2d Cir. 2010).

The Ex Post Facto Clause applies to government actions that "make[ ] more burdensome the punishment for a crime, after its commission." *Barna v. Travis*, 239 F.3d 169, 171 (2d Cir. 2001). "A criminal or penal law is ex post facto when it is: (1) retrospective, and (2) more onerous than the law in effect on the date of the offense." *United States v. Ramirez*, 846 F.3d 615, 619 (2d Cir. 2017). But any claim based on this constitutional provision would fail for the same basic reasons that plaintiff's Sixth Amendment challenge has failed: he was not subjected to any *criminal* process.

**4. Due Process**

Plaintiff's amended complaint has not identified the Due Process Clause of the Fourteenth Amendment, but his complaints about improper procedures and/or discipline might fit under this constitutional rubric.

The Due Process Clause protects procedural and substantive rights. *Page v. Cuomo*, 478 F. Supp. 3d 355, 370 (N.D.N.Y. 2020). Procedural due process requires that "a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

"To assert a violation of procedural due process rights, a plaintiff must first identify a property right, second show that the state has deprived him of that right, and third show that the deprivation was effected without due process." *Ferreira v. Town of E. Hampton*, 56 F. Supp. 3d 211, 225 (E.D.N.Y. 2014) (citation omitted). "Notice and an opportunity to be heard are the hallmarks of due process." *Id.*

Upon review, any procedural due process claim would fail. Assuming that plaintiff enjoyed a state-created interest (whether it is a property right in the pay raise or in a positive performance rating or perhaps a more generalized liberty interest in his good workplace reputation), the amended

complaint indicates that he received constitutionally adequate pre-deprivation process.

In particular, plaintiff alleges that he received a written notice that he was being charged with misconduct for repeatedly violating the COVID-19 policies in accordance with the terms of the parties' collective bargaining agreement. Am. Compl. at 103; Am. Compl. ¶ 87. This letter explained that a hearing would be conducted on the charge. *Id.* Thereafter, plaintiff, after consulting with a union representative and hiring his own lawyer, entered into a stipulation in which he agreed to plead guilty to the charges and pay a fine. Am. Compl. at 101–102; Am. Compl. ¶¶ 87–94.

**\*15** The Second Circuit has repeatedly held that this kind of pre-deprivation notice, combined with a grievance process set forth in a collective bargaining agreement, satisfies the demands of procedural due process. *See, e.g., Adams v. Suozzi*, 517 F.3d 124, 128 (2d Cir. 2008). Under those circumstances, a plaintiff can still seek relief in a § 1983 procedural due process claim, but only if he can plausibly "establish that the grievance procedures in a collective bargaining agreement are an inadequate remedy." *Id.* at 129.

Plaintiff has not done so. He has not identified any shortcoming in this contractually defined grievance process that might raise constitutional concerns. Notably, the unsatisfactory job rating that plaintiff received was issued for the one-year period during which he pleaded guilty to these misconduct charges.

To the extent that plaintiff sought to challenge that determination directly, the amended complaint alleges that he *also* had an opportunity to appeal that determination. In fact, his pleading alleges that he pursued an administrative appeal of that bad job rating to the NYSTA.

Where, as here, the deprivation occurred pursuant to an established state procedure, the state can foresee when the deprivation will occur and is in a position to provide a pre-deprivation hearing. *King v. N.Y. City Emp. Ret. Sys.*, 212 F. Supp. 3d 371, 401 (E.D.N.Y. 2016). Under those circumstances, the mere availability of post-deprivation process will not *necessarily* satisfy due process. *See id.*

Importantly, however, a pre-deprivation hearing is not *always* necessary to pass constitutional muster. There is no indication that this rating system causes the kind of serious or significant deprivation of a state-created interest (*e.g.*, a termination of employment) that would necessarily *require* a further pre-deprivation hearing beyond the notice-and-hearing process that already occurred on the underlying charges of misconduct. [12]

In sum, plaintiff has not plausibly alleged a violation of his procedural due process rights in light of the alleged fact that he (1) received written notice of impending discipline based on the three JCMs; (2) participated in a counseled hearing process on those accusations; (3) did not contest the validity of the JCMs in that setting but rather pleaded guilty; and, as a result (4) later received an unsatisfactory job rating for that time period, which he (5) also administratively appealed. *Cf. Kieffer v. N.Y. State Thruway Auth.*, 522 N.Y.S.2d 747, 749 (3d Dep't 1987) (rejecting due process claim based on unsatisfactory rating).

To the extent plaintiff's amended complaint might be understood to raise a substantive due process claim, it must also be dismissed. Substantive due process protects against government action that is "arbitrary, conscience shocking, or oppressive in a constitutional sense," but not against official conduct that is merely "incorrect or ill-advised." *Page*, 478 F. Supp. 3d at 371 (citation omitted). In other words, "substantive due process rights are violated only by conduct 'so outrageously arbitrary as to constitute a gross abuse of governmental authority.' " *Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 237 (E.D.N.Y. 2009) (quoting *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999)). There is no such outrageous conduct alleged here.

### 5. Equal Protection

**\*16** Plaintiff's amended complaint has not identified the Equal Protection Clause of the Fourteenth Amendment, either. But again, his complaints about improper discipline imposed upon him by his public employer might fit under this constitutional rubric.

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any persons within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This constitutional provision is "essentially a direction that all persons similarly situated be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). "There are a number of common methods for pleading an equal protection claim." *Kisembo v. N.Y. State Office of Children & Family Servs.*, 285 F. Supp. 3d 509, 523 (N.D.N.Y. 2018).

Case 3:23-cv-01547-BKS-ML    Document 43    Filed 10/08/25    Page 40 of 115

Bennett v. New York State Thruway Authority, Not Reported in Fed. Supp. (2024)

First, "[a] plaintiff could point to a law or policy that 'expressly classifies persons on the basis of race.' " *Floyd v. City of N.Y.*, 959 F. Supp. 2d 540, 570 (S.D.N.Y. 2013) (quoting *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 1999)).

Second, "a plaintiff could identify a facially neutral law or policy that has been applied in an intentionally discriminatory manner." *City of Oneonta*, 221 F.3d at 337 (citing *Yick Wo v. Hopkins*, 118 U.S. 356, 373–74 (1886)).

Third, "[a] plaintiff could also allege that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus." *Floyd*, 959 F. Supp. 2d at 570 (citation omitted).

Under any one of these three theories, a plaintiff "must prove purposeful discrimination directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (cleaned up); *see also Keles v. Davalos*, 642 F. Supp. 3d 339, 366–67 (E.D.N.Y. 2022).

Plaintiff has not done any of that. However, even "[w]here there is no allegation of membership in a protected class, the plaintiff may still prevail on either a 'class of one' or 'selective enforcement' theory." *Brown v. Griffin*, 2019 WL 4688641, at *4 (S.D.N.Y. Sept. 25, 2019).

Pursuant to *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), a plaintiff may assert a "class of one" claim by alleging that "they were intentionally treated different from others similarly situated and that there was no rational basis for this difference in treatment." *Doe v. Vill. of Mamaroneck*, 462 F. Supp. 2d 520, 558 (S.D.N.Y. 2006).

Alternatively, pursuant to *LeClair v. Saunders*, 627 F.2d 606 (2d Cir. 1980), a plaintiff may assert a "selective enforcement" claim by showing that they were treated differently based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. *Savino v. Town of Southeast*, 983 F. Supp. 2d 293, 301 (S.D.N.Y. 2013) (citations omitted).

Measured against these theories, there is no indication that plaintiff has a viable § 1983 Equal Protection claim. There is not even a whiff of any class-based animus from any of the named defendants. Nor is there any hint that any of the

defendants treated plaintiff differently than his peers based on any constitutionally impermissible criteria.

### E. Other Federal Statutes

Plaintiff's amended complaint also purports to assert claims under 18 U.S.C. §§ 241, 242, 351(e) and 28 U.S.C. § 4101. Am. Compl. at 7. But plaintiff cannot bring claims under those federal statutes because they do not create any causes of action that can be pursued by private plaintiffs.

 **\*17**  First, a private plaintiff cannot pursue a claim under the criminal statutes found in Title 18 of the United States Code. "It is a truism, and has been for many decades, that in our federal system crimes are always prosecuted by the Federal Government, not ... by private complaints." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86–87 (2d Cir. 1972). Consequently, the Second Circuit has repeatedly held that there is no private right of action under Title 18 of the U.S. Code. *See, e.g.*, *Storm-Eggink v. Gottfried*, 409 F. App'x 426, 427 (2d Cir. 2011) (summary order) (collecting cases).

Second, 28 U.S.C. § 4101 does not create a cause of action, either. This provision contains definitions, including a definition of "defamation," in the context of a statute that allows actions recognizing foreign defamation judgments. "Although the tort of defamation is a well-recognized cause of action under state common law, federal law does not create a general cause of action or provide a basis for federal question jurisdiction for defamation." *Thomas v. Brasher-Cunning ham*, 2020 WL 4284564, at *10 (D. Conn. July 27, 2020) (collecting cases).

### F. State-Law Claims

Broadly construed, plaintiff's amended complaint also asserts various common law tort claims, or perhaps breach of contract claims. Those claims arise under state law. But the basis for jurisdiction in this forum is federal question, since all the parties are from New York.

"Where, as here, a plaintiff's federal claims will be dismissed before trial, a district court should generally decline to exercise supplemental jurisdiction over any state law claims absent exceptional circumstances." *B.A. v. City of Schenectady Sch. Dist.*, 209 F. Supp. 3d 515, 528 (N.D.N.Y. 2016). There are no exceptional circumstances presented in this case. Accordingly, plaintiff's state law claims will be dismissed without prejudice.

Case 3:23-cv-01547-BKS-ML    Document 43    Filed 10/08/25    Page 41 of 115

Bennett v. New York State Thruway Authority, Not Reported in Fed. Supp. (2024)

### G. Leave to Amend

The final question is whether plaintiff should be given leave to amend his pleading, which he has already amended once as of right. "Generally, leave to amend should be freely given, and a pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (cleaned up). Even so, "it is well established that leave to amend a complaint need not be granted where amendment would be futile." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003).

After considering the matter, plaintiff will not be given further leave to amend because the problems with his claims are substantive—they involve an objection to progressive discipline arising from his non-compliance with COVID-19 policies that applied generally to NYSTA employees.

Plaintiff has not plausibly alleged that the discipline he received—which came after notice and a hearing in accordance with his collective bargaining agreement—was incompatible with the reasonable accommodation he received regarding the COVID-19 face mask policy (as opposed to the facial hair or respirator fit test accommodation he had previously received).

Notably, plaintiff might well have a viable state-law claim based on these facts, perhaps for some violation of the collective bargaining agreement or for a breach of some contractual relationship with his employer. But those are questions for state court. Because plaintiff cannot sustain any cognizable *federal* claims based on this fact pattern, leave to amend those claims would be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Accordingly, leave to amend must be denied.

### V. CONCLUSION

**\*18** Plaintiff's amended complaint must be dismissed. Liberally construed, he has failed to plausibly allege any cognizable federal claims against any of the named defendants. The Court's decision today does not preclude plaintiff from re-filing his state-law claims in state court.

Therefore, it is

ORDERED that

1. Defendants' motion to dismiss (Dkt. No. 32) is GRANTED;

2. Plaintiff's amended complaint is DISMISSED without leave to amend;

3. Plaintiff's federal-law claims are DISMISSED with prejudice; and

4. Plaintiff's state-law claims are DISMISSED without prejudice.

IT IS SO ORDERED.

### All Citations

Not Reported in Fed. Supp., 2024 WL 1053222

---

### Footnotes

1    Plaintiff has also filed a number of his own motions: he moved for summary judgment against defendant Boehm, Dkt. No. 40, a declaratory judgment, Dkt. No. 41, summary judgment against defendant Post, Dkt. No. 42, filed a letter motion requesting that defendants' motion to dismiss be rejected, Dkt. No. 47, summary judgment against defendants Naples, Oaksford, and Millan, Dkt. No. 48, and declaratory judgment, Dkt. No. 49. Those motions have been held in abeyance pending a decision on this motion to dismiss. Dkt. No. 46.

2    The amended complaint includes numbered paragraphs, but only as to certain allegations on certain pages. Citations to unnumbered facts are found on the pages corresponding to the CM/ECF header.

Bennett v. New York State Thruway Authority, Not Reported in Fed. Supp. (2024)

Case 3:23-cv-01547-BKS-ML    Document 43    Filed 10/08/25    Page 42 of 115

3    The Court is reluctant to consider this kind of extraneous material on a motion to dismiss, but the cited material—in particular, the date and content of this document—are integral to plaintiff's claims. Notably, the substance of this document appears in the pleading, too. Am. Compl. ¶ 17.

4    Plaintiff alleges that an NYSTA employee named Chris Dulong "was also involved in disciplinary issues regarding facial hair and fit testing requirements" and was later terminated. Am. Compl. at 15–16. Plaintiff does not allege that he was terminated or disciplined for his facial hair or for the fit testing requirement.

5    Even assuming plaintiff intended to assert this kind of claim, any such claim would fail. *See, e.g.*, *Vanwyckhouse v. Tessy Plastics*, 2023 WL 5452819, at *4 (N.D.N.Y. Aug. 24, 2023) (D'Agostino, J.) (rejecting religious discrimination claim based on COVID-19 workplace masking policy).

6    This is a Rule 12(b)(1) dismissal. *Morales*, 22 F. Supp. 3d at 268 ("A claim that is barred by a state's sovereign immunity must be dismissed pursuant to the Eleventh Amendment for lack of subject matter jurisdiction.").

7    If one or more of plaintiff's ADA claims might have proved viable under *Ex parte Young*, they would still fail for the reasons explained in this discussion of the Rehabilitation Act.

8    An alternative way to satisfy the ADA's definition of "disability" is with a showing that the plaintiff was "regarded as" having a disability. 42 U.S.C. § 12102(1)(C). This provision sweeps more broadly than the principal definition of a disability: it extends to conduct related to any "actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." § 12102(3)(A).

9    On a motion to dismiss, the elements of a plaintiff's *prima facie* case are not treated as an evidentiary burden but are useful as "an outline of what is necessary to render a plaintiff's employment discrimination claims for relief plausible." *Sosa v. N.Y. City Dep't of Educ.*, 368 F. Supp. 3d 489, 495 (E.D.N.Y. 2019) (citation omitted).

10   However, the myriad other slights identified by plaintiff do not qualify. *See, e.g.*, *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 f.3d 556, 568–72 (2d Cir. 2011) (holding that investigatory sessions, counseling, threats of termination, hostile behavior during meetings, being made to come to work on a day off under false pretenses, and being switched to a night shift did not qualify).

11   Section 1983 claims asserted directly against New York State, the NYSTA, or the individual defendants in their official capacities are subject to dismissal on the basis of Eleventh Amendment immunity for essentially the same reasons explained *supra*. But a § 1983 individual-capacity claim is still available against a state actor for his "personal involvement" in a constitutional harm. So these claims are construed against the individual defendants in their personal capacities.

12   Under these circumstances, the availability of a post-deprivation procedure, with an Article 78 proceeding in state court being the big one, would be more than sufficient. "Article 78 of the New York Civil Practice law, an amalgam of the common law writs of certiorari to review, mandamus, and prohibition," *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 811 (2d Cir. 1996), "provides the mechanism for challenging a specific decision of a state administrative agency," *Campo v. N.Y. City Emp. Ret. Sys.*, 843 F.2d 96, 101 (2d Cir. 1988).

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

## Attorneys and Law Firms

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

## DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,

1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On
August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. Ruffolo v. Oppenheimer & Co., 987 F.2d 129,
131 (2d Cir.1993). In exercising that discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. Ruffolo, 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the
additional allegations fail to cure the deficiency which

Case 3:23-cv-01547-BKS-ML    Document 43    Filed 10/08/25    Page 44 of 115

Brown v. Peters, Not Reported in F.Supp. (1997)

forms the basis of defendants' motion to dismiss—the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987).

**\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." *Smiley v. Davis,* 1988 WL 78306, \*2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo*

determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See Camardo v. General Motors Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambrier v. Leonardo,* 1991 WL 44838, \*1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, \*2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, \*1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also Scipio v. Keane,* 1997 WL 375601, \*1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P. 72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is

no clear error on the face of the record in order to accept the recommendation").

 **\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous.[1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim*.

**BACKGROUND**

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

 **\*4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams, the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992,

Case 3:23-cv-01547-BKS-ML    Document 43    Filed 10/08/25    Page 46 of 115

Brown v. Peters, Not Reported in F.Supp. (1997)

upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See LaBounty v. Adler,* 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork

Case 3:23-cv-01547-BKS-ML    Document 43    Filed 10/08/25    Page 47 of 115

Brown v. Peters, Not Reported in F.Supp. (1997)

relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dismiss should be granted.

B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

C. Motion to Dismiss by Herman, Stewart and Stanford.

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that

defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

D. Plaintiff's "John Doe" Claims.

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

E. Discovery Motions.

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

## CONCLUSION

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:23-cv-01547-BKS-ML    Document 43    Filed 10/08/25    Page 48 of 115

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.* *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

---

**Footnotes**

1    I note, however, that the report-recommendation would survive even *de novo* review.

---

End of Document    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 4636433
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Dagoberto CABRAL, Plaintiff,
v.
CITY OF NEW YORK, et al., Defendants.

No. 12 Civ. 4659(LGS).
|
Signed Sept. 17, 2014.

*OPINION AND ORDER*

LORNA G. SCHOFIELD, District Judge.

**\*1** Plaintiff Dagoberto Cabral brings this action pursuant to 42 U.S.C. § 1983 against Defendants City of New York, New York City Police Department, Detective Tyrone Thompson and two John Does. The action arises from the arrest of and subsequent criminal proceedings against Plaintiff, who alleges violations of the Fourth and Fourteenth Amendments and New York law. Defendants move for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and for dismissal pursuant to Rule 12(c), and Plaintiff cross-moves for partial summary judgment pursuant to Rule 56. For the reasons stated below, Defendants' motion is granted in part and denied in part, and Plaintiff's motion is likewise granted in part and denied in part.

**BACKGROUND**

The following facts are taken from Defendants' Rule 56.1 Statement, Plaintiff's CounterStatement, Plaintiff's own Rule 56.1 Statement and exhibits accompanying the submissions. As is required on a motion for summary judgment, the facts are construed in the light most favorable to the nonmoving party.

On June 24, 2011, at around 6:45 p.m., Plaintiff was sitting with another person in his Dodge minivan parked near 945 St. Nicholas Avenue in New York City when a third person, Billy Epps, approached and entered it. Around the same time, Defendant Thompson was part of a police team executing a search warrant at a nearby apartment. Defendant Thompson stated that he did not know what contraband the police were looking for at the apartment or what contraband, if any,

was recovered (guns were a "possibility," as were narcotics) because he did not stay for the search warrant to be fully executed. Instead, he went to the front of the apartment building, where he received a phone call from a confidential informant. The informant told him that a person "involved with" the apartment was entering a van parked on St. Nicholas Avenue. The informant described that person as a dark-skinned black male. Plaintiff disputes that the call between Defendant Thompson and the informant ever occurred.

Defendant Thompson and another police officer then approached Plaintiff's minivan; Thompson had his gun drawn. When Defendant Thompson approached, he saw a black male seated in the rear of the vehicle and two Hispanic males seated in the front. By his own account, Defendant Thompson knew as he moved toward the vehicle that the individual seated in the rear, and not Plaintiff who was seated in the front, was the person described by the informant. Also by his own account, Defendant Thompson did not believe that the individual seated in the rear was involved in illegal activity at that time. Defendant Thompson and the other officer ordered all occupants to exit the minivan, handcuffed them and placed them "[c]urbside." Defendant Thompson returned to the minivan, purportedly smelled marijuana, opened the compartments on the minivan floor, and discovered money in a book bag and what he believed from his training and experience was marijuana in a sealed glass jar inside a zip-lock bag. According to Defendant Thompson, after discovering the marijuana and the cash, he called his supervisor, who then sent additional officers to the scene. According to Plaintiff, the officers called for and received backup before Defendant Thompson began "[g]oing through everything." Plaintiff acknowledges that the marijuana belonged to him and claims that the book bag contained about $20,000. Plaintiff was arrested for the unlawful possession of marijuana and strip searched. The marijuana, the minivan and $8,800 in cash were vouchered.

**\*2** The day after Plaintiff's arrest, Defendant Thompson swore to an affidavit to obtain a warrant to search Plaintiff's minivan, stating that "there is reasonable cause to believe that evidence of the sale and possession of marijuana, and conspiracy to commit those crimes, will be found, inside the target vehicle ...." On July 21, 2011, Defendant Thompson swore to another affidavit stating that Plaintiff was in possession of marijuana on June 24, 2011, whereupon Plaintiff was criminally charged with the unlawful possession of marijuana. The assistant district attorney assigned to

Plaintiff's case did not speak with Defendant Thompson about the offenses with which Plaintiff was charged.

On June 29, 2011, Plaintiff signed a receipt indicating that a number of items, including $8,800 in cash, were returned to him. Plaintiff claims that he did not actually receive the $8,800 until February 2012, and that an additional $12,200 remains unreturned. Plaintiff, through his attorney, continued to seek the return of his property in August and September 2011.

The assistant district attorney assigned to prosecute Plaintiff did not prepare any witnesses before November 10, 2011, the scheduled date for Plaintiff's suppression hearing. The criminal case against Plaintiff was dismissed on November 10, 2011, on speedy trial grounds.

Plaintiff commenced the instant action on June 14, 2012. On consent of the parties, the Court stayed discovery on Plaintiff's *Monell* claims (i.e., failure to train and failure to supervise). On October 10, 2013, Defendants filed a motion for partial summary judgment and judgment on the pleadings as to the *Monell* claims. On November 1, 2013, Plaintiff filed a cross-motion for partial summary judgment.

### STANDARD

A court reviews motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure under the same standard as motions to dismiss pursuant to Rule 12(b)(6). *Bank of N.Y. v. First Millennium, Inc.,* 607 F.3d 905, 922 (2d Cir.2010). "To survive a Rule 12(c) motion, the complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' " *Id.* (quoting *Hayden v. Paterson,* 594 F.3d 150, 160 (2d Cir.2010)). The Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the nonmoving party. *See L–7 Designs, Inc. v. Old Navy, LLC,* 647 F.3d 419, 429 (2d Cir.2011). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (alteration in original) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)). Rule 8 of the Federal Rules of Civil Procedure "requires factual allegations that are sufficient to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Anderson News, L.L.C. v. Am. Media, Inc.,* 680 F.3d 162, 182 (2d Cir.2012), *cert. denied,* 133 S.Ct. 846 (2013) (quoting *Twombly,* 550 U.S. at 555).

**\*3** The standard for summary judgment is well established. Summary judgment is appropriate where the record before the court establishes that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The Court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *In re "Agent Orange" Prod. Liab. Litig.,* 517 F.3d 76, 87 (2d Cir.2008). A motion for summary judgment should be denied "if the evidence is such that a reasonable jury could return a verdict" in favor of the nonmoving party. *NetJets Aviation, Inc. v. LHC Commc'ns, LLC,* 537 F.3d 168, 178–79 (2d Cir.2008). Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

### DISCUSSION

The Complaint's statement of claims asserts thirteen causes of action: (i) false arrest, (ii) unlawful detention and confinement, (iii) failure to train and (iv) failure to supervise in violation of the Fourth and Fourteenth Amendments; and (v) false arrest, (vi) assault, (vii) battery, (viii) malicious prosecution, (ix) abuse of process, (x) negligence, (xi) intentional infliction of emotional distress, (xii) negligent infliction of emotional distress and (xiii) prima facie tort in violation of New York law. Plaintiff states in his motion papers that the Complaint contains five additional § 1983 claims: (i) the unlawful search of Plaintiff's vehicle at the scene of his arrest, (ii) the unlawful strip search of Plaintiff, (iii) malicious prosecution, (iv) the unlawful seizure of the vehicle and (v) the unlawful seizure of Plaintiff's U.S. currency. [1] Defendants move for judgment on the pleadings on Plaintiff's two *Monell* claims and for summary judgment on all remaining claims except for the § 1983 unlawful vehicle search claim. Plaintiff likewise moves for summary judgment on all of his § 1983 claims except the § 1983 unlawful vehicle search claim.

As a preliminary matter, Defendants New York City Police Department, John Doe No. 1 and John Doe No. 2 are dismissed. The New York City Police Department is not a suable entity, *Jenkins v. City of New York,* 478 F.3d 76, 93 n. 19 (2d Cir.2007), and Plaintiff has failed to identify the two unnamed Defendants even after having had the full opportunity to conduct discovery, *Coward v. Town & Vill. of*

*Harrison,* 665 F.Supp.2d 281, 300 (S.D.N.Y.2009) (collecting cases).

## I. False Arrest, Detention & Confinement (Counts I, II & V)

All parties move for summary judgment on Plaintiff's false arrest, detention and confinement claims. Summary judgment is granted for Plaintiff with respect to his detention prior to Defendant Thompson's discovery of marijuana, and for Defendants with respect to Plaintiff's detention thereafter.

### A. Plaintiff's Detention Before the Discovery of Marijuana

**\*4** Defendant Thompson's conduct in handcuffing and detaining Plaintiff before discovering marijuana violated the Fourth and Fourteenth Amendments and is not entitled to qualified immunity.

In the absence of probable cause to arrest, *"Terry v. Ohio[,* 392 U.S. 1 (1968),]* and *Michigan v. Summers[,* 452 U.S. 692 (1981),]* provide distinct standards for reasonable stops ....*"
*United States v. Bailey,* 743 F.3d 322, 334 (2d Cir.2014) ("*Bailey V*"). A *Terry* stop "require[s] reasonable suspicion of criminal conduct beyond proximity to a location of suspected crime," and a *Summers* detention "require[s] spatial proximity to the premises to be searched without regard to reasonable suspicion." *Id.*

### 1. *Terry* Analysis

A *Terry* stop is justified if an officer "reasonably suspects that the person apprehended is committing or has committed a criminal offense." *Arizona v. Johnson,* 555 U.S. 323, 326 (2009). Reasonable suspicion requires more than a "hunch." *Terry,* 392 U.S. at 27. It demands "specific and articulable facts which, taken together with rational inferences from those facts," *id.* at 21, provide detaining officers with a "particularized and objective basis for suspecting wrongdoing," *United States v. Arvizu,* 534 U.S. 266, 273 (2002) (internal quotation marks omitted).

Even viewing the record in the light most favorable to Defendants, there could not have been the reasonable suspicion necessary to stop Plaintiff pursuant to *Terry* in the first instance. First, when Plaintiff was initially detained, the only fact connecting him to any possible criminal activity was that Epps, the person associated with the apartment being searched, had just entered the minivan in which Plaintiff

was sitting. However, Defendant Thompson admitted that he knew, upon approaching the vehicle, that the individual seated in the back was the person connected to the apartment being searched, and therefore that Plaintiff was not that person. Defendant Thompson also admitted that he did not believe that Epps was involved in illegal activity at the time. In light of these admissions, any nexus between Plaintiff and Epps was insufficient to permit Defendant Thompson to order Plaintiff out of a parked vehicle at gunpoint and immediately handcuff him. Although "[t]he [reasonable suspicion] standard is not high," *Bailey V,* 743 F.3d at 332 (internal quotation marks omitted), it is not satisfied on these facts, and Plaintiff's detention cannot be justified by *Terry.* [2]

### 2. *Summers* Analysis

Under *Summers,* a detention incident to search is constitutional only if "limit[ed] ... to the area in which an occupant poses a real threat to the safe and efficient execution of a search warrant." *Bailey v. United States,* 133 S.Ct. 1031, 1042 (2013) ("*Bailey IV*"). In determining whether an occupant was lawfully detained within such "immediate vicinity" of the premises to be searched, courts may consider "the lawful limits of the premises, whether the occupant was within the line of sight of his dwelling, the ease of reentry from the occupant's location, and other relevant factors." *Id.* Here, nothing in the record suggests—and Defendants do not claim—that Plaintiff was an occupant of the searched apartment at any relevant time, had any intention of entering it or otherwise had any connection to it. [3] Moreover, Plaintiff was inside a vehicle that was "[a]round the block" from the apartment according to Defendant Thompson, not within the line of sight of his dwelling, and access to the apartment presumably would have required passage through at least one if not two doors. These facts are far from satisfying the *Summers* standard, and could not have justified Plaintiff's initial detention as effected incident to the search of the apartment.

### 3. Qualified Immunity

**\*5** Qualified immunity is an affirmative defense for which defendants have the burden of proof. *See Lore v. City of Syracuse,* 670 F.3d 127, 149 (2d Cir.2012). An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. *See Ashcroft v. al—Kidd,* 131 S.Ct. 2074, 2080 (2011). A defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently

definite for any reasonable official in the defendant's shoes to understand that he was violating it. *Id.* at 2083–84. "In other words, existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate." *Plumhoff v. Rickard,* 134 S.Ct. 2012, 2023 (2014) (internal quotation marks omitted). "[T]he salient question ... is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged [conduct] was unconstitutional." *Tolan v. Cotton,* 134 S.Ct. 1861, 1866 (2014) (alterations in original) (internal quotation marks omitted). The "dispositive inquiry ... is whether it would [have been] clear to a reasonable officer in the agents' position that [their] conduct was unlawful in the situation [they] confronted." *Wood v. Moss,* 134 S.Ct. 2056, 2059 (2014) (alterations in original) (internal quotation marks omitted). "[I]f ... officers of reasonable competence could disagree ..., immunity should be recognized." *Hope v. Pelzer,* 536 U.S. 730, 752 (2002) (internal quotation marks omitted). Whether a clearly established right existed must be considered "in light of the specific context of the case, not as a broad general proposition ." *Brosseau v. Haugen,* 543 U.S. 194, 198 (2004) (internal quotation marks omitted).

Qualified immunity does not save Defendant Thompson from liability for Plaintiff's unlawful initial detention. First, as discussed above, the record contains no evidence tending to show that Defendant Thompson had any individualized suspicion about Plaintiff, whether reasonable or unreasonable. Thus, there is no factual basis upon which to base a finding of qualified immunity for Defendant Thompson under *Terry.*

Second, with respect to *Summers,* the relevant Supreme Court jurisprudence is grounded in the premise that those who may be subject to detentions incident to search are *occupants* of the searched premises. 452 U.S. at 701–05. This occupancy nexus is relevant to each of the three law enforcement interests underpinning the *Summers* detention: (1) "minimizing the risk of harm to the officers" conducting the search, *id.* at 702; (2) "the orderly completion of the search," which "may be facilitated if the occupants of the premises are present," *id.* at 703; and (3) "preventing flight in the event that incriminating evidence is found," *id.* at 702; *see also Bailey IV,* 133 S.Ct. at 1038–1041 (elaborating on the three law enforcement interests underpinning a *Summers* detention). The Supreme Court has never departed from the occupancy requirement, including in its two cases revisiting *Summers* that had been decided at the time of Plaintiff's 2011 detention. *See Los Angeles Cnty. v. Rettele,* 550 U.S. 609 (2007) (finding that

the detention of individuals found on the premises at the time of the search was constitutional pursuant to *Summers* ); *Muehler v. Mena,* 544 U.S. 93 (2005) (same). Although some courts have found constitutional the detention of individuals who were leaving the premises to be searched, each case involved someone who had just occupied the premises when the officers arrived to execute a search. *See Summers,* 452 U.S. at 693 & n. 1 (upholding the detention of an individual as he exited the front door of the premises and descended the porch steps); *see also United States v. Fullwood,* 86 F.3d 27, 29–30 (2d Cir.1996) (upholding the detention of an individual found outside the premises and about to enter his vehicle); *United States v. Bailey,* 468 F.Supp.2d 373, 376 (E.D.N.Y.2006) ("*Bailey I*" ) (upholding the detention of two individuals after they exited the relevant premises and drove for one mile), *aff'd,* No. 06 Cr. 232, 2010 WL 277069 (E.D.N.Y. Jan. 19, 2010) ("*Bailey II*" ), *aff'd,* 652 F.3d 197 (2d Cir.2011), *rev'd,* 133 S.Ct. 1031, *aff'd* 743 F.3d 322 (2d Cir.2014). Even in *Bailey,* the case most heavily relied upon by Defendants on the qualified immunity issue, [4] the district court stated that officers needed at minimum a "reasonable basis to believe that the person [to be detained] has just left or is about to enter the location to be searched." *Bailey II,* 2010 WL 277069, at *14. Thus, in 2011, at the time of Plaintiff's detention, the occupancy nexus was a clearly established prerequisite to the invocation of *Summers.*

**\*6** Here, as discussed above, no evidence suggests that Defendant Thompson believed or had grounds to believe that Plaintiff had any connection to the apartment that was being searched, let alone that Plaintiff had occupied or intended to occupy the apartment. In light of the clearly established requirement that detentions made pursuant to *Summers* be limited to the occupants of the premises to be searched, no reasonable officer could have believed that the detention of Plaintiff as he sat in a parked vehicle on another block was justified by *Summers.* Consequently, Defendant Thompson is not entitled to qualified immunity under the *Summers* theory.

To the extent that Defendants could argue that Plaintiff's initial detention was a reasonably necessary step to detaining Epps pursuant to *Summers* or *Terry,* that argument would fail. Even assuming that Defendant Thompson is entitled to qualified immunity for the detention of Epps, that does not by itself justify the detention of Plaintiff. In *United States v. Di Re,* police arrested all three occupants of a car when a police informant in the backseat told the officers that the driver had sold him counterfeit coupons but said nothing about the passenger seated next to the driver. 332 U.S. 581, 583

(1948). The Supreme Court ruled that the passenger's arrest violated the Fourth Amendment because "[a]ny inference that everyone on the scene of a crime is a party to it must disappear if the Government informer singles out the guilty person." *Id.* at 594; *see also Ybarra v. Illinois,* 444 U.S. 85, 91 (1979) ("[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person."). *Cf. Maryland v. Pringle,* 540 U.S. 366, 374 (2003) (finding that police had probable cause to arrest Pringle and two other occupants of a car because "[n]o such singling out occurred in this case"). Likewise here, the confidential informant had singled out Epps alone, and Defendant Thompson had no information about Plaintiff except that he was with Epps in the car. Because it would have been clear to a reasonable officer in Defendant Thompson's position that "merely ... sitting in the suspect's vehicle when officers approached," *United States v. Delossantos,* 536 F.3d 155, 160 (2d Cir.2008), "do[es] not, without more, amount to probable cause," *id.* at n. 4, Defendant Thompson is not entitled to qualified immunity for Plaintiff's initial detention, even assuming he would be entitled to qualified immunity for Epps's detention. [5]

In light of the foregoing, summary judgment is granted in favor of Plaintiff for his unlawful detention before Defendant Thompson's discovery of marijuana.

### B. Plaintiff's Detention After the Discovery of Marijuana

Plaintiff's claims for false arrest and unlawful detention and confinement (Counts I, II, V) must be analyzed separately for the period after the officers discovered marijuana in Plaintiff's vehicle. Because probable cause existed for the arrest, summary judgment is granted to Defendants on Counts I, II and V for the period after the discovery.

**\*7** " 'In analyzing § 1983 claims for unconstitutional false arrest, [courts generally look] to the law of the state in which the arrest occurred.' " *Jaegly v. Couch,* 439 F.3d 149, 151–52 (2d Cir.2006) (quoting *Davis v. Rodriguez,* 364 F.3d 424, 433 (2d Cir.2004)). In order to state a claim for false arrest or imprisonment under New York law, a plaintiff must show that: (1) the defendant intentionally confined the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise justified. *See Posr v. Doherty,* 944 F.2d 91, 97 (2d Cir.1991). Under New York law, "the existence of

probable cause is an absolute defense to a false arrest claim." *Jaegly,* 439 F.3d at 152.

" 'Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.' " *Torraco v. Port Auth. of N.Y. & N.J.,* 615 F.3d 129, 139 (2d Cir.2010) (quoting *Escalera v. Lunn,* 361 F.3d 737, 743 (2d Cir.2004)). "The inquiry is limited to 'whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest.' " *Gonzalez v. City of Schenectady,* 728 F.3d 149, 155 (2d Cir.2013) (quoting *Jaegly,* 439 F.3d at 153).

There is no dispute that Defendant Thompson ordered Plaintiff and two other individuals out of Plaintiff's vehicle, in which Defendant Thompson then discovered marijuana. That fact alone provides probable cause for Plaintiff's arrest. *See Abreu v. Romero,* 466 F. App'x 24, 26 (2d Cir.2012) (finding, in a New York case, that probable cause to arrest existed after officers found two ounces of marijuana in the plaintiff's bedroom).

Plaintiff argues that the charge for which he was arrested —unlawful possession of marijuana in violation of New York Penal Law 221.05—does not authorize law enforcement officers to effect custodial arrests. With respect to the § 1983 false arrest claim, the Supreme Court in *Virginia v. Moore,* 553 U.S. 164 (2008), rejected the same argument. In that case, the appellant argued that he was unlawfully arrested for the misdemeanor of driving on a suspended license because state law did not authorize the arrest. *Id.* at 167. The Supreme Court found that the arrest was made with probable cause and did not violate the Fourth Amendment, even if the arrest was impermissible under state law. *Id.* at 178. The Court held that "state restrictions do not alter the Fourth Amendment's protections," and that to hold otherwise would cause the Fourth Amendment to "vary from place to place and from time to time ...." *Id.* at 176 (internal quotation marks omitted). Moreover, contrary to Plaintiff's position, New York law authorizes arrest for the unlawful possession of marijuana in violation of New York Penal Law 221.05. Under New York Criminal Procedure Law § 140. 10, "a police officer may arrest a person for: (a) [a]ny offense when he or she has reasonable cause to believe that such person has committed such offense in his or her presence." An "offense" under § 140.10 is defined by New York Penal Law § 10.00(1) as "conduct for which a sentence to a term of imprisonment or

to a fine is provided by any law of this state or by any law, local law or ordinance of a political subdivision of this state ....." New York Penal Law § 221.05, under which Plaintiff was charged, expressly provides for punishment by a fine. Plaintiff's invocation of New York Criminal Procedure Law § 150.75—requiring that "an appearance ticket shall promptly be issued and served upon" arrestees in connection with § 221.05—does not change the fact that the unlawful possession of marijuana in violation of § 221.05 is an arrestable offense. Consequently, Plaintiff's argument fails with respect to his false arrest claims under both federal and state laws.

**\*8** Plaintiff asks that the Court decline to follow *Townes v. City of New York,* in which the Second Circuit held that "[v]ictims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy ...; but such victims cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution"—i.e., that the "fruit of the poisonous tree" doctrine does not apply in § 1983 actions. 176 F.3d 138, 148 (2d Cir.1999). *Townes* remains binding law in this circuit. Thus, even assuming that the search of the vehicle that led to the discovery of marijuana in Plaintiff's vehicle was illegal, Plaintiff cannot recover for his arrest on that ground because the arrest was made with probable cause.

## II. Malicious Prosecution (Count VIII and Implicit Federal Claim)

All parties move for summary judgment on Plaintiff's malicious prosecution claims—the state law claim explicitly pleaded in Count VIII, and the § 1983 claim that Plaintiff argues he implicitly pleaded. Under New York law, the elements of a malicious prosecution claim are "(1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor." *Rohman v. N.Y.C. Transit Auth.),* 215 F.3d 208, 215 (2d Cir.2000) (quoting *Posr, 180 F.3d at 417*). Malicious prosecution claims under § 1983 require the additional element of "(5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Id.* Here, there is no dispute that Defendant Thompson discovered marijuana in Plaintiff's vehicle and that Plaintiff acknowledged it belonged to him. That discovery provides the requisite probable cause underlying the criminal prosecution of Plaintiff, defeating any malicious prosecution claim by Plaintiff against Defendants under state or federal law.

Defendants' motion for summary judgment on the malicious prosecution claims is granted, and Plaintiff's motion is denied.

## III. Strip Search (Implicit Claim)

Plaintiff argues that the Complaint sufficiently pleaded a § 1983 strip search claim, and moves for summary judgment on it. Defendants argue that the Complaint failed to plead such a claim. Defendants' motion for summary judgment is granted because the Complaint did not give them fair notice of the claim.

In support of his contention that the strip search claim is well pleaded, Plaintiff points to a paragraph of the Complaint alleging that Plaintiff was "prosecuted for a crime although stopped and searched without legal cause or justification." That allegation alone is too conclusory to sustain a claim, let alone one based specifically on an alleged strip search. To the extent that the allegation refers to an act alleged elsewhere in the Complaint, the only reference to an alleged search is pleaded under the statement of claim for battery, in which the Complaint alleges that "[i]n the course of the arrest, the individual defendants intentionally, harmfully and offensively touched the plaintiff when conducting a pat down search of the plaintiff." The search described is materially different from the strip search referred to in Plaintiff's motion papers, which supposedly occurred during Plaintiff's detention at the precinct.

**\*9** To the extent that Plaintiff may seek to replead the strip search claim pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, repleading would be futile as well as prejudicial to Defendants at this late stage. *Krumme v. WestPoint Stevens Inc.,* 143 F.3d 71, 88 (2d Cir.1998) ("[A] proposed amendment ... [is] especially prejudicial ... [when] discovery had already been completed and [non-movant] had already filed a motion for summary judgment." (alterations in original) (internal quotation marks omitted)); *see also Wilcox v. Cornell Univ.,* 868 F.Supp.2d 186, 187 (S.D.N.Y.2012) (collecting cases), *aff'd,* 11 Civ. 8606, 2012 WL 4903181 (S.D.N.Y. Oct. 10, 2012). This is especially so where Plaintiff must have known about the substance of the claim he would seek to replead—i.e., that he was subjected to a strip search —even before discovery.

## IV. Seizure of Property (Implicit Claim)

Plaintiff argues that the Complaint sufficiently pleaded a § 1983 unreasonable seizure of property claim, and all parties

seek summary judgment on this claim. Summary judgment is granted in favor of Defendants. [6]

The undisputed evidence here demonstrates that the vehicle and the money were seized after Defendant Thompson found the marijuana in a compartment of the minivan, next to a bag containing the money. As with Plaintiff's arrest, the discovery of marijuana provided the requisite probable cause for the seizure of the vehicle and the bag of cash. *See Colorado v. Bannister,* 449 U.S. 1, 3 (1980) (holding that the warrantless seizure of property in a vehicle that officers had probable cause to believe was contraband was permissible).

Moreover, although uncontroverted evidence shows that neither the vehicle nor the cash was released until early 2012, more than two months after the criminal case against Plaintiff had been dismissed, this fact alone does not support a seizure of property claim. "Where ... an initial seizure of property was reasonable, defendants' failure to return the items does not, by itself, state a separate Fourth Amendment claim of unreasonable seizure." *Shaul v. Cherry Valley–Springfield Cent. Sch. Dist.,* 363 F.3d 177, 187 (2d Cir.2004); *accord United States v. Jakobetz,* 955 F.2d 786, 802 (2d Cir.1992). Nor is there a due process claim under the Fourteenth Amendment: "To prevail on [a Fourteenth Amendment due process] claim, the plaintiff must show that [he] 'possessed a protected liberty or property interest, and that he was deprived of that interest without due process.' " *McMenemy v. City of Rochester,* 241 F.3d 279, 285–86 (2d Cir.2001) (quoting *Hynes v. Squillace,* 143 F.3d 653, 658 (2d Cir.1998)). Plaintiff's exhibits show that he made two requests for a hearing on the return of his property—one on August 30, 2011, and another less than two weeks later. No reasonable juror could find, based on these facts alone and in light of the ultimate release of Plaintiff's property, that the deprivation of Plaintiff's property interest in the vehicle and the cash was without due process.

## V. Failure to Train & Supervise (Counts III & IV)

 **\*10**  Because discovery was stayed on Plaintiff's § 1983 claims against the City, Defendants move for judgment on the pleadings pursuant to Rule 12(c) on those claims. That motion is granted because the Complaint fails to allege sufficient claims against the City pursuant to *Monell v. Department of Social Services,* 436 U.S. 658 (1978).

While a city may not be sued under § 1983 "for any injury inflicted solely by its employees or agents," it can be liable if the infliction on plaintiff of a constitutional injury was the result of a municipal "policy or custom." *Id.* at 694. A city "policy or custom" exists "where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a 'deliberate choice' ...." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 126 (2d Cir.2004). A city's failure to train or supervise constitutes "deliberate indifference" when three requirements are met: (1) "a policymaker knows to a moral certainty that her employees will confront a given situation"; (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Jenkins,* 478 F.3d at 94 (internal quotation marks omitted) (citing *Walker v. City of New York,* 974 F.2d 293, 297–98 (2d Cir.1992)). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson,* 131 S.Ct. 1350, 1360 (2011) (citation and internal quotation marks omitted); *see Chamberlain v. City of White Plains,* No. 12 Civ. 5142, 2013 WL 6477334, at \*16–18 (S.D.N.Y. Dec. 10, 2013) (citing *Connick* to rule on a motion to dismiss a failure to train claim).

The Complaint here contains no factual allegations that could support any of the three *Walker* factors. The Complaint contains only conclusory statements about the "custom, practice or official policy" of the City and naked assertions about the City's failure to train and supervise. Because the Complaint fails to plead adequately municipal liability under § 1983 pursuant to *Monell,* the City is dismissed as to all § 1983 claims.

## VI. Assault & Battery (Counts VI & VII)

All parties move for summary judgment on Plaintiff's assault and battery claims under New York law. Defendants' motion for summary judgment is granted on these claims.

"[E]xcept for § 1983's requirement that the tort be committed under color of state law," the elements for a claim of assault and battery against law enforcement officers under New York law and a claim of excessive force under § 1983 are the same. *Posr,* 944 F .2d at 95. "[A]ll claims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its

'reasonableness' standard." *Lennon v. Miller,* 66 F.3d 416, 425 (2d Cir.1995) (quoting *Graham v. Connor,* 490 U.S. 386, 395 (1989)).

**\*11** Here, the only facts suggesting excessive force are the use of guns during the officers' approach and the handcuffing of Plaintiff, the latter of which Plaintiff said caused wrist pain. Defendant Thompson's approach with his gun drawn does not constitute excessive force as a matter of law. *See Mittelman v. Cnty. of Rockland,* No. 07 Civ. 6382, 2013 WL 1248623, at \*13 (S.D.N.Y. Mar. 26, 2013) (finding "insufficient ... Plaintiff's assertion that the officers pointed guns at him ... [because a] threat of force does not constitute excessive force"); *Smith v. Fields,* No. 95 Civ. 8374, 2002 WL 342620, at \*5 (S.D.N.Y. Mar. 4, 2002) (holding that the plaintiff's allegation of being threatened at gunpoint could not support an excessive force claim); *Aderonmu v. Heavey,* No. 00 Civ. 9232, 2001 WL 77099, at \*3 (S.D.N.Y. Jan. 26, 2001) (same).

With respect to the handcuffing, courts evaluating such claims have looked at three factors: (1) whether the handcuffs were unreasonably tight; (2) whether defendants ignored the plaintiff's plea that they were too tight; and (3) the degree of wrist injury. *See Esmont v. City of New York,* 371 F.Supp.2d 202, 215 (E.D.N .Y.2005); *accord Usavage v. Port Auth. of N.Y. & N.J.,* 932 F.Supp.2d 575, 592 (S.D.N.Y.2013); *Matthews v. City of New York,* 889 F.Supp.2d 418, 441 (E.D.N.Y.2012); *Smith v. City of New York,* No. 04 Civ. 3286, 2010 WL 3397683 (S.D.N.Y. Aug. 27, 2010), *aff'd sub nom. Smith v. Tobon,* 529 F. App'x 36 (2d Cir.2013). Here, Plaintiff presents no evidence that the handcuffs were unreasonably tight or that Plaintiff complained to Defendant Thompson that they were too tight. The sole evidence supporting the third prong—injury—is Plaintiff's own unsubstantiated statement that his wrist continues to "bother" him. Such unsubstantiated assertions, without more, are insufficient to support an excessive force claim involving handcuffing. *See, e.g., Esmont,* 371 F.Supp.2d at 215 (holding that "[u]nsubstantiated claims of nerve damage, in the absence of corroborating medical evidence, are insufficient to support a claim of excessive force from handcuffing" and collecting cases); *Matthews,* 889 F.Supp.2d at 443 ("[I]n order to withstand summary judgment, [the plaintiffs] must provide medical evidence that the handcuffs caused serious, long-lasting, or persistent injury."); *Faruki v. City of New York,* No. 10 Civ. 9614, 2012 WL 1085533 (S.D.N.Y. Mar. 30, 2012), *aff'd,* 517 F. App'x 1 (2d Cir.2013).

**VII. Other Claims (Counts IX–XIII)**

Plaintiff's remaining claims fail as a matter of law. With respect to abuse of process, Plaintiff has failed to adduce any evidence demonstrating that Defendants "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act, (2) with intent to do harm without excuse o[r] justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of New York,* 331 F.3d 63, 70 (2d Cir.2003) (internal quotation marks omitted).

**\*12** With respect to negligence, the Second Circuit has held that "[u]nder New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution." *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir.1994). To the extent that Plaintiff claims negligent hiring, training or supervision against the City, Plaintiff has adduced no evidence to show that Defendant Thompson acted outside the scope of his employment, a required element of such municipal negligence claims. *Velez v. City of New York,* 730 F.3d 128, 136–37 (2d Cir.2013) (internal quotation marks omitted) ("To maintain a claim against a municipal employer for the negligent hiring, training, and retention of a tortfeasor under New York law, a plaintiff must show that the employee acted outside the scope of her employment.").

With respect to the infliction of emotional distress claims, no reasonable juror could find that Defendants' actions were "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Karl v. Asarco Inc.,* 166 F.3d 1200 (2d Cir.1998) (affirming the dismissal of a negligent infliction of emotional distress claim on the grounds that the alleged conduct did not rise to the "outrageous in character" standard); *see also Ashjari v. Nynex Corp.,* 182 F.3d 898 (2d Cir.1999) (applying the same standard in the intentional infliction of emotional distress context).

Finally, there is no evidence to support Plaintiff's prima facie tort claim, which requires a showing of "disinterested malevolence" on the part of Defendants. *Twin Labs., Inc. v. Weider Health & Fitness,* 900 F.2d 566, 571 (2d Cir.1990).

**CONCLUSION**

For the reasons discussed above, Defendants' motion is GRANTED in part and DENIED in part, and Plaintiff's motion is GRANTED in part and DENIED in part as follows:

- False arrest, detention and confinement (Counts I, II & V)—Summary judgment is granted for Plaintiff against Defendant Thompson with respect to Plaintiff's detention prior to the discovery of marijuana, and for Defendants with respect to Plaintiff's detention thereafter;

- Malicious prosecution (Count III and implicit federal claim)—Defendants' motion for summary judgment is granted;

- Strip search (implicit claim)—Defendants' motion for summary judgment is granted;

- Seizure of property (implicit claim)—Defendants' motion for summary judgment is granted concerning Plaintiff's vehicle and the U .S. currency;

- Failure to train and supervise (Counts III and IV)—Defendants' motion for judgment on the pleadings is granted;

- Assault and battery (Counts VI and VII)—Defendants' motion for summary judgment is granted;

- Other claims (Counts IX to XIII)-Defendants' motion for summary judgment is granted.

A separate scheduling order will be issued for a conference to determine the trial date with respect to damages on Plaintiff's wrongful detention claim and the merits of the remaining claim, which was not the subject of these motions, i.e., the § 1983 unlawful vehicle search claim against Defendant Thompson. The Clerk is directed to close the motions at Docket Nos. 23 and 28.

**\*13** SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 4636433

---

## Footnotes

1    In general, "it is inappropriate to consider claims not pleaded in the complaint in opposition to summary judgment." *Scott v. City of New York Dep't of Corr.,* 641 F.Supp.2d 211, 229 (S.D.N.Y.2009) *aff'd sub nom. Scott v. New York City Dep't of Corr.,* 445 F. App'x 389 (2d Cir.2011) (quoting *Alali v. DeBara,* 2008 WL 4700431, at \*3 n. 6 (S.D.N.Y. Oct. 24, 2008) and collecting cases). Nevertheless, for purposes of completeness, the allegedly implicit § 1983 claims are addressed below.

2    Defendants do not argue otherwise or advance *Terry* as a basis for the constitutionality of Plaintiff's initial detention.

3    In successfully opposing Plaintiff's request for Defendants to produce documents relating to the search of the apartment connected to Epps, defense counsel represented to the Court in a letter dated April 26, 2013, that the apartment search warrant was "unrelated to the facts of the instant case" and "irrelevant," and that Defendants "do not claim that [P]laintiff was associated with that apartment in any way."

4    As Defendants note, the Supreme Court later reversed the district court's rulings in *Bailey I* and *Bailey II* (and the Second Circuit's affirmation thereof) on the ground that the applicability of *Summers* was limited to the "immediate vicinity" of the premises to be searched and that the detention in question, effected one mile away, was unjustified pursuant to *Summers. Bailey IV,* 133 S.Ct. at 1041. At the time of the 2011 incident in question, however, *Bailey I* and *Bailey II* were good law.

5    On the record, it appears unlikely that Defendant Thompson would be entitled to qualified immunity for Epps's detention either. Defendant Thompson's actions were based solely on the informant's assertion that Epps was "involved with"—not the "occupant of," or even "leaving or entering"—the apartment being searched. Further, Defendant Thompson did not know what contraband the police were looking for in the apartment to form any kind of individualized suspicion about Epps because of his "involvement" with the apartment.

Indeed, Defendant Thompson admits that he did not believe Epps was involved in any criminal activity when he approached the car.

6    To the extent that Plaintiff's claim of property seizure involves more than his minivan and the $8,800 that was vouchered at the police station, the claim is not supported by evidence in the record.

---

**End of Document**                                                 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 607341
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Paul CIPRIANI, Plaintiff,

v.

Harry C. BUFFARDI, Sheriff; Schenectady County Jail;
Cheryl Clark, M.D.; Kevin J. O'Connor, Defendants.

No. 9:06-CV-0889(LEK/DRH).
|
Feb. 20, 2007.

**Attorneys and Law Firms**

Paul Cipriani, Plaintiff, pro se.

***DECISION and ORDER***

LAWRENCE E. KAHN, U.S. District Judge.

**\*1** Presently before the Court is an amended complaint filed by Plaintiff Paul Cipriani ("Plaintiff"). Amended Compl. (Dkt. No. 10). This amended complaint was submitted in compliance with the Memorandum-Decision and Order issued by this Court on November 27, 2006 ("November Order"). Mem.-Decision and Order (Dkt. No. 7).

In its November Order, the Court advised plaintiff that he must set forth facts demonstrating that Defendants were personally involved in a violation of Plaintiff's rights. *Id.* at 4. Plaintiff was also advised that in order to establish the liability of a municipality, he must allege a custom or policy which is the moving force behind the violation. *Id.*

In his amended complaint, Plaintiff names thirteen defendants and asserts numerous claims against them arising from his confinement at Schenectady County Jail. Amended Compl. (Dkt. No. 10).

The Court notes that plaintiff has not named "Schenectady County Jail," "Cheryl Clark," or "Kevin J. O'Connor" in his amended Complaint. Therefore, "Schenectady County Jail," "Cheryl Clark," and "Kevin J. O'Connor" are hereby dismissed as defendants in this action.

The Court also notes that Plaintiff's amended Complaint mentions "Mr. Booth" and "Mr. Purdy" only in the caption, and fails to allege any act or omission by these individuals. Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff. *Gonzalez v. City of New York,* No. 97 CIV. 2246(MGC), 1998 WL 382055, at \*2 (S.D.N.Y. July 9, 1998) (citing *Crown v. Wagenstein,* No. 96 CIV. 3895(MGC), 1998 WL 118169, at \*1 (S.D.N.Y.Mar.16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement) and *Taylor v. City of New York,* 953 F.Supp. 95, 99 (S.D.N.Y.1997)). Because plaintiff has failed to allege any personal involvement on the part of defendants "Mr. Booth" and "Mr. Purdy", they are hereby dismissed as defendants in this action.

In his amended Complaint, Plaintiff alleges that the remaining Defendants committed various violations of his constitutional rights, including inadequate medical care, breach of doctor-patient confidentiality, excessive force, denial of due process in a disciplinary proceeding, and interference with the grievance process. Amended Compl. (Dkt. No. 10).

Based on the foregoing, Plaintiff's amended complaint as against the remaining Defendants is accepted for filing.

Plaintiff is advised, however, that the U.S. Marshals cannot effect service on a "John Doe" defendant. In the event that plaintiff wishes to pursue this claim against the "John Doe" defendants named in the amended Complaint, he must take reasonable steps to ascertain their identities. Plaintiff may then file a Motion to amend his complaint and seek leave of the Court to add such individuals, by name, as defendants to this lawsuit. Plaintiff is further advised that if these individuals are not timely served, the action will be against them will be dismissed.

**\*2** WHEREFORE, it is hereby

**ORDERED,** that "Mr. Booth," "Mr. Purdy," "Schenectady County Jail," "Cheryl Clark," and "Kevin J. O'Connor" are **DISMISSED** as defendants in this action, and it is further

**ORDERED,** that the Clerk revise the docket to add "Schenectady County," "Mr. Burns," "Mr. Jones," "Mr. Adams," "Ms. Jones," "Ms. Hull," "John Doe # 1," "John Doe # 7," "John Doe # 10," and "Loraine Walker" as defendants in this action, and it is further

**ORDERED,** that the Clerk issue summonses naming the remaining defendants and forward them, along with copies of the amended Complaint (Dkt. No. 10), to the United States Marshal for service upon the defendants, together with a copy of this Order. [1] The Clerk shall also forward a copy of the summons and amended Complaint by mail to the County Attorney for Schenectady County, together with a copy of this Order, and it is further

**ORDERED,** that a formal response to Plaintiff's amended Complaint be filed by Defendants or their counsel as provided for in Rule 12 of *the Federal Rules of Civil Procedure* subsequent to service of process on Defendants, and it is further

**ORDERED,** that Plaintiff take reasonable steps to ascertain the identities of any other individual(s) that purportedly violated Plaintiff's civil and/or constitutional rights and, if appropriate, file a Motion to amend his complaint and add such individuals, by name, as defendants to this lawsuit, and it is further

**ORDERED,** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York

13261-7367. *Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be returned, without processing.* Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions, which must be returnable before the assigned Magistrate Judge with proper allowance for notice as required by the Rules. *Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in his address; his failure to do so will result in the dismissal of this action.* All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on plaintiff by regular mail.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 607341

---

**Footnotes**

1    Plaintiff was granted leave to proceed with this action *in forma pauperis.* Mem.-Decision and Order (Dkt. No. 7).

---

End of Document                                           © 2025 Thomson Reuters. No claim to original U.S. Government Works.

DUSTY BUTTON and MITCHELL TAYLOR BUTTON, Plaintiffs, v...., Slip Copy (2025)

2025 WL 2771663
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

DUSTY BUTTON and MITCHELL
TAYLOR BUTTON, Plaintiffs,
v.
MADISON JANE BRESHEARS, Defendants.

1:24-cv-03757-MKV
|
Filed 09/26/2025

**ORDER & OPINION GRANTING
MOTION TO DISMISS**

MARY KAY VYSKOCIL United States District Judge

\*1 Plaintiffs Dusty Button and Mitchell Taylor Button ("Taylor Button" and together with Dusty Button, "Plaintiffs" or the "Buttons"), proceeding *pro se*, assert several claims alleging that Defendant Madison Breshears ("Defendant") participated in a conspiracy to defame Plaintiffs and destroy their personal and professional lives. [ECF No. 17, ("AC") ¶¶ 1–19]. This action is one in a series of several suits brought by the Buttons against various parties associated with a lawsuit brought against them in Nevada District Court (the "Nevada Litigation"), including one other case previously before this Court.[1] Defendant, also proceeding *pro se*, now moves to dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendant's motion is GRANTED.

**FACTUAL BACKGROUND**[2]

**I. The Parties**

Dusty Button is a former ballet dancer, and Taylor Button is a former custom automotive designer. AC ¶¶ 28, 34. Defendant runs three relevant social media accounts: (1) "@Real_World_Ballerina," an Instagram account dedicated to a variety of dance-related content ("@Real_World_Ballerina"); (2) "@mjbreshears," a personal Instagram account ("Personal Account"); and (3) "@embresh," a TikTok account ("TikTok Account"). AC ¶¶ 42, 94. At the time of the alleged posts, @Real_World_Ballerina had "nearly twenty thousand

followers." *See* AC ¶¶ 16, 67–68, 312. Non-party Sage Humphries is a woman with whom Plaintiffs previously had a relationship. AC ¶ 196.

**II. The Relationship Between Plaintiffs, Defendant, and Sage Humphries**

According to the Amended Complaint, Defendant has known Sage Humphries since childhood. AC ¶ 190. The pair share a mutual friend named Hannah Stolrow. AC ¶ 190. At some point in 2017, Plaintiffs began a consensual, three-way romantic relationship with Sage Humphries, who was "nearly twenty years old" at the time. AC ¶ 196. Both Plaintiffs allege that while Humphries' parents approved of the relationship at first, their view on the arrangement soured in May 2017. AC ¶¶ 208–13. Plaintiffs further allege that Humphries' parents took steps to end the relationship including (1) making false statements to the Boston Ballet, Dusty Button's employer at the time, that lead to her termination, including that Plaintiffs "had over fifty automatic weapons, hand grenades, and land mines in their apartment"; (2) forcefully taking their daughter to California to be "converted"; (3) telling Stolrow that Plaintiffs had drugged and raped Humphries; and (4) falsely telling law enforcement officers that "[Taylor Button had] boarded a flight, was coming to kidnap [Sage Humphries] and take her back to Boston, [and] that Plaintiffs were going to harm Sage [Humphries] and her family." AC ¶¶ 213, 216, 221, 230, 232, 238–39. Police reports from the period indicate that law enforcement considered the reports filed by Ms. Humphries' parents "unfounded." *See* AC ¶ 260. Throughout this period, Humphries stayed in contact with Plaintiffs by using Snapchat on various peoples' phones, through which Humphries "begg[ed]" Plaintiffs to "come save her" and to "come get her," claimed that "her parents were performing exorcisms on her," had kidnapped her, and were forcing her to go to therapy. AC ¶¶ 235, 242. The tumultuous relationship ended on July 18th, 2017, allegedly through a message sent by Ms. Humphries' parents from her Snapchat account. AC ¶ 258.

\*2 In August 2017, Humphries filed an application for a temporary restraining order against the Plaintiffs. AC ¶ 263. Shortly thereafter, Humphries was granted a permanent restraining order against Plaintiffs following an *ex-parte* hearing. AC ¶ 283. Plaintiffs allege that Humphries "perjured herself in Court" and "committed fraud upon the Court" at the hearing regarding this restraining order and similarly used false police statements to procure the permanent restraining order. AC ¶¶ 266, 284. Humphries later admitted that

she applied for the restraining order to prevent Plaintiffs from "blackmailing" her using photographs that she had unintentionally uploaded to Plaintiffs' hard drive some time in 2017. AC ¶ 268. Plaintiffs allege that these photographs show evidence of a relationship between Daryl Katz, a public figure and owner of the Edmonton Oilers, and Ms. Humphries, part of which included Katz allegedly sending money to Humphries' "in exchange for sexual favors." AC ¶ 271.

Plaintiffs maintain that Defendant had personal knowledge of their relationship with Humphries, who had allegedly told Defendant that "she had 'never been happier' than she was while in the relationship with Plaintiffs." AC ¶¶ 199, 289–94. They also allege that Defendant had personal knowledge that Humphries was an adult at the time of her relationship with the Buttons, that Humphries wanted to stay in a relationship with the Buttons, and was forced to sign the restraining order against the Buttons against her will. AC ¶ 287–96.

Defendant allegedly disregarded this information and posted the below-described allegedly defamatory content to her social media to "eliminate Plaintiffs' ability to work" as part of a coordinated effort to harm their ability to defend the yet-to-be-filed Nevada Litigation and "forc[e] Plaintiffs to destroy evidence that federally incriminates [Sage Humphries] and one of the wealthiest and most prominent men in the country Daryl Katz, for illegal prostitution." AC ¶ 301.

### III. The May 2021 Social Media Posts

On May 13, 2021, Defendant comment on one of Dusty Button's Instagram posts using her Personal Account, @mjbreshears, on which she posted "stop preying on young girls" and "feel like y'all should know she can't keep a ballet job [because] she grooms young girls into sex acts with herself and her husband." AC ¶¶ 58–59. Dusty Button was teaching a class to nearly 300 students, at least some of whom were children, when these comments were posted. AC ¶ 58. Over the course of nearly three hours, Plaintiffs deleted these comments and Defendant reposted them. AC ¶ 65. Plaintiffs eventually blocked Defendant's Personal Account from commenting on Dusty Button's profile. AC ¶ 65.

Immediately after Defendant's Personal Account was blocked, Defendant began uploading content about the Plaintiffs to her other account, @Real_World_Ballerina. AC ¶¶ 66, 69. Defendant posted the following statements:

- A post that reads "PSA: DUSTY BUTTON IS A SEXUAL PREDATOR" (the "Original Post")

- A story containing one of Dusty Button's posts showing her dancing with a text overlay that reads "This keeps getting removed" and "And she blocked me. But if you follow Dusty Button, you should know that she can't keep a ballet job because she grooms young girls to engage in sex acts with herself and her husband."

- A post that reads: "[I]f u or someone u know has been victimized by dusty_button, u aren't alone. She can't keep a ballet job because she grooms young dancers for sex acts with herself and her husband. This will probably get removed, she has managed to block and remove my other posts, but I hope at least someone can see this."

- A story that reads: "I have friends who have personally been victimized, or known someone victimized by @dusty_button," and "Don't give her a platform."

- A story that reads: "I don't expect anyone to take my word on faith! This is a serious accusation, and you are justified in being skeptical. From my end, knowing what I know (but am unable to disclose in detail) I feel like the right thing to do is at least warn you guys. If anyone is at least a little more careful or cautious around her, it's worth it to me[,]" as well as "Believe victims doesn't even apply here, IM NOT A VICTIM. I'm here to say keep asking questions. stay alert, stay safe, I love u [heart emoji]"

- **\*3** • A story that includes an image of a comment apparently left on one of Defendant's posts by an Instagram user that reads "@real_world_ballerina this is slander and unless you have actual proof, expect to be sued." Defendant overlays text that reads "I'm being threatened by dusty button's henchman?"

- A post containing an image of a woman dressed in knight's armor and captioned "[N]ot afraid. [N]ot even a little."

AC ¶¶ 69, 74. Over the same few hours, Defendant continued to engage with third party Instagram users who commented on her own prior posts. AC ¶ 70. Some of her comment responses include:

- "[I]f she's innocent she can say so. Like u said, I haven't produced evidence so there's no reason anyone should believe me over her. She's a famous, successful dancer. I know what libel is. I'm a law student. This isn't it, sorry."

• "[A]lso u have no clue what proof I have. But go off."

• "[B]ruh ... I literally have no reason to randomly ruin someone's life for no reason. Why tf would I do that. I know defamation law. I wouldn't say this if I didn't have legit reason."

• "[M]ind ur own business. U know if things aren't happening behind the scenes? No? Then stfu. If one person exercises caution bc of this it's worth it. Bye [waving emoji]"

• "[K]eep an eye out" in response to an Instagram user asking for her source.

• "It's true" in response to an Instagram user commenting that "I really hope you're is making this up, purely because that is next level [expletive] up if it's true."

• "I know, little girls idolize her [crying emoji]" in response to an Instagram user saying "Oh my god ..."

• "[A]ll I can say is multiple ppl have responded to this post alone saying they also know victims"

AC ¶¶ 74, 75. These comments were added to the posts by @Real_World_Ballerina, none were alleged to have been added to Taylor Button's Instagram account, and only Defendant's initial comments—"stop preying on young girls" and "feel like y'all should know she can't keep a ballet job [because] she grooms young girls into sex acts with herself and her husband"—were added to Dusty Buttons's posts. AC ¶¶ 59, 69, 74, 75. Nevertheless, Plaintiffs allege that all of Defendant's posts and comments were spread to and viewed by "all" of Dusty Button's "nearly half a million" Instagram followers and "all" of Taylor Button's "nearly half a million" Instagram followers. *See* AC ¶¶ 80, 83. Defendant also allegedly made several similar posts to her TikTok Account. AC ¶ 94. Plaintiffs do not identify specific posts or statements made from the TikTok Account. AC ¶ 94. Plaintiffs also allege that the night of May 13, 2021, several anonymous Instagram accounts were created by Defendant and her followers, such as "@dusty_button_hatepage," and were dedicated to disseminating demeaning content about Plaintiffs. AC ¶ 108.

All of the posts and comments made by @Real_World_Ballerina have since been taken down before the filing of the complaint, and Defendant has issued no corrections or qualifications. AC ¶ 101, 364. Plaintiffs

maintain that neither of them has been terminated for grooming young dancers for sex acts. AC ¶ 87, 88.

## IV. The Fallout After the May 13, 2021 Social Media Posts

The night of May 13, 2021, Plaintiffs received a deluge of messages on social media and comments on their posts referencing the allegations. AC ¶ 105–07. Some examples include:

**\*4**  • "Hey Dusty! I hope prison is everything you hope for! Maybe those tilts and competition tricks will come in handy behind bars?! Best of luck!"

• "[Taylor Button] and the missus have been too busy BF'n little girls to make social media posts it would appear."

• "According to a recent post by @real_world_ballerina, dusty button is a predator who is not someone people should be looking up to! Just spreading the word."

• "#dustybutton You child rap1st P#S. You need to be thrown in a wood chipper."

• "Child rapist POS. You need to be thrown in a wood chipper"

AC ¶ 107.

The next day, the owner and director of Artists Simply Human told Dusty Button that she would not be allowed to teach the rest of her scheduled classes during the weekend dance convention. AC ¶¶116–18. Three weeks later, Dusty Button's contract with Artists Simply Human was "terminat[ed]" indefinitely. AC ¶ 119. Shortly thereafter, users created online fora on other social media platforms, including Facebook and Reddit, dedicated to discussing the content of Defendant's posts and other allegations. AC ¶ 130, 131. Plaintiffs allege, without detail, that some of the commentary on these forums was posted by " 'anonymous' users associated with Madison Breshears, non-party Cat Cogliandro, and Sage Humphries." [3] AC ¶ 131.

Plaintiffs allege that they "lost any and all business immediately and for the foreseeable future" as a result of Defendant's posts. AC ¶ 325, 338–39. All of Plaintiffs' contractual partners terminated their relationships with the Plaintiffs, resulting in "millions of dollars lost in revenue." AC ¶¶ 102, 103. One of these partners cited "some social media posts" as the reason for termination of their continued

relationship. AC ¶ 128. Dusty Button was forced to cease all dance-related activity, including teaching, choreography, modeling, dancing, and speaking engagements. AC ¶ 328. Taylor Button was similarly forced to stop any automotive design work. AC ¶ 329. Furthermore, Plaintiffs' personal brands, including Button Brand, Button Built, and Bravado by Dusty Button, "[lost] hundreds of thousands of dollars in revenue and costs." AC ¶ 349. Plaintiffs allege that they "nearly" took their own lives as a result of the allegedly defamatory comments made about them, believing that they would "never recover" even if the world "learned the truth, that they were exemplary models for those who idolized them." AC ¶¶ 125, 372.

## V. The Nevada Litigation

On July 28, 2021, several plaintiffs filed a civil lawsuit against Taylor Button, alleging sexual abuse, and later added Dusty Button as a defendant. *See* Complaint, at ¶¶ 148–54, *See Humphries v. Button*, No. 21-cv-01412, (D. Nev. July 28, 2021); Third Amended Complaint, *Humphries v. Button*, No. 21-cv-01412, (D. Nev. August 2, 2023), (the "Nevada Litigation"). [4] Plaintiffs allege that they did not know who operated @Real_World_Ballerina until the fall of 2023 "by way of the discovery process in the Nevada litigation." AC ¶¶ 97, 375.

## VI. The May 2024 Social Media Posts

**\*5** On May 13, 2024, exactly three years after Defendant posted the allegedly defamatory statements, Plaintiffs filed the initial Complaint in this case. AC ¶ 308. On the same day, they sent Defendant a text message that read "Madison, happy three year anniversary. May the odds be ever in your favor." AC ¶ 308. The message included a photo of Defendant's May 13, 2021 post that read "PSA: DUSTY BUTTON IS A PREDATOR." AC ¶ 308. Defendant replied, "[i]f you still have a lawyer at this point, I'd consider running any further late night mafioso-style test [sic] blasts by him/her first:)." AC ¶ 308.

The next day, Defendant posted a story to @Real_World_Ballerina including screenshot of the text message that Plaintiffs had sent the previous evening with the following text overlaid: "Received ominous message from unknown number late Monday night." AC ¶ 311. One of the Buttons' phone numbers is visible. AC ¶ 311. Defendant also posted a story of a screenshot of a May 14, 2024 email sent by "The Buttons" that contained the same image and text as their May 13, 2024 text message. AC ¶ 311. Defendant

overlaid the words "Oh. Well OK then." AC ¶ 311. The email address from which the email was sent was visible. AC ¶ 311.

Tabular or graphical material not displayable at this time.

AC ¶ 311. The same day, Defendant uploaded additional story posts to @Real_World_Ballerina, including:

- A screenshot of an internet search for the phone number from which the text messages were sent. One of the search results from PacerMonitor.com was circled and titled "Humphries_et_al_v_Button__nv." The post included an eye rolling emoji.

- A close-up screenshot of the phone number associated with the text messages sent by Plaintiffs on May 13, 2024, with a text overlay reading, "HMM WONDER WHO THIS COULD BE."

AC ¶ 311. Following these posts, Plaintiffs received several intimidating calls and messages from unknown parties. AC ¶ 314.

## VII. The May 27, 2024 Phone Call

Plaintiffs and Defendant called each other on May 27, 2024. AC ¶¶ 318–20 (the "May 27, 2024 Phone Call"). On the call, Defendant stated that she had not spoken to Humphries prior to making the May 13, 2021 social media posts. AC ¶ 320. Defendant also stated that she did not intend for her posts to make a big "splash" or cause "damage." AC ¶ 320. While explaining her assessment of the merits Plaintiffs' claims, Defendant stated the following: "I just want to tell you that it's gonna be bad if you sue me"; "[i]t's not worth your time and energy or mine"; "[t]here is [sic] consequences to filing frivolous or not legally viable lawsuits"; "[a]s a lawyer, going through your complaint the causes of action that you are listing with the facts that even just based on I'm gonna [sic] write my motion to dismiss, I'm not going to be arguing the facts I'm going to be arguing the law and based on the law and the claims that you've made you haven't stated a claim upon which relief can be granted so ... and that's sanctionable"; "[y]ou shouldn't be filing frivolous lawsuits' "; "I don't think it's worth your time, it's not gonna [sic] end well for you." *See, e.g.*, AC ¶¶ 12, 320, 580(2). Plaintiffs responded to Defendant with the following—"Are you warning us?" "So you're doing this out of the graciousness of your heart to help us?" and "I appreciate your advice" while warning Defendant not to provide "unsolicited legal advice." *See* AC ¶ 320.

## PROCEDURAL HISTORY

Plaintiffs first filed a complaint on May 13, 2024. [ECF No. 1 ("Compl.")]. Defendant filed a letter motion seeking leave to file a motion to dismiss. [ECF No. 14]. The Court entered a scheduling order that included an opportunity for Plaintiffs to file an Amended Complaint in response to the issues raised by Defendant in connection with her contemplated motion to dismiss. [ECF No. 16]. Thereafter, Plaintiffs filed the operative Amended Complaint, [ECF No. 17], which asserts ten separate claims: (1) Injurious Falsehood ("Claim One"); (2) Defamation *per se* ("Claim Two"); (3) Libel *per se* (Claim Three); (4) Slander *per se* ("Claim Four"); (5) Cyber Harassment ("Claim Five"); (6) Intentional Infliction of Emotional Distress ("IIED" or "Claim Six"); (7) *Prima Facie* Defamation ("Claim Seven"); (8) Civil Conspiracy ("Claim Eight"); (9) Defamation *pro quod* ("Claim Nine"); and (10) Tortious Interference with Business Relations ("Claim Ten"). *See* AC ¶¶ 386–610. This case is before the Court under the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) (1). *See* AC ¶¶ 23–25.

**\*6** Defendant moved to dismiss all ten claims pursuant to Federal Rule of Civil Procedure 12(b)(6) on timeliness grounds and filed a memorandum in support of her motion. [ECF No. 22, 21 ("Def Mem.")]. Plaintiffs opposed the motion. [ECF No. 25 ("Pl. Opp.")]. [5] Defendant filed a reply. [ECF No. 32 ("Def. Reply")]. Thereafter, Defendant submitted a letter advising the Court of orders granting motions to dismiss two other cases brought by the Buttons. [ECF No. 36]. The Buttons also filed a letter advising the Court of developments in the Nevada Litigation and a letter advising the Court of an order in another case that found Plaintiffs claims were "sufficient to survive the 'low threshold' set for *sua sponte* screening." [ECF Nos. 39, 40].

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. The Court "must accept as true all of the [factual] allegations contained in a complaint," but the Court is not required to accept "legal conclusions," and mere "conclusory statements" are not factual allegations. *Id.*

*Pro se* parties are entitled to "special solicitude." *Tewari v. Sattler*, No. 23-36-cv, 2024 WL 177445, at \*1 (2d Cir. Jan. 17, 2024) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006)). The Court must "liberally construe pleadings and briefs submitted by pro se litigants." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017). A district court is not, however, tasked with "scouring obscure bodies of law in order to come up with novel claims on behalf of pro se litigants." *Id.* at 158. Even a *pro se* complaint must give the defendant "fair notice of [the] claim and the grounds upon which it rests." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008); *see also Twombly*, 550 U.S. at 545.

## DISCUSSION

### I. The Defamation Claims, IIED Claims, and Claims Sounding in Defamation are Time-Barred

Plaintiffs' defamation claims, (Counts Two, Three, Four, Seven, Nine), as well as those that sound in defamation, (Counts One, Six, and Ten), are subject to a one-year statute of limitations and are time-barred. [6] Separately, the claims that sound in defamation must be dismissed on the additional ground that they improperly are duplicative of the defamation claims.

### A. Defamation Claims

Under New York law [7], defamation claims are subject to a one-year statute of limitations. N.Y. C.P.L.R. § 215(3); *see, e.g.*, *Kuang v. Zhou*, 212 A.D.3d 579, 580, 180 N.Y.S.3d 900, 901 (1st Dep't 2023) (noting that defamation claims are subject to a one-year statute of limitations); *McKenzie v. Dow Jones*, 355 F. App'x 533, 535 (2d Cir. 2009) ("Under New York law, the statute of limitations for a defamation claim is one year"). Slander and libel are forms of defamation—slander refers to oral defamatory statements and libel refers to written defamatory statements. *See Apionishev v. Columbia Univ. in N.Y.*, No. 09-civ-6471 SAS, 2012 WL 208998, at \*8 (S.D.N.Y. Jan. 23, 2012) (citing *Villacorta v. Saks Inc.*, 32 Misc. 3d 1203(A), 932 N.Y.S.2d 764, 2011 WL 2535058, at \*8 n. 7 (Sup. Ct. 2011) ("[B]oth terms—'slander,' *i.e.*, oral defamatory statements and 'libel,' *i.e.*, written defamatory statements,—are encompassed in the term of 'defamation.' ")).

**\*7** Slander and libel are therefore also subject to the one-year statute of limitations for defamation. *See Nussenzweig v. diCorcia*, 9 N.Y.3d 184, 188, 878 N.E.2d 589, 590 (N.Y. 2007) ("Pursuant to CPLR 215(3), 'an action to recover damages for ... libel, [or] slander ... must be brought within one year."). Accordingly, Plaintiffs' Claims Two, Three, Four, Seven, Nine (collectively, the "Defamation claims") are subject to the one-year statute of limitations. *See, e.g.*, N.Y. C.P.L.R. § 215(3); *D'Arata v. New York Post*, 226 A.D.3d 560, 210 N.Y.S.3d 384, 385 (1st Dep't 2024) ("The statute of limitations for a libel claim is measured one year from the date of publication, not discovery ....").

#### i. The May 2021 Social Media Posts

Under the "single publication rule, ... a cause of action for defamation accrues on the date the offending material is first published." *See Nussenzweig*, 9 N.Y.3d at 188, 878 N.E.2d at 590; *Firth v. State*, 98 N.Y.2d 365, 371, 474 N.Y.S. 2d 69, 775 N.E.2d 463 (N.Y. 2002); *Sarkar v. City of New York*, 24-1219, 2025 WL 1793733, at \*3 (2d Cir. June 30, 2025) (summary Order). Accordingly, the defamation claims that are based on social media posts Defendant initially made in May 2021 are time-barred as of May 2022. *See* Compl. (filed on May 13, 2024); AC ¶¶ 59–75.

#### ii. The May 2024 Social Media Posts

Plaintiffs allege that Defendant "reinstated" Plaintiffs' claims of defamation *per se*, libel *per se*, and injurious falsehood with her May 2024 post that included an image of one of her May 2021 posts that said, "Dusty Button is a sexual predator." *See* AC ¶¶ 426, 452, 470. [8] New York courts have recognized an exception to the "single publication rule" where the allegedly defamatory statements were "republished." *Enigma Software Group USA, LLC v. Beeping Computer LLC*, 194 F. Supp. 3d 263, 276-77 (S.D.N.Y. 2016) (quoting *Firth*, 98 N.Y.2d at 371, 474 N.Y.S. 2d 69, 775 N.E.2d 463). Because Plaintiffs, who are *pro se*, are entitled to special solicitude, the Court construes this argument liberally. *Tewari*, 2024 WL 177445, at \*1; *McLeod*, 864 F.3d at 156. The Court construes Plaintiffs' argument about "reinstatement" as an argument for republication. Republication "retrigger[s] the period of limitations" when it "occurs upon a separate aggregate publication from the original, on a different occasion, which is not merely 'a delayed circulation of the original edition.' " *Hoesten v. Best*, 34 A.D.3d 143, 150, 821 N.Y.S.2d 40, 46 (1st Dep't 2006) (quoting *Firth*, 98 N.Y.2d at 371, 474 N.Y.S. 2d 69, 775 N.E.2d 463). This "republication" exception to

the single publication rule is "justified" only when "the subsequent publication is intended to and actually reaches a new audience." *See Firth*, 98 N.Y.2d at 371, 474 N.Y.S. 2d 69, 775 N.E.2d 463. A "classic example[ ]" of republication is the republication of a hardcover book in a paperback edition. *See Etheredge-Brown v. America Media, Inc.*, 13 F. Supp. 3d 303, 306 (S.D.N.Y. 2014). In such a case, a New York court found that the publisher's "decision to release [the book] in paperback was a conscious attempt to reach an entirely new market of readers through a different format at a different price." *Rinaldi v. Viking Penguin, Inc.*, 101 Misc. 2d 928, 934, 422 N.Y.S.2d 552, 556 (N.Y. Sup. Ct. 1979), *modified on different grounds*, 73 A.D.2d 43, 425 N.Y.S.2d 101 (1st Dep't 1980), *aff'd*, 52 N.Y.2d 422, 420 N.E.2d 377 (N.Y. 1981). [9]

**\*8** Defendant's May 2024 posts that included images of one of her May 2021 posts did not amount to a republication for several reasons. Though Defendant published them on "an occasion distinct from the initial one," the posts were "merely a delayed circulation of the original," rather than a "republication" because the allegedly defamatory post was not "modified in form or in content," and Plaintiffs do not allege that it was intended to or did in fact reach a new audience. *See Hoesten*, 34 A.D.3d at 150, 821 N.Y.S.2d at 46 (collecting cases).

First, the May 2024 posts were published from the same account, @real_world_ballerina, on the same website, and in the same form (an Instagram story) as the May 2021 post. AC ¶¶ 69, 308, 311; *contra Firth v. State,* 306 A.D.2d 666, 667, 761 N.Y.S.2d 361, 362 (3d Dep't 2003) ("[C]laimant's allegations that the report was moved to a different Internet address are sufficient to state a cause of action for republication to a new audience akin to the repackaging of a book from hard cover to paperback."); *Etheredge-Brown*, 13 F. Supp. 3d at 306–07 ("Plaintiffs have at least a plausible argument that the initial online publication of the article on the National Enquirer's website on March 26, 2012—several days after the paper edition had been sent to subscribers' homes and sold at newsstands and supermarkets —was a republication.").

Further, Plaintiffs do not allege that "the subsequent publication [was] intended to" reach a new audience nor do they allege that the posts "actually [did] reach[ ] a new audience" *Firth*, 98 N.Y.2d at 371, 474 N.Y.S. 2d 69, 775 N.E.2d 463. Defendant's Instagram stories generally reached the same audience in May 2024 as they did in May 2021, her Instagram followers. AC ¶¶ 69, 308–12. Indeed, Plaintiffs

themselves allege that the number of accounts following @Real_World_Ballerina was unchanged between the two dates—alleging that there were "nearly twenty thousand" followers at the time of both the 2021 and the 2024 stories. *Compare* AC ¶¶ 67–68 *with* AC ¶ 312. Moreover, even if the May 2024 posts did reach a new audience, Plaintiffs have not alleged in the Amended Complaint nor argued in their Opposition that Defendant intended to reach a new audience. *See* AC; Pl. Opp. at 17, 25, 29. None of the text added to either May 2024 story—"Received ominous message from unknown number late Monday night" and "Oh. Well ok then."—modified the alleged by defamatory post in a "substantial way" thus indicating that Defendant intended to reach a new audience. *See* AC ¶ 311; *Martin,* 121 A.D.3d at 104, 990 N.Y.S.2d at 484; *see also Sarkar,* 2025 WL 1793733, at *2 ("Because the subsequent postings did not target new audiences and the content of the report did not change, the republication exception does not apply here."); *Thomas v. City of New York,* No. 17-cv-06079, 2018 WL 5791965, at *7 (E.D.N.Y. Nov. 5, 2018) (quoting *Rinaldi v. Viking Penguin,* 52 N.Y.2d 422, 430, 420 N.E.2d 377, 438 N.Y.S.2d 496 (N.Y. 1981)) (finding that "most courts require that [the requisite] change [in republished material] be 'substantial' ").

The alleged facts here are similar to those in *Martin v. Daily News L.P.*, in which a New York Appellate Court found there was not a republication that triggered the statute of limitations anew. *See* 121 A.D.3d at 103–04, 990 N.Y.S.2d at 483–84. In *Martin*, the Court held that allegedly defamatory news articles, which had been reposted after they were inadvertently deleted, "actually made a new audience [because they] included new hyperlinks to social media and networking sites." *Id.* The Court nonetheless held that the second posting of the articles did not constitute a republication because they were posted to the same website where the initial articles were published, because the second posting "was not geared toward reaching a new audience," and because the articles were not "modified in any substantial way." *Id.*

**\*9** Here too, even if the May 2024 Instagram stories reached a different audience than the May 2021 story, there are no allegations that Defendant intended to reach a new audience with the posts. *See* AC; Pl. Opp. Moreover, the May 2024 posts lack substantial modifications that would plausibly suggest that Defendant was trying to expose the allegedly defamatory statement to a new audience similar to a publisher "repackaging of a book from hard cover to paperback." *See*

*Firth,* 306 A.D.2d at 667, 761 N.Y.S.2d at 362; AC ¶ 311. In fact, the vague language Defendant included in the May 2024 posts—"Received ominous message from unknown number late Monday night" when she received a text including the original post, and later, "Oh. Well ok then." when she received the same message from an email account associated with "The Buttons"—suggests that Defendant intended to reach the same audience as the original post, that would understand the context of the original Instagram story and know who the Buttons were.

The May 2024 posts did not constitute a republication, and accordingly, the period of limitations did not begin anew. [10]

## B. Claims Sounding in Defamation

"In determining which statute of limitations is applicable to a cause of action, it is the essence of the action and not its mere name that controls." *Koplinka-Loehr v. Cnty. of Tompkins,* 189 A.D.3d 2039, 2041, 139 N.Y.S.3d 661, 664 (3d Dep't 2020). As such, any torts that sound in defamation are subject to defamation's one-year statute of limitations. *Kartiganer Assocs., P. C. v. Town of Newburgh,* 57 A.D.2d 857, 857, 394 N.Y.S.2d 262, 263 (2d Dep't 1977) ("Plaintiff cannot circumvent the one-year limitation period applicable to defamation actions 'by misdescribing the tort as ... interference with economic relations' "); *Lesesne v. Brimecome,* 918 F. Supp. 2d 221, 224 (S.D.N.Y. 2013) ("[C]ourts in New York have also kept a watchful eye for claims sounding in defamation that have been disguised as other causes of action"). Claims based on harm "stemming from injury to reputation" sound in defamation, even if the injury to reputation results in economic damages. *Goldman v. Barrett,* 733 F. App'x 568, 570 (2d Cir. 2018) (summary order) (citing *Morrison v. Nat'l Broad. Co.,* 19 N.Y.2d 453, 458, 227 N.E.2d 572, 573 (N.Y. 1967) (holding that, despite the pecuniary damages alleged, "[a] communication is defamatory ... 'if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.' ")); *see also Ramsay v. Mary Imogene Bassett Hosp.,* 113 A.D.2d 149, 151, 495 N.Y.S.2d 282 (3d Dep't 1985) ("[D]efamation is defined in terms of the injury, damage to reputation, and not in terms of the manner in which the injury is accomplished."); *Chao v. Mount Sinai Hosp.,* 476 F. App'x 892, 895 (2d Cir. 2012) (finding that tort claims sounded in defamation where the harms complained of by the plaintiff, including termination of employment, "all [flowed] from the effect on his reputation cause by defendants' alleged defamatory

statements"); *Lesesne*, 918 F. Supp. 2d at 224 (finding that claims based on statements harming the Plaintiffs' reputation leading to a loss of business sounded in defamation).

Plaintiffs bring claims for injurious falsehood, intentional infliction of emotional distress, and tortious interference. *See* AC ¶¶ 386–424, 503–526, 585–610. The gravamen of each of those claims is the alleged injury to Plaintiffs' "reputation" resulting from Defendant's allegedly "defamatory" statements, and the alleged injury flowing therefrom, including loss of contracts and business relations. *See, e.g.*, AC ¶ 398 (discussing loss of business due to harm to their "reputations"), ¶ 409 ("[T]he statements tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or deter third persons from associating or dealing with them, ... and, as such, constitute *injurious falsehood*."), ¶ 412 ("As a proximate result of the maliciously false and defamatory publication of statements to third parties by Defendant, Plaintiffs have been severely damaged."), ¶ 504 ("Defendant reinstated Plaintiffs['] timely claim of Intentional Infliction of Emotional Distress by posting false and defamatory statements ...."), ¶ 522 ("[T]he statements and publication prior to the service of the complaint on Plaintiffs tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community ... and, as such, constitutes *intentional infliction of emotional distress*."), ¶ 602 (alleging Defendants' social media posts "[tended] to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or deter third persons from associating or dealing with them"), ¶ 604 ("[The] defamatory statements *immediately* destroyed Plaintiffs' ability to work and to generate income, disseminating [*sic*] any and all contractual agreements with third-parties," which amounted to tortious interference) (emphases in the original).

 **\*10**  Accordingly, Plaintiffs' injurious falsehood, intentional infliction of emotional distress, and tortious interference claims, which sound in defamation, are time barred as their defamation claims.[11] *See, e.g.*, *Ent. Partners Grp., Inc. v. Davis*, 198 A.D.2d 63, 64, 603 N.Y.S.2d 439, 440 (1st Dep't 1993) ("[I]t is well settled that a plaintiff may not circumvent the one-year statute of limitations applicable to defamation actions (CPLR § 215[3]) by denominating the action as one for ... injurious falsehood if, in fact, the claim seeks redress for injury to reputation" nor may a Plaintiff "cast its defamation claim as tortious interference with business relations" to avoid the one-year statute of limitations); *Espire Ads LLC v. TAPP Influencers Corp.*,

655 F. Supp. 3d 223, 260 (S.D.N.Y. 2023) (finding that an injurious falsehood claim sounded in defamation where statements concerned a plaintiff's "general reputation" rather than the "quality of [the plaintiff's] goods or services"); *Bah v. Apple Inc.*, 2020 WL 614932, at \*18 (S.D.N.Y. Feb. 10, 2020) (finding that "[a plaintiff's] claims of intentional and negligent infliction of emotional harm sound in defamation because these claims merely allege additional emotional injuries resulting from defendant's [statements], which are the basis of [his defamation claims]"); *Croskey v. Med. & Tech. Servs., Inc.*, No. 05 CIV.6641 (LMM), 2006 WL 2347816, at \*3 (S.D.N.Y. Aug. 10, 2006) (citing *Wilson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 111 A.D.2d 807, 808, 490 N.Y.S.2d 553, 555 (2d Dep't 1985) *aff'd*, 66 N.Y.2d 988, 489 N.E.2d 1297 (N.Y. 1985)) ("Even if the facts as the plaintiff presents them could be construed as ... intentional infliction of emotional distress, it is well established that where the crux of the complaint sounds in defamation, [the] court will refuse to allow a cause of action for emotional distress [because] [w]ithout such a rule, any defective defamation or libel claim could be revived by pleading it as one for intentional infliction of emotional distress, circumventing the restrictions on defamation claims."); *Katz v. Travelers*, 241 F. Supp. 3d 397, 407 (E.D.N.Y. 2017) (citation omitted and alterations in the original) (finding tortious interference claims were time-barred because "the gravamen of Plaintiff's alleged injury in each of the [ ] counts is either harm to [his] reputation or harm that flows from the alleged effect on Plaintiff's reputation" including "loss of contracts and business relationships.").

Separately, Plaintiffs' claims for injurious falsehood, intentional infliction of emotional distress, and tortious interference must be dismissed as duplicative of their defamation claims. The alleged conduct underlying these claims is identical to that underlying the five defamation claims, as are the injuries suffered. AC ¶¶ 386–424, 503–544, 585–610. Moreover, these claims seek the same damages as the defamation claims. *See, e.g.*, *Perez v. Violence Intervention Program*, 116 A.D.3d 601, 601, 984 N.Y.S.2d 348, 349 (1st Dep't 2014) (finding claims of injurious falsehood, tortious interference with prospective contractual or business relations, and intentional infliction of emotional distress "should have been dismissed as duplicative of the defamation claim, as they allege no new facts and seek no distinct damages from the defamation claim"); *Herlihy v. Metropolitan Museum of Art*, 214 A.D.2d 250, 263, 633 N.Y.S.2d 106 (1st Dep't 1995) (finding that an IIED claim "fails because it falls within the ambit of other traditional liability which, in this case, is reflected in plaintiff's causes

of action sounding in defamation"); *Goldman*, 733 F.App'x at 571 (finding that a tortious interference claim was properly dismissed as duplicative of a defamation claim because "Plaintiffs [had] not alleged an independent source of harm" and because "any economic damages [were] derive[d] from defamatory statements"); *Rapaport v. Iyer*, 23-cv-6709, 2025 WL 966275, at *34–35 (S.D.N.Y. Mar. 31, 2025) (dismissing injurious falsehood and IIED claims that "[relied] on the same allegations and conduct as the defamation claim").

## C. Plaintiffs' Equitable Tolling and Estoppel Arguments Are Meritless

Plaintiffs argue that the statute of limitations "must be tolled" and that Defendant should be "equitably estopped from asserting statute of limitations as a defense [because] allowing Defendant to do so would be unjust." *See* AC ¶¶ 380, 381, 417, 421, 422, 427, 442, 443, 427, 454, 523, 529, 559, 579, 580, 605, 606.

**\*11** However, "the doctrine of equitable tolling is not available in state causes of action." *Sejin Precision Indus. Co. v. Citibank, N.A.*, 235 F. Supp. 3d 542, 553 (S.D.N.Y. 2017), *aff'd*, 762 F. App'x 27 (2d Cir. 2018) (quoting *Jang Ho Choi v. Beautri Realty Corp.*, 135 A.D.3d 451, 22 N.Y.S.3d 431, 432 (1st Dep't 2016)); *Busher v. Barry*, No. 20-3587-cv, 2021 WL 5071871, at *4 (2d Cir. Nov. 2, 2021) (summary order). Where, as here, Plaintiffs assert "state causes of action, not federal ones ...the applicable doctrine is equitable estoppel," not equitable tolling. *See Raphael v. Vintage Grape & Grog, Ltd.*, 187 A.D.3d 672, 672, 131 N.Y.S.3d 558 (1st Dep't 2020). Accordingly, equitable tolling cannot render timely Plaintiffs' untimely claims, all of which are for causes of action under New York law.

The potentially available doctrine, equitable estoppel, is an "extraordinary remedy," *see Clark v. Ravikumar*, 90 A.D.3d 971, 972, 935 N.Y.S.2d 633, 635 (2d Dep't 2011), which should be invoked "sparingly and only under exceptional circumstances." *See Sanchez v. Jericho Sch. Dist.*, 180 A.D.3d 828, 830, 120 N.Y.S.3d 163, 165 (2d Dep't 2020) (quoting *Ceely v. New York City Health & Hosps. Corp.*, 162 A.D.2d 492, 493, 556 N.Y.S.2d 694, 695 (2d Dep't 1990)). In order to successfully argue for equitable estoppel, a plaintiff must show that he or she: (1) was "induced by fraud, misrepresentations, or deception to refrain from filing a timely action"; (2) "reasonably relied on the defendants' misrepresentations"; and (3) exercised "[d]ue diligence" to bring the action within a "reasonable period of time after the facts giving rise to the ... equitable estoppel claim 'have

ceased to be operational.' " *Endemann v. Liberty Ins. Corp.*, No. 22-1217, 2023 WL 4102245, at *1 (2d Cir. June 21, 2023) (quoting *Zumpano v. Quinn*, 6 N.Y.3d 666, 674, 849 N.E.2d 926, 818 N.Y.S.2d 703 (N.Y. 2006) and quoting *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007)) (alterations in the original).

Plaintiffs assert that Defendant should be equitably estopped from asserting the statute of limitations defense for four reasons. [12] AC ¶¶ 417, 427, 454, 523, 529, 559, 580. None of them adequately establish the requisite elements for equitable estoppel.

First, Plaintiffs argue that, because the Nevada Litigation involves the subject matter of the allegedly defamatory posts, they are entitled to tolling during the pendency of the "related lawsuit." *See, e.g.*, AC ¶ 580(1); *see also* AC ¶ 156. Plaintiffs do not provide any authority for this contention, and the Court is not aware of any rule allowing Plaintiffs to toll a statute of limitations because they are defendants in another suit.

Second, Plaintiffs argue that Ms. Breshears's "[t]hreats" prevented them from timely filing their lawsuit. *See, e.g.*, AC ¶ 580(2). Plaintiffs allege the following statements— which were published on Instagram amidst the allegedly defamatory statements on Defendant's social media accounts —were threats that prevented them from initiating this suit: "I'm a law student, I know libel and slander and this isn't it," and "Not afraid. Not even a little." *See, e.g.*, AC ¶¶ 74, 580(2). The other two statements Plaintiffs call threats allegedly were made to Plaintiffs during the May 27, 2024 phone call—after this lawsuit was filed—during which Defendant explain[ed] her assessment of the merits Plaintiffs' claims —"[This lawsuit] isn't going to end well for you," and "I just want to tell you that it's gonna be bad if you sue me." *See, e.g.*, AC ¶¶ 320, 580(2). [13] Since the call occurred after this case was filed these two statements are not relevant to an analysis of equitable estoppel. *See Axiom Inv. Advisors, LLC by & through Gildor Mgmt., LLC v. Deutsche Bank AG*, 234 F. Supp. 3d 526, 539 (S.D.N.Y. 2017) (quoting *Zimmerman v. Poly Prep Country Day Sch.*, 888 F. Supp. 2d 317, 341 (E.D.N.Y. 2012)) ("[O]nly misrepresentations occurring during the limitations period are relevant; equitable estoppel cannot revive a claim that is already time-barred."). Regardless, Plaintiffs do not explain how any of these purported threats amount to "fraud, misrepresentations, or deception." *See Endemann*, 2023 WL 4102245, at *1. Further, in context these statements regarding Defendant's assessment of Plaintiffs' claims could not reasonably be construed as

threatening, especially considering that Plaintiffs responded by telling Defendant that they "appreciate[ed] [her] advice" and warned her not to provide "unsolicited legal advice." *See* AC ¶ 320. Moreover, the cited statements are clearly Defendant's opinion about Plaintiffs' claims that cannot form the basis for a charge of fraud. *See Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 179, 944 N.E.2d 1104, 1108 (N.Y. 2011); *MAFG Art Fund, LLC v. Gagosian*, 123 A.D.3d 458, 459, 998 N.Y.S.2d 342, 343 (1st Dep't 2014).

**\*12** Third, Plaintiffs argue that "a continuing wrong such as Defendants' May 14, 2024 reposting" restarts the statute of limitations. *See, e.g.,* AC ¶ 580(3). However, defamation claims are subject to the single publication rule, *see supra* at 14–15, and, as previously discussed, the "continuing violation" exception is inapplicable. *See Kamdem-Ouaffo v. Pepsico, Inc.*, 160 F. Supp. 3d 553, 571 (S.D.N.Y. 2016).

Fourth, Plaintiffs argue that Defendant's online anonymity prevented them from timely filing their claims. AC ¶¶ 580(4). Plaintiffs argue that Defendant "intentionally hid behind an anonymous account to make her defamatory statements," and cite to New York Civil Practice Law and Rule § 214 for the proposition that "[i]f the defendant fraudulently conceals the defamatory statement, the statute of limitations may be tolled until the plaintiff discovers the truth." *See* AC ¶ 417 n.30 (citing N.Y. C.P.L.R. § 214). Section 214 does not stand for the proposition that Plaintiffs posit. *See* N.Y. C.P.L.R. § 214 (listing actions subject to a three-year statute of limitations). Moreover, Plaintiffs do not allege that Defendant concealed the defamatory statements, only that she concealed her identity when making the statements.

Importantly, Plaintiffs do not explain how the anonymity of the @Real_World_Ballerina Instagram account reasonably induced them to refrain from filing a timely lawsuit, *see* Pl. Opp. at 29, when they could have filed a suit against a "Jane Doe" defendant and thereafter sought discovery to learn the defendant's identity, *see, e.g., Mirza v. Yelp*, No. 21 Misc. 621, 2021 WL 3772039, at *1 (S.D.N.Y. Aug. 25, 2021) (discussing third-party discovery to determine the identity of a "John Doe" in a case to recover for allegedly defamatory Yelp reviews posted anonymously online); *GSB Gold Standard Corp. AG v. Google LLC*, 227 A.D.3d 613, 614, 227 A.D.3d 8 (1st Dep't 2024) (discussing third-party discovery to determine the identity of an anonymous defendant who posted allegedly defamatory material online). New York courts have held that "mere anonymity" of the author of defamatory statements does

not warrant equitable estoppel of the statute of limitations. *Gleason v. Spota*, 194 A.D.2d 764, 765, 599 N.Y.S.2d 297, 299 (2d Dep't 1993)). Indeed, "[w]here concealment without actual misrepresentation is claimed to have prevented a plaintiff from commencing a timely action, the plaintiff must demonstrate a fiduciary relationship ... which gave the defendant an obligation to inform him or her of facts underlying the claim." *Zumpano*, 6 N.Y.3d at 675 (quoting *Gleason*, 194 A.D.2d at 765, 599 N.Y.S.2d at 299). Plaintiffs have alleged no such fiduciary relationship here.

Moreover, even if Plaintiffs had demonstrated how the anonymity of the @Real_World_Ballerina Instagram account improperly induced them to refrain from filing a timely lawsuit, Plaintiffs made no showing that they "exercised due diligence in bringing an action within a reasonable period of time" after they became aware of Defendant's identity. *See Endemann*, 2023 WL 4102245, at *1; *see also Rite Aid Corp. v. Grass*, 48 A.D.3d 363, 364–65, 854 N.Y.S.2d 1, 2 (1st Dep't 2008) (citing *Gleason*, 194 A.D.2d at 765, 599 N.Y.S.2d at 299) (equitable estoppel "will not toll a limitations statute where plaintiffs possessed timely knowledge sufficient to have placed them under a duty to make inquiry and ascertain all the relevant facts prior to the expiration of the applicable statute of limitations."). The first allegedly defamatory comments were made by Breshears from her personal, non-anonymous account and thus, as of May 2021, Plaintiffs were aware that Defendant was the speaker behind at least some portion of the allegedly defamatory statements. *See* AC ¶ 59. Moreover, Plaintiffs allege that they learned who operated @Real_World_Ballerina on Instagram in the fall of 2023 "by way of the discovery process in the Nevada litigation." AC ¶¶ 97, 375. Documents filed in the Nevada Litigation suggest that Plaintiffs knew that Defendant ran @Real_World_Ballerina as early as February 2023. [14] And yet, Plaintiffs waited at least several months, and possibly more than a year, after they learned that Defendant operated @Real_World_Ballerina before filing this suit in May 2024.

**\*13** As a result, the Plaintiffs have not met their burden of demonstrating that they reasonably relied on "fraud, misrepresentations, or deception" by Defendant or that they "exercised due diligence in bringing an action within a reasonable period of time." *Endemann*, 2023 WL 4102245, at *1. Accordingly, Defendant is not equitably estopped from asserting a statute of limitations defense here.

## II. Cyber Harassment is Not an Independently Cognizable Tort Under New York Law

In support of their purported Cyber Harassment claim, Count Five, *see* AC ¶¶ 485-502, Plaintiffs cite to New York Penal Code section 240.30 and also state that the claim is a "form of intentional infliction of emotional distress." *See* N.Y. Penal Law § 240.30 (McKinney 2024). The Court has searched for, but has not found, such a civil claim in the annals of Federal or New York law. If the claim is construed as a violation of Section 240.30, Plaintiffs do not have standing to bring because there is no private right of action provided by the penal law. *See Cruz v. New York City Transit*, No. 24-cv-89, 2025 WL 209598, at \*10 (S.D.N.Y. Jan. 16, 2025), *report and recommendation adopted sub nom. Cruz v. New York City Transit Auth.*, No. 24-cv-89, 2025 WL 618557 (S.D.N.Y. Feb. 26, 2025) (citing *Johnson v. Allick*, 2019 WL 569106, at \*5 (E.D.N.Y. Feb. 12, 2019) ("As a general matter ... crimes are prosecuted by the government, not by private parties.")). If the claim is construed as a "form of intentional infliction of emotional distress," it must be dismissed as duplicative of the IIED claim since the allegations supporting both claims are the same. *See, e.g.*, *Grimes v. Fremont Gen. Corp.*, 933 F. Supp. 2d 584, 613 (S.D.N.Y. 2013) (finding a claim must be dismissed because "the allegations in support of [the] claim are entirely duplicative of Plaintiffs' IIED claim"). Moreover, "[n]o intentional infliction of emotional distress claim will lie where the conduct underlying the claim falls within the ambit of traditional tort liability." *See* M.Q. v. United States, 776 F. Supp. 3d 180, 198 (S.D.N.Y. 2025). Here the underlying conduct clearly lies in defamation. Accordingly, the purported Cyber Harassment (Count Five) claim is dismissed.

## III. Plaintiffs' Civil Conspiracy Claim Cannot Stand on its Own

Plaintiff purports to state as its Eighth Count, a claim for civil conspiracy. AC ¶¶ 545–64. However, "New York does not recognize civil conspiracy to commit a tort as an independent cause of action." *Whitfield v. Law Enforcement Employees Benevolent Association*, 237 A.D.3d 1139, 1140-1141, 233 N.Y.S.3d 615, 619 (2d Dep't 2025); *see also Philip S. Schwartzman, Inc. v. Pliskin, Rubano, Baum & Vitulli*, 215 A.D.3d 699, 703, 187 N.Y.S.3d 702, 707 (2d Dep't 2023) ("Under New York law, in order to properly plead a cause of action to recover damages for civil conspiracy, the plaintiff must allege a cognizable tort, coupled with an agreement between the conspirators regarding the tort, and an overt action in furtherance of an agreement"). Since each of the Plaintiffs' other tort claims have been dismissed, the civil conspiracy claim must be dismissed as well. *See, e.g.*, *Mamoon v. Dot Net Inc.*, 135 A.D.3d 656, 658, 25 N.Y.S.3d 85, 88 (1st Dep't 2016) (dismissing civil conspiracy claim after other tort claims were dismissed).

### CONCLUSION

For the reasons stated above, each of Plaintiffs' claims is time-barred or otherwise facially deficient as a matter of law, and Defendant's motion to dismiss [ECF No. 22] is GRANTED. The case is dismissed with prejudice. [15]

**\*14** The Clerk of Court respectfully is requested to terminate the motion pending at docket entry 22 and to close this case.

**SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 2771663

---

### Footnotes

1    *See Button v. New York Times*, No. 1:24-cv-05888-MKV (S.D.N.Y Sept. 15, 2025) (motion to dismiss case granted); *Button v. Lopresti*, No. 25-cv-867-DMS-DDL (S.D. Cal. August 20, 2025) (motion to dismiss pending); *Button v. Melcher*, 771 F. Supp. 3d 76, 80 (D. Mass. 2025) (motion to dismiss entire case granted); *Button v. Thonis*, No. 24-cv-220, 2025 WL 1092636, at \*5 (D.N.H. Apr. 11, 2025) (motion to dismiss entire case granted); *Button v. Humphries*, No. 8:24-cv-01730, 2025 WL 1820116, at \*4 (C.D.C.A. June 9, 2025) (motion to dismiss entire case granted with prejudice); *Button v. McCawley*, 24:cv-60911, 2025 WL 50431, at \*12 (S.D.F.L. Jan 8, 2025) (motion to dismiss granted with prejudice in part and without prejudice in part); *Button v. Roe*, No. 24-cv-220, 2024 WL 5136694, at \*1 (D.N.H. Dec. 17, 2024) (motion to dismiss case in

its entirety granted); *Button v. Doherty*, No. 1:24-cv-05026-JPC-KHP (S.D.N.Y.) (motion to dismiss pending, Report & Recommendation suggests granting motion to dismiss case in its entirety).

2    The Court draws the facts recited in this Opinion from the Amended Complaint [ECF No. 17 ("AC")], the well-pleaded facts of which are accepted as true for purposes of resolving this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

3    Plaintiffs name Hannah Stolrow and Sage Humphries as "non-party co-conspirators" who "intentionally conspired together to ruin Plaintiffs' lives, crippling Plaintiffs' ability to work as their reputations, careers, business and livelihood were completely destroyed." AC ¶¶ 158, 190, 384.

4    The Court takes judicial notice of the Nevada Litigation to establish the facts of the proceedings, not for the truth of any facts asserted by parties or factual findings in the case. *See Staehr v. Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).

5    Plaintiffs request oral argument in their Opposition. *See* Pl. Opp. Since oral argument is not needed to rule on the motion to dismiss, Plaintiffs' request is denied. *See AD/SAT, Div. of Skylight, Inc. v. Assoc. Press*, 181 F.3d 216, 226 (2d Cir. 1999) (*per curiam*) (noting that "a district court's decision whether to permit oral argument rests within its discretion" (citing *Katz v. Morgenthau*, 892 F.2d 20, 22 (2d Cir. 1989)); *see also Henderson v. Lagoudis*, No. 3:12cv1688 (JBA), 2014 WL 813120, at *1 n.1 (D. Conn. Feb. 28, 2014) (denying request for oral argument because it was not necessary to decide pending motion).

6    "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015).

7    The parties do not dispute that New York law applies in this case, and both parties apply New York law in their briefing on this motion. *See* Def. Mem.; Pl. Opp. Accordingly, the Court applies New York law to the claims. *See Krumme v. Westpoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (explaining that the parties' "implied consent ... is sufficient to establish choice of law"); *see also Valentini v. Grp. Health Inc.*, No. 20-cv-9526 (JPC), 2021 WL 2444649, at *6 (S.D.N.Y. June 15, 2021) ("The parties do not dispute that New York law applies in this case, and the Court accordingly applies that law.").

8    Plaintiffs do not argue that any other allegedly defamatory statements were made within a year of the filing of this case. *See* Pl. Opp.

9    It is well-settled that the single publication rule applies to websites, and unrelated modifications to the website do not constitute republications of the allegedly defamatory material. *Firth*, 98 N.Y.2d at 371, 474 N.Y.S. 2d 69, 775 N.E.2d 463. Moreover, "continuous access ... via hyperlinks to a website is not a republication." *Martin v. Daily News L.P.*, 121 A.D.3d 90, 103, 990 N.Y.S.2d 473, 483 (1st Dep't 2014). Accordingly, the continued existence of any of Defendant's posts online does not, by itself, constitute republication.

10    The allegation of republication did not exist in the original complaint, since the purportedly offending post occurred the day after this case was initiated. AC ¶ 311. The Court also notes that there would appear to be some unfairness in allowing Plaintiffs to allege that after they filed their initial complaint, the publication of a statement included in their own messages defamed them, thereby restarting the statute of limitations clock for their Amended Complaint.

11    Claims for intentional infliction of emotional distress are generally subject to a one-year statute of limitations, which begins to accrue on the date of the injury. *See, e.g., Barbetta v. Facchini*, 236 A.D.3d 623, 625, 230 N.Y.S.3d 276, 278 (2d Dep't 2025) ("Causes of action to recover damages for intentional infliction of emotional distress are governed by a one-year statute of limitations"); *Wilson v. Erra*, 94 A.D.3d 756, 756, 942 N.Y.S.2d

127, 129 (2d Dep't 2012) (a claim of intentional infliction of emotional distress accrues "on the date of injury."). Thus, the intentional infliction of emotional distress claims are separately time-barred on that basis.

12      Plaintiffs confuse the doctrines of equitable estoppel and equitable tolling and frame their arguments as reasons the statute of limitations "must be tolled." AC ¶¶ 417, 422, 443, 427, 454, 523, 529, 559, 580, 606. Since equitable tolling is unavailable and Plaintiffs' only argument in favor of equitable estoppel is that dismissing Plaintiffs' claims would be "unjust," the Court analyzes whether Plaintiffs' four arguments in favor of equitable tolling counsel in favor of equitable estoppel. AC ¶¶ 380–81, 421, 442, 579, 605.

13      Plaintiffs separately allege that in the same call Defendant made the following statements, which Plaintiffs construe as threats: "[i]t's not worth your time and energy or mine"; "[t]here is [*sic*] consequences to filing frivolous or not legally viable lawsuits"; "[a]s a lawyer, going through your complaint the causes of action that you are listing with the facts that even just based on im gonna [*sic*] write my motion to dismiss, im [*sic*] not going to be arguing the facts im [*sic*] going to be arguing the law and based on the law and the claims that you've made you haven't stated a claim upon which relief can be granted so and that's sanctionable"; "[y]ou shouldn't be filing frivolous lawsuits' "; "I don't think it's worth your time, it's not gonna [*sic*] end well for you." AC ¶ 12, 320.

14      *See* Plaintiffs' Supplement to Emergency Cross-Motion for Protective Order, at 157–58, 301–02, *Humphries v. Button*, No. 21-cv-01412, (D. Nev. March 10, 2023) (requesting that a plaintiff "[p]roduce any and all Communications between you and Madison Breshears regarding Dusty Button and/or Taylor Button including but not limited to communications with the Instagram user @Real_World_Ballerina."). The Court takes judicial notice of this filing in the Nevada Litigation to establish the matter of the proceedings, not for the truth of any facts asserted by parties or factual findings in the case. *See Staehr*, 547 F.3d at 425.

15      The Court does not grant Plaintiffs leave to amend the Amended Complaint. Plaintiffs were granted an opportunity to amend their complaint in response to issues raised in Defendant's initial pre-motion letter requesting leave to file a motion to dismiss. [ECF Nos. 16]. Plaintiffs took that opportunity and did not remedy the defects described above. *See* AC. Further, Plaintiffs did not request leave to amend in their opposition to the pending motions to dismiss and thus did not demonstrate to the Court that the opportunity to amend would not be futile. *See, e.g., Treiber v. Aspen Dental Mgmt., Inc.*, 635 F. App'x 1, 4 (2d Cir. 2016).

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:23-cv-01547-BKS-ML    Document 43    Filed 10/08/25    Page 74 of 115

Farrakhan v. Anti-Defamation League, Not Reported in Fed. Rptr. (2025)

2025 WL 24066
Only the Westlaw citation is currently available.
**RULINGS BY SUMMARY ORDER DO NOT
HAVE PRECEDENTIAL EFFECT. CITATION
TO A SUMMARY ORDER FILED ON OR AFTER
JANUARY 1, 2007 IS PERMITTED AND IS
GOVERNED BY FEDERAL RULE OF APPELLATE
PROCEDURE 32.1 AND THIS COURT'S LOCAL
RULE 32.1.1. WHEN CITING A SUMMARY
ORDER IN A DOCUMENT FILED WITH THIS
COURT, A PARTY MUST CITE EITHER THE
FEDERAL APPENDIX OR AN ELECTRONIC
DATABASE (WITH THE NOTATION "SUMMARY
ORDER"). A PARTY CITING TO A SUMMARY
ORDER MUST SERVE A COPY OF IT ON ANY
PARTY NOT REPRESENTED BY COUNSEL.**
United States Court of Appeals, Second Circuit.

Minister Louis FARRAKHAN,
Nation of Islam, Plaintiffs-Appellants,

v.

ANTI-DEFAMATION LEAGUE, Jonathan Greenblatt,
individually, in his capacity as CEO and national director
of the Anti-Defamation League, Rabbi Abraham Cooper,
individually and in his official capacity as Director of
Social Global Action Agenda for Simon Wiesenthal
Center, Simon Wiesenthal Center, Defendants-Appellees.

24-1237-cv
|
January 3, 2025

Appeal from a judgment of the United States District Court
for the Southern District of New York (Denise Cote, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY
ORDERED, ADJUDGED, AND DECREED** that the
judgment of the district court, entered on April 5, 2024, is
**AFFIRMED**.

**Attorneys and Law Firms**

FOR PLAINTIFFS-APPELLANTS: Sa'ad A. Muhammad
(Abdul A. Muhammad, Office of the General Counsel, Nation
of Islam, Chicago, Illinois; and Michael K. Muhammad,
Muhammad Law Firm, Dallas, Texas, on the brief), Power
and Dixon, PC, Chicago, Illinois.

FOR DEFENDANTS-APPELLEES: Nathan E. Siegel
(Adam I. Rich, on the brief), Davis Wright Tremaine LLP,
Washington, District of Columbia, and New York, New York,
for Anti-Defamation League and Jonathan Greenblatt. Julie
R. F. Gerchik (Patricia L. Glaser and Eric Y. Su, on the
brief), Glaser Weil Fink Howard Jordan & Shapiro LLP, Los
Angeles, California, for Rabbi Abraham Cooper and Simon
Wiesenthal Center.

PRESENT: SUSAN L. CARNEY, JOSEPH F. BIANCO,
WILLIAM J. NARDINI, Circuit Judges.

## SUMMARY ORDER

**\*1** Plaintiffs-Appellants Minister Louis Farrakhan
("Farrakhan") and the Nation of Islam ("NOI") appeal
from the district court's dismissal of their second amended
complaint ("SAC") against Defendants-Appellees
the Anti-Defamation League ("ADL"), Jonathan Greenblatt
("Greenblatt"), the Simon Wiesenthal Center ("SWC"), and
Rabbi Abraham Cooper ("Cooper"). Plaintiffs' sprawling
allegations in the 150-page SAC boil down to two types of
claims: (1) First Amendment claims that focus on defendants'
alleged speech-chilling activities against plaintiffs through
third parties, and (2) defamation claims arising from
defendants' various references to plaintiffs as anti-Semitic.
The district court dismissed the First Amendment claims for
lack of standing, pursuant to Federal Rule of Civil Procedure
12(b)(1), and the defamation claims for failure to state a
claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).
*See generally Farrakhan v. Anti-Defamation League*, No. 23-
cv-9110 (DLC), 2024 WL 1484449 (S.D.N.Y. Apr. 5, 2024).
The district court also declined to grant plaintiffs' requests for
declaratory and injunctive relief. *Id.* We assume the parties'
familiarity with the underlying facts, procedural history, and
issues on appeal, which we reference only as necessary to
explain our decision to affirm.

"We review *de novo* a district court's dismissal of a complaint
for lack of standing and for failure to state a claim on which
relief can be granted." *Soule v. Conn. Ass'n of Sch., Inc.*,
90 F.4th 34, 44 (2d Cir. 2023) (en banc). In doing so, we
"constru[e] the complaint in plaintiff's favor and accept[ ]
as true all material factual allegations contained therein."
*Donoghue v. Bulldog Invs. Gen. P'ship*, 696 F.3d 170, 173 (2d
Cir. 2012).

Case 3:23-cv-01547-BKS-ML    Document 43    Filed 10/08/25    Page 75 of 115

Farrakhan v. Anti-Defamation League, Not Reported in Fed. Rptr. (2025)

### I. First Amendment Claims

We agree with the district court that plaintiffs lack standing to assert their First Amendment claims.

Standing requires a plaintiff to show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). The alleged injury must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (alterations adopted) (internal quotation marks and citation omitted).

To the extent plaintiffs assert claims against defendants because third parties—Morgan State University and Vimeo—denied or rescinded plaintiffs' access to speech platforms, those alleged First Amendment injuries are not fairly traceable to the defendants' actions. "Standing requires more than mere speculation about the decisions of third parties and must rely instead on the predictable effect of [defendants'] action on the decisions of third parties." *Ateres Bais Yaakov Acad. of Rockland v. Town of Clarkstown*, 88 F.4th 344, 352 (2d Cir. 2023) (internal quotation marks and citation omitted). Plaintiffs' allegations that ADL's general advocacy caused the third parties' decisions are unsupported by particularized factual assertions and, instead, rely on mere "[s]peculative inferences." *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 45 (1976).

**\*2** Plaintiffs' remaining First Amendment claims do not state any injuries in fact. The SAC alleges that that ADL assisted in creating the "U.S. National Strategy [t]o Counter Antisemitism." App'x at 72, 84. However, such an allegation does not articulate a concrete and particularized injury. Although plaintiffs suggest that the National Strategy will provide a justification to arrest and prosecute Farrakhan, the SAC does not sufficiently plead that such a threat is "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks and citation omitted). Moreover, plaintiffs' claims that ADL's involvement with the New York government caused reputational harm to, and chilled the religious activities of, NOI and its members, and resulted in threatened sanctions from the state government, fail for similar reasons. At bottom, those claims rest on a tenuous chain of hypothetical events and do not show "an imminent threat of future harm or a present harm incurred in consequence of such a threat." *Hedges v. Obama*, 724 F.3d 170, 188–89 (2d Cir. 2013); *see also Laird v. Tatum*, 408 U.S. 1, 13–14 (1972) ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.").

Accordingly, we affirm the district court's dismissal of plaintiffs' First Amendment claims for lack of standing.

### II. Defamation Claims

We conclude that plaintiffs fail to state any plausible defamation claims [1] because the challenged statements are nonactionable opinions or, even if actionable, are not adequately alleged to be false or to have been made with actual malice.

To recover for defamation under New York law, a plaintiff must establish five elements: "1) a written defamatory statement of fact concerning the plaintiff; 2) publication to a third party; 3) fault (either negligence or actual malice depending on the status of the libeled party); 4) falsity of the defamatory statement; and 5) special damages or per se actionability (defamatory on its face)." *Electra v. 59 Murray Enters., Inc.*, 987 F.3d 233, 259 (2d Cir. 2021) (internal quotation marks and citation omitted). "Expressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation." *Mann v. Abel*, 10 N.Y.3d 271, 276 (2008); *accord Elias v. Rolling Stone LLC*, 872 F.3d 97, 110 (2d Cir. 2017) ("Under New York law, (with some exceptions) statements that do not purport to convey *facts* about the plaintiff, but rather express certain kinds of *opinions* of the speaker, do not constitute defamation." (emphases in original) (internal quotation marks and citation omitted)).

In addition, because Farrakhan does not dispute that he is a public figure, he must plead that defendants made the alleged defamatory statements with actual malice—"that is, with knowledge that the statements were false or with reckless disregard as to their falsity." *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015). At the motion to dismiss stage, "a public-figure plaintiff must plead plausible grounds to infer actual malice by alleging enough facts to raise a reasonable expectation that discovery will reveal evidence of actual malice." *Id.* at 546 (alteration adopted) (internal quotation marks and citation omitted).

Plaintiffs challenge a number of defendants' statements that label plaintiffs in various ways as "anti-Semitic." Under New York law, these statements are nonactionable opinions. *See, e.g.*, *Silverman v. Daily News, L.P.*, 11 N.Y.S.3d 674, 675–76 (2d Dep't 2015) (holding that statements in articles referring to plaintiff's "racist writings" were nonactionable opinions); *Russell v. Davies*, 948 N.Y.S.2d 394, 395–96 (2d Dep't 2012) (holding that news stories describing plaintiff's essay as "racist" and "anti-Semitic" were nonactionable opinions); *see also, e.g.*, *Rapaport v. Barstool Sports Inc.*, No. 22-2080-cv, 2024 WL 88636, at *3 (2d Cir. Jan. 9, 2024) (summary order) (concluding that "accusations of racism and fraud are non-actionable because they lack a clearly defined meaning and, in this context, are incapable of being objectively proven true or false.").

**\*3** Plaintiffs also challenge statements made by defendants interpreting Farrakhan's own statements. The challenged statements were either accompanied by disclosures of Farrakhan's actual statements or were based on Farrakhan's statements that were widely reported by the media. For example, the letter sent by Greenblatt to Ticketmaster, in which Greenblatt states that Farrakhan is "one of the most notorious antisemites in the country," quotes multiple statements made by Farrakhan and provides hyperlinks to two articles on ADL's website that contain additional statements by Farrakhan. App'x at 306–07. Similarly, the headline of an article challenged by plaintiffs—"Farrakhan Predicts Another Holocaust"—is accompanied by an extensive quote from Farrakhan that, as the district court found, "could be fairly interpreted as a reference to the Holocaust." *Farrakhan*, 2024 WL 1484449, at *8. Those challenged statements therefore also constitute inactionable opinions. *See Elias*, 872 F.3d at 111 (dismissing defamation claims based on statements that "clearly represent [defendant's] interpretation of the Article based on the words in the Article and general knowledge" where "the statements do not imply that [defendant's] view is based on any undisclosed facts"); *Gisel v. Clear Channel Commc'ns, Inc.*, 942 N.Y.S.2d 751, 752 (4th Dep't 2012) ("Because [defendant's] statements were based on facts that were widely reported by [relevant] media outlets and were known to his listeners, it cannot be said that his statements were based on undisclosed facts."); *see also Cooper v. Franklin Templeton Invs.*, No. 22-2763-cv, 2023 WL 3882977, at *4 (2d Cir. June 8, 2023) (summary order) (rejecting plaintiff's argument that the challenged statements implied the existence of undisclosed facts because they were "based on the publicly available video of the incident" discussed in the statements).

Finally, plaintiffs challenge certain of defendants' factual statements. On *de novo* review, we agree with the district court that the SAC fails to sufficiently allege the falsity of those statements. We further agree with the district court that the SAC did not contain "facts that would raise a reasonable expectation that discovery will reveal evidence that Greenblatt or the ADL made the statement with knowledge of or reckless disregard as to the statement's falsity." *Farrakhan*, 2024 WL 1484449, at *8 (internal quotation marks and citation omitted).

In sum, we find that the district court, after analyzing each of the statements at issue in its thorough and well-reasoned opinion, correctly determined that none could serve as a plausible claim for defamation.

### III. Declaratory and Injunctive Relief

The district court did not abuse its discretion in declining to exercise jurisdiction over plaintiffs' claims for declaratory judgment. "The Declaratory Judgment Act by its express terms vests a district court with discretion to determine whether it will exert jurisdiction over a proposed declaratory action or not." *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003); *see* 28 U.S.C. § 2201(a). We have emphasized that the district court's discretion is "broad," and its exercise "is reviewed deferentially, for abuse of discretion." *Dow Jones*, 346 F.3d at 359. The district court properly exercised this broad discretion when it concluded that the requested declaratory judgments "would not serve a useful purpose" because each of plaintiffs' substantive claims failed to either establish standing or state a plausible claim. *Farrakhan*, 2024 WL 1484449, at *8; *see Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99–100 (2d Cir. 2023) (stating that "whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved" is one factor a district court may consider in exercising this broad discretion (alterations adopted) (internal quotation marks and citation omitted)).

The district court also properly denied plaintiffs' request for injunctive relief. *See Alexander v. United States*, 509 U.S. 544, 550 (1993) ("[P]ermanent injunctions—*i.e.*, court orders that actually forbid speech activities—are classic examples of prior restraints."); *see also Citizens United v. Schneiderman*, 882 F.3d 374, 386 (2d Cir. 2018) ("[P]rior restraints constitute the most serious and the least tolerable infringement on our freedoms of speech and press." (internal quotation marks and citation omitted)).

**Farrakhan v. Anti-Defamation League, Not Reported in Fed. Rptr. (2025)**

Case 3:23-cv-01547-BKS-ML    Document 43    Filed 10/08/25    Page 77 of 115

\* \* \*

We have considered plaintiffs' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

**All Citations**

Not Reported in Fed. Rptr., 2025 WL 24066

---

## Footnotes

1    To be precise, because plaintiffs challenge written statements, their claims are for libel. *See Albert v. Loksen, 239 F.3d 256, 265 (2d Cir. 2001)* (noting that defamation "consist[s] of the twin torts of libel and slander," and that "written defamatory words are libel" (internal quotation marks and citations omitted)).

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 4145456
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Lawrence L. FINKELMAN, Plaintiff,

v.

NEW YORK STATE POLICE, Unknown Governmental
Entities-John Doe's-Jane Doe's 1-100, Defendants.

No. 06 Civ. 8705(JSR).
|
Nov. 15, 2007.

*ORDER*

JED S. RAKOFF, District Judge.

**\*1** On August 20, 2007, the Honorable Kevin Nathaniel
Fox, United States Magistrate Judge, issued a Report
and Recommendation in the above-captioned matter
recommending that plaintiff's claims against defendant New
York State Police be dismissed but that in all other respects
the defendant's motion to dismiss the complaint be denied.
Subsequently, on September 17, 2007, defendant New York
State Police submitted objections to certain portions of the
Report and Recommendation. Accordingly, the Court has
reviewed the motion and the underlying record *de novo.*

Having done so, the Court finds itself in complete agreement
with Magistrate Judge Fox's Report and Recommendation
and hereby adopts its reasoning by reference. Accordingly, the
Court dismisses the claims against the New York State Police,
with prejudice, but denies the motion to dismiss in all other
respects. The Clerk of the Court is directed to close document
number 4 in the Court's docket.

There is, however, an issue as to the remaining defendants
that was only raised now before this Court and that needs to
be addressed by the Magistrate Judge in the first instance,
viz., whether the remaining defendants have been actually
served and, if not, whether belated service at this point
would be untimely and prejudicial. Accordingly, the Court
remands the case to Magistrate Judge Fox to issue a Report
and Recommendation on the issue of whether defendants
"Unknown Governmental-Entities-John Doe's-Jane Doe's
1-100" have been served in this action and whether, if they

have not been, the claims against those defendants should be
dismissed pursuant to Federal Rule of Civil Procedure 4(m)
or otherwise, and with or without prejudice.

SO ORDERED.

## REPORT & RECOMMENDATION

KEVIN NATHANIEL FOX, United States Magistrate Judge.

TO THE HONORABLE JED S. RAKOFF, UNITED
STATES DISTRICT JUDGE

### I. INTRODUCTION

Plaintiff Lawrence L. Finkelman ("Finkelman"), proceeding
*pro se,* commenced this action pursuant to 42 U.S.C. §§
1983, 1985, and 1986, against New York State Police
and "Unknown Government Entities-John Doe's-Jane Doe's
1-100" ("defendants"). He contends the defendants conspired
to violate his civil rights when, in 2001, without a warrant
or probable cause, they forced him from his vehicle by
threatening him with physical harm, arrest, and criminal
charges, and locked him in their patrol car, thus violating
both New York and federal penal laws. Finkelman alleges
the conspiracy continued when the defendants twice filed
false documents in New York State courts in the years that
followed.

Before the Court is the defendants' motion, made pursuant
to Rule 12(b)(1) of the Federal Rules of Civil Procedure, to
dismiss the claim against defendant New York State Police
because the Eleventh Amendment bars suit against a state
and its agencies. The defendants also contend Finkelman's
claims are barred by a three-year statute of limitations and,
as such, permitting him to amend the complaint would be
futile. [1] Finkelman opposes the defendants' motion to dismiss
and their contention that the applicable statute of limitations
has expired.

### II. BACKGROUND

**\*2** Finkelman maintains that some time prior to November
28, 2001, the defendants, acting under the color of law,
conspired to kidnap and arrest him unlawfully in violation
of the Fourth, Fifth, Eighth and Fourteenth Amendments.
He contends the defendants' actions constitute violations of

federal and state criminal statutes: 18 § U .S.C. 1201 and New York Penal Law § 135.20. According to Finkelman, on November 28, 2001, the defendants lay in wait for him on Interstate Highway 87 and ordered him out of his car. Finkelman alleges the defendants acted without a warrant or probable cause to believe he had committed an offense. Finkelman recalls the defendants threatened to use deadly force and to arrest and charge him for acts he never committed. Finkelman also alleges that "[t]he defendants [,] upon learning that the plaintiff had the evidence from the [ ] grand larceny in his possession [,] locked the plaintiff up in the back [of] their patrol vehicle," and continued to threaten him while he was in their custody. Finkelman maintains the defendants destroyed the evidence he possessed and asked him if he was going to accuse them of grand larceny.

Finkelman alleges that, on November 3, 2004, "[d]efendants knowingly filed a fraudulent and perjurious complaint against the plaintiff" to further the goals of their conspiracy and to prosecute a "malicious, fradulent and perjurious lawsuit." According to the plaintiff, the defendants engaged in similar misconduct on October 31, 2005, December 28, 2005, and twice on December 29, 2005, when they filed documents related to him, which they knew to be false and perjurious.

Finkelman alleges the defendants "knowingly failed to disclose to the plaintiff, and actively took steps to conceal material information and criminal acts known only to the Defendants regarding the herein criminal violation of the Constitution and laws of the United States and New York," in order to "prevent the plaintiff from filing criminal complaints and making public the criminal acts [enumerated in the instant complaint] and corruption."

Finkelman contends the defendants violated his Sixth and Seventh Amendment rights by using their official positions to deny him the right to a speedy trial, a jury trial, and "compulsory process for obtaining witnesses." Finkelman also contends that the defendants had the opportunity and authority to stop the civil rights violations he alleges were perpetrated, but they declined to do so. According to Finkelman, all the defendants' acts were committed to shield them from prosecution and to intimidate him because the defendants knew he was "a plaintiff and witness in a felony criminal matter against them. [Therefore, t]he [d]efendants [ ] threatened and intimidated [him] to deter him from attending, testifying and initiating a criminal complaint and/ or suit in a State Court of the United States and to interfere with judicial proceedings."

On October 26, 2006, Finkelman commenced the instant action. Thereafter, on November 2, 2006, he amended his complaint by removing, as defendants to the action: "State of New York;" "John Doe 1-20;" and "Jane Doe 1-20" and replacing them with the following defendants: "New York State Police" "Unknown Government Entities-John Doe's-Jane Doe's 1-100." Finkelman has also included, in his amended complaint, a request that the court direct the defendants to disclose to him documents which will enable him to learn the names of the individual defendants and, thereafter, serve them with process. Finkelman has asked, *inter alia,* that the court grant him injunctive relief and direct the defendants to avoid contacting any potential witnesses unless he is present.

## III. DISCUSSION

**\*3** A court may dismiss an action pursuant to Fed.R.Civ.P. 12(b) (1), for lack of subject matter jurisdiction, only if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Raila v. United States,* 355 F.3d 118, 119 (2d Cir.2004). In considering a motion made pursuant to Fed.R.Civ.P. (12)(b)(1), "[a] court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Id.* Further, "[o]n a motion invoking sovereign immunity to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of proving by a preponderance of evidence that jurisdiction exists." *Chayoon v. Chao,* 355 F.3d 141, 143 (2d Cir.2004) (quoting *Garcia v. Akwesasne Hous. Auth.,* 268 F.3d 76, 84 (2d Cir.2001).

"In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court ... may refer to evidence outside the pleadings." *See Makarova v. United States* 201 F.3d 110, 113 (2d Cir.2000). Additionally, where, as here, the plaintiff is appearing *pro se,* his or her pleadings "are [to be] held 'to less stringent standards than formal pleadings drafted by lawyers,' " *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 176 (1980) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595 [1972] ), and should be interpreted "to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 [2d Cir.1994] ). This liberal pleading standard is particularly applicable where a *pro se* plaintiff alleges a violation of his

or her civil rights. *See Jacobs v. Ramirez,* 400 F.3d 105, 106 (2d Cir.2005).

In their motion to dismiss, the defendants contend that the Eleventh Amendment bars suit against the state of New York and its agencies and, as a result, defendant New York State Police is immune from suit. Finkelman responds that states "must first be in compliance with the Constitution and the laws of the United States" before the Eleventh Amendment is to be applied.

Under the Eleventh Amendment, a state or an arm of a state may not be sued in a federal court absent the state's consent. *See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144, 113 S.Ct. 684, 687-88 (1993) (citations omitted). Defendant New York State Police is an arm of the state, and therefore an action brought against it is a suit against the state. *See, e.g., Morrongiello v. Ashcroft,* No. 01 Civ. 2524, 2004 WL 112944, at *2 (S.D.N.Y. Jan. 22, 2004). *Sections 1983* and *1985 of Title 42* were not intended to abrogate the states' immunity. *See Degrafinreid v. Ricks,* No. 03 Civ. 6645, 2004 WL 2793168, at *5 (S .D.N.Y. Dec. 6, 2004). The state of New York has not consented to suit in federal court under: (a) 42 U.S.C. § 1983, *see Le Grand v. Evan,* 702 F.2d 415, 417 (2d Cir.1983); (b) 42 U.S.C. § 1985, *see Quirk v. City of New York,* No. 03 Civ. 0324, 2003 WL 1872714, at *1 (S.D.N.Y. Apr. 10, 2003); or (c) 42 U.S.C. § 1986, *see Gaspark v. Stony Brook University,* No. CV-05-3817, 2007 WL 2026612, at *4 (E.D.N.Y. July 9, 2007).

**\*4** Accordingly, Finkelman's claims against defendant New York State Police should be dismissed. However, the complaint contains claims against "John Does and Jane Does 1-100," which the defendants have not addressed. Therefore, dismissal of the entire complaint is not warranted at this time.

## IV. RECOMMENDATION

For the reasons set forth above, the defendants' motion to dismiss the complaint should be denied. The claims against defendant New York State Police should be dismissed.

## V. FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of the Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff, United States District Judge, 500 Pearl St., Room 1340, New York, New York 10007, and to the chambers of the undersigned, 40 Centre St., Room 540, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Rakoff. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn,* 474 U.S. 140 (1985); *IUE AFL-CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Candair Ltd.,* 838 F .2d 55, 57-59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237-38 (2d Cir.1983).

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 4145456

---

## Footnotes

1    The defendants have failed to make a proper motion addressing their statute of limitations defense. Therefore, the Court has determined not to analyze that defense in this writing.

---

Case 3:23-cv-01547-BKS-ML    Document 43    Filed 10/08/25    Page 81 of 115

Horton v. Schenectady County, Not Reported in Fed. Supp. (2023)

2023 WL 2552005
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Benjamin HORTON, Plaintiff,

v.

SCHENECTADY COUNTY, et al., Defendants.

8:21-CV-00983 (LEK/CFH)
|
Signed March 16, 2023

**Attorneys and Law Firms**

Benjamin Horton, Dannemora, NY, Pro Se.


**MEMORANDUM-DECISION AND ORDER**

LAWRENCE E. KAHN, United States District Judge

**I. INTRODUCTION**

 **\*1**  Pro se Plaintiff Benjamin Horton seeks relief against
Defendants Schenectady County and the City of Schenectady
Police Department (collectively, "Defendants") pursuant to
42 U.S.C. § 1983. Dkt. No. 1 ("Complaint"). Plaintiff also
filed a motion for leave to proceed in forma pauperis ("IFP").
Dkt. No. 2 ("IFP Application"). The Honorable Christian F.
Hummel, United States Magistrate Judge, conducted initial
review of Plaintiff's Complaint pursuant to 28 U.S.C. §
1915 and 28 U.S.C. § 1915A, and on April 22, 2022,
Judge Hummel issued a Report & Recommendation. Dkt.
No. 7 ("Report & Recommendation"). In this Report &
Recommendation, Judge Hummel granted Plaintiff's IFP
Application and recommended that Plaintiff's Complaint
be dismissed with prejudice and without opportunity to
amend. R. &. R. at 22. Plaintiff filed objections to the
Report & Recommendation on May 11, 2022. Dkt. No. 8
("Objections"). For the reasons that follow, the Report &
Recommendation is adopted in part, modified in part, and
rejected in part.


**II. BACKGROUND**

Plaintiffs' factual allegations are detailed in the Report &
Recommendation, familiarity with which is assumed. R. & R.
at 5–8.


**III. STANDARD OF REVIEW**

"Rule 72 of the Federal Rules of Civil Procedure and Title
28 United States Code Section 636 govern the review of
decisions rendered by Magistrate Judges." A.V. by Versace,
Inc. v. Gianni Versace, S.p.A., 191 F. Supp. 2d 404,
405 (S.D.N.Y. 2002). "Within fourteen days after being
served with a copy [of the Magistrate Judge's report and
recommendation], any party may serve and file written
objections to such proposed findings and recommendations
as provided by rules of the court." 28 U.S.C. § 636(b)(1). "A
judge of the court may accept, reject, or modify, in whole or in
part, the findings of recommendations made by the magistrate
[judge]." Id.

"When specific objections are made to a magistrate
judge's report-recommendation, the Court makes a 'de novo
determination of those portions of the report or specific
proposed findings or recommendations to which objection
is made.' " Felix-Torres v. Graham, 687 F. Supp. 2d 38, 45
(N.D.N.Y. 2009) (quoting 28 U.S.C. § 636(b)(1)). That "de
novo determination does not require the Court to conduct a
new hearing; rather, it mandates that the Court give fresh
consideration to those issues to which specific objections
have been made." A.V. by Versace, 191 F. Supp. 2d at 406;
see also 12 Wright & Miller, Fed. Prac. & Proc. Civ. § 3070.2
(3rd ed.) (2022) ("[T]he judge to whom the objection is made
must review the record and magistrate's recommendations,
and must make a de novo determination of the facts and legal
conclusions, receiving additional evidence and rehearing
witnesses at his or her discretion. The district judge must not
be a rubber stamp." (footnote omitted)).

"The district court may adopt those portions of a report
and recommendation to which no timely objections have
been made, provided no clear error is apparent from the
face of that report." DiPilato v. 7-Eleven, Inc., 662 F. Supp.
2d 333, 339 (S.D.N.Y. 2009). "When a party makes only
conclusory or general objections, or simply reiterates the
original arguments, the Court will review the [report and
recommendation] strictly for clear error." New York City
Dist. Couns. of Carpenters Pension Fund v. Forde, 341 F.
Supp. 3d 334, 336 (S.D.N.Y. 2018) (quoting Molefe v. KLM
Royal Dutch Airlines, 602 F. Supp. 2d 485, 487 (S.D.N.Y.
2009)).


**IV. DISCUSSION**

  **A. Timeliness of Objections**
 **\*2**  The Report & Recommendation stated that when a
party is "proceeding pro se" and is "served with this

Report-Recommendation and Order by mail," then "three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections." R. & R. at 22 n.8 (citing Fed. R. Civ. P. 6(d)). Additionally, the Report & Recommendation noted that "[i]f the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday." R. & R. at 22–23 n.8 (citing Fed. R. Civ. P. 6(a)(1)(C)). The Report & Recommendation was issued on April 22, 2022, thereby setting May 9, 2022, as the deadline to file objections. See generally R. & R.

Plaintiff's Objections were filed on May 11, 2022. See generally Objections. [1] In Houston v. Lack, 487 U.S. 266, 270, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), the Supreme Court established the prison mailbox rule, under which a pro se prisoner's legal submissions—such as a notice of appeal—are considered "filed when delivered to prison officials for transmittal to the court." Dory v. Ryan, 999 F.2d 679, 682 (2d Cir. 1993). While the Second Circuit has declined to address whether the prison mailbox rule applies in the context of objections to a report and recommendation, see Mannix v. Phillips, 619 F.3d 187, 196 (2d Cir. 2010), this Court and other courts in this district have regularly applied the prison mailbox rule to objections to a report and recommendation, see, e.g., Trapani v. Annucci, No. 21-CV-0681, 2022 U.S. Dist. LEXIS 158610, at *7 n.1, 2022 WL 4008027 (N.D.N.Y. Sept. 1, 2022) (Kahn, J.) (finding that objections to a report and recommendation were "timely under the prison mailbox rule, which holds that a pro se prisoner meets the filing deadline if he delivers the filing to prison officials within the time specified"); Bradshaw v. Fletcher, No. 19-CV-00428, 2021 U.S. Dist. LEXIS 13676, at *3, 2021 WL 248236 (N.D.N.Y. Jan. 26, 2021) ("Assuming that the prison mailbox rule applies to objections made to a report-recommendation, the Court deems the objections timely."); cf. Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001). Plaintiff's Objections were dated May 4, 2022, Objs. at 1, and the postage on the Objections' envelope indicates that they were mailed on May 9, 2022, id. at 4. Accordingly, the Court finds that Plaintiff's Objections to the Report & Recommendation were timely filed pursuant to the prison mailbox rule.

### B. Plaintiff's Objections

Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "(2) ... the court shall dismiss the case at any time if the court determines that ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [2] Thus, even if a plaintiff meets the financial criteria to commence an action IFP, it is the Court's responsibility to determine whether the plaintiff may properly maintain the complaint filed in this District before the Court may permit the plaintiff to proceed with their action IFP. See id.

Likewise, under 28 U.S.C. § 1915A, the Court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; see also Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (holding that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee); Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both Sections 1915 and 1915A are available to evaluate prisoner pro se complaints).

**\*3** The Court should not dismiss a complaint if Plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955). Under 28 U.S.C. § 1915(e) "[i]n reviewing the complaint to determine whether it states a viable claim, the court 'accept[s] as true all factual allegations in the complaint' and draws inferences from these allegations in the light most favorable to the plaintiff." Patterson v. Rodgers, 708 F. Supp. 2d 225, 232 (D. Conn. 2010) (quoting Cruz v. Gomez, 202 F.3d 593, 596 (2d Cir. 2000)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678, 129 S.Ct. 1937. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555, 127 S.Ct. 1955). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

Case 3:23-cv-01547-BKS-ML   Document 43   Filed 10/08/25   Page 83 of 115

Horton v. Schenectady County, Not Reported in Fed. Supp. (2023)

the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " Iqbal, 556 U.S. at 679, 129 S.Ct. 1937 (quoting Fed. R. Civ. P. 8(a)(2)). The Supreme Court has stated that Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (citing Twombly, 550 U.S. at 555, 127 S.Ct. 1955). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. Id. (quotations and alterations omitted).

"A document filed *pro se* is 'to be liberally construed' ...." Erikson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers...." Erikson, 551 U.S. at 94, 127 S.Ct. 2197 (quoting Estelle, 429 U.S. at 106, 97 S.Ct. 285). Moreover, courts should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." Anderson v. Coughlin, 700 F.2d 37, 41 (2d Cir. 1983) (citations omitted).

### 1. *Miranda v. Arizona* Claims

Plaintiff's Objections focus largely on the Magistrate Judge's determination as to Plaintiff's alleged Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) violations. Plaintiff argues that the Magistrate Judge erred by finding that "Miranda is not a constitutional right" and argues instead that "it is a right and when they violated Fifth Amendment that is a Constitutional [r]ight which was illegal and when they violated Sixth Amendment that was a constitutional [r]ight and that is illegal along with all the other thing[s] that happen like when I asked for a[n] Attorney...." Objs. at 2–3. The Court will review this portion of the Report & Recommendation de novo. See 28 U.S.C. § 636(b)(1).

Plaintiff's objections to the Report & Recommendation focus on the Magistrate's description of "Miranda warnings" as "a procedural safeguard rather than a right explicitly stated in the Fifth Amendment." R. & R. at 13 (quoting Neighbor v. Covert, 68 F.3d 1508, 1510 (2d Cir. 1995)). On this basis, the Magistrate Judge found that " '[t]he remedy for a Miranda violation is the exclusion from evidence of any ensuing self-incriminating statements' " and that therefore "

"[t]he remedy is not a § 1983 action.' " R. & R. at 13 (quoting Neighbor v. Covert, 68 F.3d 1508, 1511 (2d Cir. 1995)).

The Court notes that the Supreme Court has recently affirmed that a Miranda violation *standing alone* is not the basis for a claim under Section 1983. See Vega v. Tekoh, ___ U.S. ___, 142 S. Ct. 2095, 2101, 213 L.Ed.2d 479 (2022). In obiter dictum, Vega stated that "Miranda itself and [the Supreme Court's] subsequent cases make clear that Miranda imposed a set of prophylactic rules." Vega, 142 S. Ct. at 2101. Thus, Neighbor and Vega justified their denials of Section 1983 lawsuits brought pursuant to Miranda by characterizing Miranda as a set of prophylactic rules, rather than as constitutionally required rules. However, in Dickerson v. United States, the Supreme Court explicitly held that "Miranda announced a constitutional rule...." 530 U.S. 428, 444, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000). Moreover, Vega did not explicitly overturn Dickerson and acknowledged that the Miranda rules are " 'constitutionally based,' " Vega, 142 S. Ct. at 2101 (quoting Dickerson, 530 U.S. at 440, 120 S.Ct. 2326), while at the same time continuing to characterize the Miranda rules as "prophylactic rules nonetheless[,]" Vega, 142 S. Ct. at 2101.

**\*4** However, if Miranda rules are characterized as prophylactic rules—rather than as constitutional rules—this would constitute a substantial infringement on the authority of state courts. As the dissent in Vega noted: "Rules arising from 'the United States Constitution' are applicable in state-court proceedings, but non-constitutional rules are not." Vega, 142 S. Ct. at 2109 (Kagan, J., dissenting) (citing Dickerson, 530 U.S. at 438, 120 S.Ct. 2326). Thus, if Miranda announced prophylactic rules, rather than constitutional rules, this would allow federal courts to issue non-constitutional prophylactic rules that are binding on state courts. In Dickerson, the Supreme Court emphasized that Miranda must be characterized as constitutional rules by observing that "[i]t is beyond dispute that we do not hold a supervisory power over the courts of the several states." 530 U.S. at 438, 120 S.Ct. 2326 (citing Smith v. Phillips, 455 U.S. 209, 221, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982)). Thus, "[f]ederal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith, 455 U.S. at 221, 102 S.Ct. 940.

It is not the place of the federal courts to exercise supervisory authority over state judicial proceedings when such exercise is not constitutionally required. The Court is mindful that "it is not the business of this Court to pronounce policy"

Case 3:23-cv-01547-BKS-ML    Document 43    Filed 10/08/25    Page 84 of 115

Horton v. Schenectady County, Not Reported in Fed. Supp. (2023)

and "[i]t must observe a fastidious regard for limitations on its own power...." Trop v. Dulles, 356 U.S. 86, 120, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958) (Frankfurter, J., dissenting). Justice Brandeis eloquently described the salutary effect of federalism in the United States: "It is one of the happy incidents of the federal system that a single courageous State may, if its citizens choose, serve as a laboratory...." New State Ice Co. v. Liebmann, 285 U.S. 262, 311, 52 S.Ct. 371, 76 L.Ed. 747 (1932) (Brandeis, J., dissenting). Accordingly, based on the principles of stare decisis, federalism, and judicial restraint, the Court follows the holding of Dickerson, which stated that "Miranda announced a constitutional rule...." 530 U.S. at 444, 120 S.Ct. 2326. The Court modifies the Report & Recommendation's Miranda finding by following the Dickerson holding that "Miranda announced a constitutional rule...." 530 U.S. at 444, 120 S.Ct. 2326.

### 2. Fourteenth Amendment Claims

The Report & Recommendation did not take into account the Second Circuit decision of Deshawn E. by Charlotte E. v. Safir, which stated that "[a] Miranda violation that amounts to actual coercion based on outrageous government misconduct is a deprivation of a constitutional right that can be the basis for a § 1983 suit, even when a confession is not used against the declarant in any fashion." 156 F.3d 340, 348 (2d Cir. 1998) (citations omitted).

"[A] Miranda violation that amounts to actual coercion based on outrageous government misconduct" can proceed pursuant to Section 1983 because this constitutes a violation of the Due Process Clause of the Fourteenth Amendment: "The due process clause of the Fourteenth Amendment prohibits self-incrimination based on fear, torture, or any other type of coercion." Deshawn E., 156 F.3d at 348 (citing Brown v. Mississippi, 297 U.S. 278, 285–86, 56 S.Ct. 461, 80 L.Ed. 682 (1936)). "The State is free to regulate the procedure of its courts in accordance with its own conceptions of policy, unless in so doing it offends some principle of justice as to be rooted in the traditions and conscience of our people as to be ranked as fundamental." Brown, 297 U.S. at 285, 56 S.Ct. 461 (quotations and citations omitted). Accordingly, the violation of a Fourteenth Amendment Due Process right constitutes "the deprivation of ... rights, privileges, or immunities secured by the Constitution and laws" under Section 1983. 42 U.S.C. § 1983.

Thus, although the Magistrate Judge found that Plaintiff's allegations could not be considered under the Fourteenth Amendment because "the allegedly unlawful acts by defendants are the same as those underpinning his putative Miranda rights claim[,]" R. & R. at 20, he should have addressed the Second Circuit's holding that under the Due Process Clause of the Fourteenth Amendment, a Miranda violation that amounts to actual coercion based on outrageous government misconduct can be the basis for a § 1983 lawsuit. See Deshawn E., 156 F.3d at 348. Accordingly, the Court modifies the Report & Recommendation insofar as it did not consider Deshawn E.

**\*5** "The question in each case is whether the conduct of 'law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined.' " Deshawn E., 156 F.3d at 348 (quoting Rogers v. Richmond, 365 U.S. 534, 544, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961)). "The challenged conduct must be the 'kind of misbehavior that so shocks the sensibilities of civilized society as to warrant a federal intrusion into the criminal processes of the States.' " Deshawn E., 156 F.3d at 348 (quoting Moran v. Burbine, 475 U.S. 412, 433–34, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)).

"[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). "It is, on the contrary, behavior at the other end of the culpability spectrum that would most probably support a substantive due process claim; conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Id.[3] "Whether the point of conscience-shocking is reached when injuries are produced with culpability falling within the middle range, following something more than negligence but less than intentional conduct, such as recklessness or gross negligence is a matter for closer calls." Id. (quotations and citation omitted). The Supreme Court has stated that under the Fourteenth Amendment, injuries from interrogation may not always be physical: "There is torture of mind as well as body; the will is as much affected by fear as by force. And there comes a point where this Court should not be ignorant as judges of what we know as men." Watts, 338 U.S. at 52.

**\*6** Here, Plaintiff has alleged that he was "verbally force[d]" to be transported "for two hours" by a Schenectady City Police officer, detective McCabe,[4] and a state investigator,

Case 3:23-cv-01547-BKS-ML    Document 43    Filed 10/08/25    Page 85 of 115

Horton v. Schenectady County, Not Reported in Fed. Supp. (2023)

Jason DeLuca, "in a locked car speeding [d]own the [New York State T]hruway" from Salisbury, New York, to Schenectady, New York, where he was subsequently interrogated. Compl. at 1–2. As the Supreme Court has explained, transportation of a detainee "a considerable distance from his home" is a "factor to be considered" when assessing a Fourteenth Amendment Due Process actual coercion claim. Culombe, 367 U.S. at 630, 81 S.Ct. 1860. Additionally, Plaintiff alleges that he was "[d]enied a lawyer and medical [treatment" although he "told the officers he was confused and had memory issues, and [the officers] just kept yelling at [Plaintiff.]" Compl. at 3. The Supreme Court has also stated that courts should consider the interrogated individual's "mental equipment" when assessing a Fourteenth Amendment Due Process actual coercion claim. Culombe, 367 U.S. at 625, 81 S.Ct. 1860. When making this assessment, courts should consider whether the interrogated person "is suggestible and subject to intimidation...." Id. Thus, although the Magistrate Judge did not conduct 28 U.S.C. § 1915 and 28 U.S.C. § 1915A initial review of Plaintiff's Section 1983 Fourteenth Amendment Due Process actual coercion claims against McCabe and DeLuca, the Court finds that these claims survive initial review.[5] In so doing, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 3. Sixth Amendment Claim

While the Magistrate Judge acknowledged that Plaintiff had made Sixth Amendment right to counsel claims, his Report & Recommendation did not expressly address these claims. R. & R. at 11–12. Nevertheless, it appears that the Magistrate Judge recommended dismissal of these claims with prejudice. Id. at 22. Plaintiff contested this in his Objections, asserting that law enforcement officers "violated [his] Sixth Amendment [right] that was a constitutional [r]ight and that is illegal along with all other thing[s] that happen like when I asked for a[n] Attorney...." Objs. at 3. Accordingly, the Court modifies the Report & Recommendation insofar as it did not specifically address Plaintiff's Sixth Amendment claims.

In general, "a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him." Kirby v. Illinois, 406 U.S. 682, 688, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); see also Deshawn E., 156 F.3d at 349 (quoting Kirby, 406 U.S. at 688). When "the underlying charges against

[a plaintiff] were state charges, the Court looks to state law to determine when the adversarial proceedings were initiated." Nimkoff v. Dollhausen, 751 F. Supp. 2d 455, 465 (E.D.N.Y. 2010) (citing Deshawn E., 156 F.3d at 349). "Generally, New York State courts hold that 'a criminal proceeding, and with it the right to counsel, is initiated by the filing of an accusatory instrument.' " Nimkoff, 751 F. Supp. 2d at 465 (quoting Deshawn E., 156 F.3d at 349). "In addition, the right to counsel attaches 'if substantial rights of the accused may be affected by a particular proceeding....' " Nimkoff, 751 F. Supp. 2d at 465 (quoting Meadows v. Kuhlmann, 812 F.2d 72, 76 (2d Cir. 1987)). "[I]n New York State [this] includes 'when a defendant was brought to the scene of the crime by court order, placed in a post-indictment lineup, or compelled to appear before a grand jury.' " Nimkoff, 751 F. Supp. 2d at 465 (quoting Deshawn E., 156 F.3d at 349).

Even interpreting Plaintiff's Complaint liberally, the Complaint does not include facts showing that the filing of an accusatory instrument had occurred prior to Plaintiff's interrogation, or that Plaintiff's rights were affected by a particular proceeding at that point in time. Because Plaintiff has not pled facts necessary to plausibly demonstrate Sixth Amendment right to counsel claims, Plaintiff's Section 1983 claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 4. Applicability of Heck v. Humphrey[6]

**\*7** In Heck v. Humphrey, the Supreme Court

> h[e]ld that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issue of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that

Case 3:23-cv-01547-BKS-ML     Document 43     Filed 10/08/25     Page 86 of 115

Horton v. Schenectady County, Not Reported in Fed. Supp. (2023)

relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512, U.S. 477, 486–87 (1994) (emphasis in original) (footnotes omitted). "[T]he bar in Heck is not jurisdictional...." Scott v. City of Mt. Vernon, No. 14-CV-4441, 2017 U.S. Dist. LEXIS 47856, at *71, 2017 WL 1194490 (S.D.N.Y. Mar. 30, 2017); see also Polzin v. Gage, 636 F.3d 834 (7th Cir. 2011) ("The Heck doctrine is not a jurisdictional bar. Because it is not jurisdictional, the Heck defense is subject to waiver." (citations omitted)); Garrett v. Murphy, 17 F.4th 419, 428 (3rd Cir. 2021) ("A suit barred by Heck's favorable-termination requirement fails to state a valid cause of action under § 1983, ... and is not jurisdictional. We see no basis for converting Heck's favorable-termination rule into a 'jurisdictional' rule." (citation omitted)).

The Magistrate Judge appears to have discussed Heck as a general matter, stating that "Plaintiff's criminal conviction, to date, remains intact." R. & R. at 11. However, elsewhere, the Magistrate Judge indicated that Heck might not be a bar to Plaintiff's false arrest and false imprisonment claims "because there is no indication of what evidence, if any, defendants obtained from plaintiff" nor was there indication of "whether the same [evidence] was necessary in securing [P]laintiff's current conviction." Id. at 16. Moreover, the Magistrate Judge said that it appeared "that police officers were monitoring [P]laintiff" which "further suggest[s] the evidence necessary for his conviction was obtained independently." Id.

The Court finds that because there are indications that the evidence necessary for Plaintiff's conviction might have been obtained independently of the aforementioned incident involving Plaintiff, McCabe, and DeLuca, the Court does not find that Heck bars Plaintiff's Section 1983 Fourteenth Amendment actual coercion claims at this time.

### 5. Statute of Limitations

**\*8** Plaintiff's Objections challenge the Magistrate Judge's dismissal of the Complaint after the Magistrate Judge sua sponte raised the affirmative defense of the statute of limitations: "I did everything my trial lawyer told me to when I told him I wanted to sue the Schenectady Police and County[,] he told me I had to use up all State [r]emdys [sic] first and that is what I did in and Schenectady case the New York State Appeals court was in 2019 and a 440 in 2020[.] So I am in my limitation[,] you can't fight a lawsuit when you are still fighting in the courts." Objs. at 1–2. Thus, it appears that Plaintiff is arguing the statute of limitations should be tolled in this case—for example, because of his ongoing appeals to the New York State courts. The Court reviews this portion of the Report & Recommendation de novo.

"It is well established that '[c]omplaints need not anticipate, or attempt to plead around, potential affirmative defenses.' " Kattu v. Metro Petroleum, Inc., No. 12-CV-54, 2013 U.S. Dist. LEXIS 110413, at *10, 2013 WL 4015342 (W.D.N.Y. Aug. 6, 2013) (quoting High Falls Brewing Co., LLC v. Boston Beer Corp., 852 F. Supp. 2d 306, 310 (W.D.N.Y. 2011)). "Accordingly, 'a statute of limitations is an affirmative defense that need not be addressed in the complaint,' and plaintiffs are not required to allege facts in their complaint to rebut a potential statute of limitations affirmative defense that might be waived." Kattu, 2013 U.S. Dist. LEXIS 110413, at *11, 2013 WL 4015342 (quoting E.E.O.C. v. Davis, No. 07-CV-6434, 2008 U.S. Dist. LEXIS 72911, at *18, 2008 WL 4415177 (W.D.N.Y. Sept. 24, 2008)).

"The Supreme Court has instructed that in section 1983 actions, we borrow not only a state's limitations period but also its 'tolling rules[,]' unless applying the state's tolling rules 'would defeat the goals of the federal statute at issue[.]'" Pearl v. City of Long Beach, 296 F.3d 76, 80 (2d Cir. 2002) (citations omitted) (quoting Bd. of Regents v. Tomanio, 446 U.S. 478, 484–86, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980) and Hardin v. Straub, 490 U.S. 536, 539, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989)). "Because the Supreme Court wanted

Case 3:23-cv-01547-BKS-ML    Document 43    Filed 10/08/25    Page 87 of 115

Horton v. Schenectady County, Not Reported in Fed. Supp. (2023)

section 1983 actions to be subject to 'tolling rules,' it seems likely that both statutory and common law rules are to be borrowed." Pearl, 296 F.3d at 81. "The taxonomy of tolling, in the context of avoiding a statute of limitations, includes at least three phrases: equitable tolling, fraudulent concealment of a cause of action, and equitable estoppel." Id. In the Section 1983 context, this can be a rather complex determination: "The initial difficulty encountered by trying to compare accrual, governed by federal law, with tolling, governed by state law, is that the reported decisions of the federal and state courts do not always mean the same thing by their use of these phrases, and phrases to which some judges ascribe different meanings are used interchangeably by other judges." Id.

The Magistrate Judge asserted that "plaintiff cannot cure the defects in his claims, as the statute of limitations are expired" and "recommended that [Plaintiff's] claims be dismissed with prejudice." R. & R. at 21. The Second Circuit has "often admonished that extreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." Anderson, 700 F.2d at 41 (emphasis in original). While the Second Circuit has permitted sua sponte dismissal based on the statute-of-limitations affirmative defense when a court conducts 28 U.S.C. § 1915 review, the Circuit has stated that "[a] dismissal under section 1915(d) based on the statute of limitations is especially appropriate where ... the injuries complained of occurred more than five years before the filing of the complaint—well outside the applicable three-year limitations period, *there are no applicable tolling provisions as a matter of law, and plaintiff has alleged no facts indicating continuous or ongoing violation of his constitutional rights.*" Pino v. Ryan, 49 F.3d 51, 54 (2d Cir. 1995) (emphasis added) (citation omitted). Here, the Magistrate Judge did not give Plaintiff the opportunity to explain whether the statute of limitations should be tolled or whether there is a continuous or ongoing violation of Plaintiff's constitutional rights.

**\*9** Moreover, "[d]etermining a statute of limitations defense ordinarily 'requires a consideration of the merit of both parties' claims and defenses.' " Kattu, 2013 U.S. Dist. LEXIS 110413, at \*12, 2013 WL 4015342 (quoting Addison v. Reitman Blacktop, Inc., 283 F.R.D. 74, 83 (E.D.N.Y. 2011)). Accordingly, "[a]t this juncture, the Court will not shift the burden of pleading and proving facts that underlie the potential statute of limitations defense, a defense that is waived if not alleged in an answer, from defendant to plaintiffs." Kattu, 2013 U.S. Dist. LEXIS 110413, at \*13–

14, 2013 WL 4015342. Therefore, the Court rejects the Magistrate Judge's recommendation to dismiss Plaintiff's claims based on the affirmative defense of the statute-of-limitations before a Defendant has raised such a defense in an answer. [7] Thus, Plaintiff's Section 1983 Fourteenth Amendment Due Process actual coercion claims against McCabe and DeLuca survive 28 U.S.C. § 1915 and 28 U.S.C. § 1915A initial review and require a response. In so doing, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

In addition, the Magistrate Judge recommended dismissal with prejudice of Plaintiff's Section 1983 Fourth Amendment false arrest and false imprisonment claims based on the affirmative defense of the statute-of-limitations. Because the Court has rejected the Magistrate Judge's recommendation to dismiss Plaintiff's claims based on the affirmative defense of the statute-of-limitation, these claims survive 28 U.S.C. § 1915 and 28 U.S.C. § 1915A initial review and require a response. [8] In so doing, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

Additionally, insofar as the Magistrate Judge appears to have found that Plaintiff's Section 1983 municipal liability claims brought pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) were barred by the statute-of-limitations and recommended dismissal of these claims with prejudice, the Court likewise rejects that portion of the Report & Recommendation.

### *6. Other Portions of the Report & Recommendation*

The Court has reviewed for clear error the other portions of the Report & Recommendation to which no objections were filed. See DiPilato, 662 F. Supp. 2d at 339. Finding no clear error, the Court adopts these portions of the Report & Recommendation.

### V. CONCLUSION

**\*10** Accordingly, it is hereby:

**ORDERED**, that the Report & Recommendation (Dkt. No. 7) is **MODIFIED in part**, **REJECTED in part**, and **ADOPTED in part**; and it is further

Horton v. Schenectady County, Not Reported in Fed. Supp. (2023)

Case 3:23-cv-01547-BKS-ML    Document 43    Filed 10/08/25    Page 88 of 115

ORDERED, that the Clerk shall provide the superintendent of the prison facility in which Plaintiff is currently confined with a copy of Plaintiff's inmate authorization form (Dkt. No. 3) and notify the official that this action has been filed and that Plaintiff is required to pay the entire statutory filing fee $350.00 pursuant to 28 U.S.C. § 1915; [9] and it is further

ORDERED, that the Clerk shall provide a copy of Plaintiff's inmate authorization form (Dkt. No. 3) to the Financial Deputy of the Clerk's Office; and it is further

ORDERED, that Plaintiff's Complaint (Dkt. No. 1) is **ACCEPTED for filing** in accordance with this Memorandum-Decision and Order to the extent that it asserts Section 1983 Fourteenth Amendment Due Process actual coercion claims against McCabe and DeLuca, Section 1983 Fourth Amendment false arrest and false imprisonment claims against McCabe and DeLuca, and pendent state law claims against McCabe, DeLuca, Schenectady County, and the City of Schenectady Police Department; and it is further

ORDERED, that the Clerk of the Court is respectfully directed to amend the case caption to include McCabe [10] and Jason DeLuca as Defendants in this action; and it is further

ORDERED, that Plaintiff's Section 1983 Fourteenth Amendment Due Process actual coercion claims against McCabe and DeLuca, Section 1983 Fourth Amendment false arrest and false imprisonment claims against McCabe and DeLuca, and pendent state law claims against McCabe, DeLuca, Schenectady County, and the City of Schenectady Police Department are permitted to proceed and require a response; and it is further

ORDERED, that Plaintiff's other claims are **DISMISSED without prejudice** [11] pursuant to 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A(b); and it is further

**\*11** ORDERED, that upon receipt from Plaintiff of the documents required for service, the Clerk shall issue summonses and forward them, along with a copy of the Complaint, to the United States Marshal for service upon McCabe, DeLuca, Schenectady County, and the City of Schenectady Police Department. The Clerk shall forward a copy of the summons and Complaint by mail to the Schenectady County Attorney's Office and the City of Schenectady Corporation Counsel's Office, together with copies of this Decision and Order; and it is further

ORDERED, that all pleadings, motions, and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with all requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Rule 7.1 of the Local Rules of Practice for the Northern District of New York in filing motions. Motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so may result in the dismissal of this action**; and it is further

ORDERED, that the Clerk shall serve a copy of this Memorandum-Decision and Order on Plaintiff.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 2552005

---

## Footnotes

1    Plaintiff also indicates that he "had a minor [h]eart [a]ttack on April 19[, 2022] and a [m]ajor [h]eart [a]ttack on the 20th" and subsequently required emergency medical surgery for these. Objs. at 1.

2    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Case 3:23-cv-01547-BKS-ML    Document 43    Filed 10/08/25    Page 89 of 115

Horton v. Schenectady County, Not Reported in Fed. Supp. (2023)

3    These circumstances include "cases involving physical brutality, threats of physical brutality, and such convincingly terror-arousing, and otherwise unexplainable, incidents of interrogation as the removal of prisoners from jail at night for questioning in secluded places, the shuttling of prisoners from jail to jail, at distances from their homes, for questioning, the keeping of prisoners unclothed or standing on their feet for long periods during questioning." Culombe v. Connecticut, 367 U.S. 568, 622, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961) (footnotes omitted). They also include "cases where deprivation of sleep has been used to sap a prisoner's strength and drug him or where bald disregard of his rudimentary need for food is a factor that adds to enfeeblement[,]" id. (footnotes omitted), "cases stamped with the overhanging threat of the lynch mob," id. at 622–23, 81 S.Ct. 1860, and "cases of grueling, intensely unrelaxed questioning over protracted periods[,]" id. at 623, 81 S.Ct. 1860. The time period for the latter would include "relaying questioning for more than thirty-six hours with one five-minute pause[,]" id. n.83 (citing Ashcraft v. Tennessee, 322 U.S. 143, 64 S.Ct. 921, 88 L.Ed. 1192 (1944)), "relay questioning from 11:30 p.m. to 2:30 or 3 a.m. on the first day of detention and from 5:30 p.m. to 3 a.m. on four of the five succeeding days[,]" Culombe, 367 U.S. at 623 n.83, 81 S.Ct. 1860 (citing Watts v. Indiana, 338 U.S. 49, 69 S.Ct. 1347, 93 L.Ed. 1801 (1949)), "relay questioning in a hot cubicle throughout one evening and during eleven and a half hours, with a one-hour respite, the next day; then on the day following, more than a half-dozen hours of questioning before the confession was made[,]" Culombe, 367 U.S. at 623 n.83, 81 S.Ct. 1860 (citing Harris v. South Carolina, 338 U.S. 68, 69 S.Ct. 1354, 93 L.Ed. 1815 (1949)); and "questioning throughout afternoon and evening on the first day; 10 a.m. to midnight on the second; then from 9 a.m. on the third until 8:30 a.m. on the morning of the fourth, with the questioning later resuming, after a brief recess, until [defendant] confessed[,]" Culombe, 367 U.S. at 623 n.83, 81 S.Ct. 1860 (citing Leyra v. Denno, 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948 (1954)).

4    Plaintiff did not include McCabe's first name in the Complaint. See generally Complaint.

5    While the Magistrate only discussed Plaintiff's claims as they relate to Schenectady County and the City of Schenectady Police Department, perhaps based on the case caption in the Complaint, "[c]ourts have found pro se complaints to sufficiently plead claims against defendants not named in the caption when there are adequate factual allegations to establish that the plaintiff intended them as defendants." Imperato v. Otsego Cnty. Sheriff's Dep't, No. 13-CV-1594, 2016 U.S. Dist. LEXIS 50155, at *79, 2016 WL 1466545 (N.D.N.Y. Apr. 14, 2016) (quotations omitted) (collecting cases). Accordingly, the Court respectfully directs the Clerk of the Court to amend the case caption to include McCabe and DeLuca as Defendants in this action.

6    "[W]hile the statute [28 U.S.C. § 636] does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard." Thomas v. Arn, 474 U.S. 140, 154, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). As noted above, the Magistrate did not address Plaintiff's Section 1983 Fourteenth Amendment Due Process actual coercion claims. Accordingly, the Magistrate did not discuss the relationship between Heck and Plaintiff's Fourteenth Amendment claims. However, as discussed below, the Magistrate did discuss Heck generally in the Report & Recommendation. R. & R. at 11–12. Insofar as that discussion is relevant to the Court's findings with regard to Plaintiff's Section 1983 Fourteenth Amendment Due Process actual coercion claims, the Court reviews that portion of the Report & Recommendation de novo.

7    The Magistrate Judge also recommended dismissal with prejudice of Plaintiff's pendent state law claims brought against Schenectady County and the City of Schenectady Police Department based on the notice of claim requirements of New York General Municipal Law § 50. R. & R. at 20–21. "The district court has the power to dismiss a complaint sua sponte for failure to state a claim, so long as the plaintiff is given notice and an opportunity to be heard." Wachtler v. Cnty. of Herkimer, 35 F.3d 77, 82 (2d Cir. 1994) (internal citations and quotations omitted). Because the Magistrate Judge did not provide Plaintiff with notice and opportunity to be heard, the Court likewise finds it is unnecessary to dismiss Plaintiff's pendent state law claims at this time. Accordingly, these claims survive 28 U.S.C. § 1915 and 28 U.S.C. § 1915A initial review and require a

**Horton v. Schenectady County, Not Reported in Fed. Supp. (2023)**

Case 3:23-cv-01547-BKS-ML    Document 43    Filed 10/08/25    Page 90 of 115

response. In so doing, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion. Moreover, although McCabe and DeLuca were not named in the case caption, based on the aforementioned discussion of Imperato, 2016 U.S. Dist. LEXIS 50155, at *79, 2016 WL 1466545, and treating Plaintiff's Complaint with liberality, as is required, it appears to the Court that Plaintiff also seeks to bring these pendent state law claims against McCabe and DeLuca.

8    Based on Imperato, 2016 U.S. Dist. LEXIS 50155, at *79, 2016 WL 1466545, and treating Plaintiff's Complaint with liberality, as is required, it appears to the Court that Plaintiff seeks to bring these Section 1983 Fourth Amendment false arrest and false imprisonment claims against McCabe and DeLuca.

9    While Section 1915 permits indigent litigants to commence a civil action in federal court without prepayment of the filing fee, those litigants "must subsequently pay the fee, to the extent [they are] able to do so, through periodic withdrawals from [their] inmate accounts." Cash v. Bernstein, No. 09-CV-1922, 2010 U.S. Dist. LEXIS 134950, at *3–4, 2010 WL 5185047 (S.D.N.Y. Oct. 26, 2010) (citing 28 U.S.C. § 1915(b); Harris v. City of New York, 607 F.3d 18, 21 (2d Cir. 2010)).

10    As noted above, the Complaint did not include McCabe's first name. See generally Complaint.

11    Should plaintiff seek to pursue any of the claims dismissed without prejudice, he must file an amended complaint. Any amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant that Plaintiff has a legal right to pursue, and over which jurisdiction may properly be exercised. Any amended complaint filed by Plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure. Plaintiff's deadline to amend his pleading as a matter of course is set forth in Rule 15(a) of the Federal Rules of Civil Procedure.

---

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 1809634
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Allah F. JUSTICE, Plaintiff,
v.
Corporal McGOVERN, Defendant.

No. 11–CV–5076(JS)(WDW).
|
April 29, 2013.

**Attorneys and Law Firms**

Allah F. Justice, Coxsackie, NY, pro se.

Liora M. Ben–Sorek, Esq., Nassau County Attorney's Office,
Mineola, NY, for Defendant.

*MEMORANDUM & ORDER*

SEYBERT, District Judge.

**\*1** Pending before the Court are Defendant Corporal
McGovern's ("Defendant") motion to dismiss *pro se* Plaintiff
Allah F. Justice's ("Plaintiff) Amended Complaint and
Plaintiff's motion for a temporary restraining order and a
preliminary injunction. For the following reasons, Plaintiff's
motion is DENIED, Defendant's motion is GRANTED,
and Plaintiff's Amended Complaint is DISMISSED WITH
PREJUDICE.

*BACKGROUND*

Plaintiff commenced this action on October 17, 2011 against
Defendant McGovern and the Sheriff of the Nassau County
Correctional Center ("NCCC") alleging violations of his
civil rights under 42 U .S.C. § 1983 ("Section 1983")
arising out of threats of violence by Defendant and a prior
lawsuit by Plaintiff against Defendant. Liberally construed,
the Complaint asserted claims of excessive force in violation
of the Eighth Amendment and retaliation in violation of the
First Amendment. (Docket Entry 1.) Plaintiff simultaneously
filed an application to proceed *in forma pauperis.* (Docket
Entry 2.) On December 6, 2011, the Court granted Plaintiff's
request to proceed *in forma pauperis* but *sua sponte* dismissed

the claims against the Sheriff of NCCC pursuant to 28 U.S.C.
§§ 1915(e)(2), 1915A(b). (Docket Entry 6.)

Defendant moved to dismiss the Complaint on December
26, 2011. (Docket Entry 8.) The Court granted Defendant's
motion on June 12, 2012 (Docket Entry 20), finding that:
(1) Plaintiff had failed to plead that he suffered any personal
injury, which was fatal to his excessive force claim, and (2) he
failed to plead that Defendant threatened him because of his
prior lawsuit, which was fatal to his retaliation claim. (Docket
Entry 20.) *See Justice v. McGovern,* No. 11–CV–5076, 2012
WL 2155275, at \*3–4 (E.D.N.Y. June 12, 2012).

The Court granted Plaintiff leave to file an amended
complaint, which he did on June 28, 2012. (Docket Entry 22.)
The Amended Complaint, which is handwritten on the Court's
civil rights form, states as follows:

> On 9/8/11 while entering the Nassau
> County Jail I was approached by
> Corporal McGovern and was told by
> him that I would be hurt by him
> and other CO's. He stated that when
> the time was right I would be dealt
> with and that he would see to it
> that I suffer. Sometime when certain
> shifts work they don't let me out for
> meals [1] or recreation whenever he
> works because he is now seargent [sic].
> My constitutional rights are being
> violated by Corporal McGovern living
> out his threats that he made on 9/8/11.

(Am.Compl.¶ IV.) Plaintiff seeks $50,000,000 in monetary
relief and describes his injuries as follows:

> I am claiming mental injuries due
> to this incident and there is no real
> medacine [sic] that can help me[.] I
> no longer have the will to live[.] I
> even had thoughts of comitting [sic]
> suicide because the treatment that I
> am recieving [sic] is unbearable and
> unlawful.

(Am.Compl.¶¶ IV.A, V.)

Defendant moved to dismiss the Amended Complaint on September 4, 2012. (Docket Entry 28.) Plaintiff did not oppose the motion but, instead, filed a motion for a temporary restraining order and a preliminary injunction enjoining Defendant from "being able to come in contact with [Plaintiff] or to work in the same place that [he is] confined in." (Docket Entry 33.) Both motions are presently pending before the Court.

### DISCUSSION

**\*2** The Court will address Plaintiff's motion for injunctive relief before turning to the merits of Defendant's motion to dismiss.

### I. *Plaintiff's Motion for Preliminary Relief*

Plaintiff seeks injunctive relief against Defendant who is a corrections officer employed by NCCC. Plaintiff, however, is no longer confined at NCCC. [2] The Second Circuit has held that "an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility ." *Salahuddin v. Goord,* 467 F.3d 263, 272 (2d Cir.2006); *see also Young v. Coughlin,* 866 F.2d 567, 568 n. 1 (2d Cir.1989). Accordingly, Plaintiff's motions are DENIED AS MOOT.

### II. *Defendant's Motion to Dismiss*

#### A. *Standard of Review*

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead sufficient factual allegations in the complaint to "state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A complaint does not need "detailed factual allegations," but it demands "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. In addition, the facts pled in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* Determining whether a plaintiff has met his burden is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *accord Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009).

#### B. *Analysis*

The Court reads the Amended Complaint as asserting two claims for relief: one for excessive force and one for inhumane conditions, both in violation of the Eighth Amendment. [3] Defendant argues that both claims must be dismissed for failure to plead physical injury. The Court agrees. "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Here, Plaintiff concedes that he has only suffered mental injuries. (*See* Am. Compl. ¶ IV.A.) Accordingly, he has failed to state a claim entitling him to relief, *see, e.g., Aziz Zarif Shabazz v. Pico,* 994 F.Supp. 460, 474 (S.D.N.Y.1998) (finding that the defendants' threats of violence failed to state a claim because "verbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983" (internal quotation marks and citation omitted)); *Greene v. Furman,* 610 F.Supp.2d 234, 237 (W.D.N.Y.2009) (finding that allegations that an inmate was denied exercise were insufficient to state an Eighth Amendment claim because "[t]here is no indication in the complaint that the deprivations alleged by plaintiff ... resulted in any physical injury"); *cf. Rush v. Fischer,* ––– F.Supp.2d ––––, 2013 WL 542641, at \*9 (S.D.N.Y. Feb. 14, 2013) (finding that an inmate who was deprived of a single meal did not state a claim for relief because only a "substantial deprivation of food" will be recognized as an Eighth Amendment violation), and Defendant's motion is hereby GRANTED.

### III. *Leave to Replead*

**\*3** Although, "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint," *Hayden v. Cnty. of Nassau,* 180 F.3d 42, 53 (2d Cir.1999), "[w]hen the plaintiff is put on notice of the deficiencies in his complaint and fails to correct them in the amended complaint ... dismissal with prejudice is proper," *Posner v. Coopers & Lybrand,* 92 F.R.D. 765, 770 (S.D.N.Y.1981) (citing *Denny v. Barber,* 576 F.2d 465, 471 (2d Cir.1978)), *aff'd,* 697 F.2d 296 (2d Cir.1982); *cf. Tyler v. Liz Claiborne, Inc.,* 814 F.Supp.2d 323, 344 (S.D .N.Y.2011) ("[A]s plaintiff has already amended his complaint twice, dismissal with prejudice is appropriate at this stage of the litigation." (collecting cases)). Here, as Plaintiff's Amended

Complaint failed to address, let alone correct, the pleading deficiencies in his original Complaint, the Court will not grant Plaintiff leave to file a Second Amended Complaint. Accordingly, Plaintiff's claims are hereby DISMISSED WITH PREJUDICE.

### CONCLUSION

For the foregoing reasons, Plaintiff's motion for a temporary restraining order and a preliminary injunction is DENIED AS MOOT, Defendant's motion to dismiss is GRANTED, and Plaintiff's Amended Complaint is DISMISSED WITH PREJUDICE.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith; therefore, *in forma pauperis* status is DENIED for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

The Clerk of the Court is directed to: (1) update the docket to reflect Plaintiff's transfer to Greene Correctional Facility, *see supra* note 2, (2) mail a copy of this Memorandum and Order to Plaintiff at that address; and (3) mark this matter CLOSED.

SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2013 WL 1809634

---

### Footnotes

1    It is unclear whether Plaintiff was denied meals altogether or whether he was required to eat his meals in his cell.

2    Although the docket indicates that Plaintiff is confined in NCCC, Plaintiff submitted a notice of change of address in another case pending before the undersigned, *Justice v. Merchant, et al.,* No. 12–CV–5103 (E.D.N.Y.) (Docket Entry 27), informing the Court that he had been transferred to Greene Correctional Facility, P.O. Box 975, Coxsackie, N.Y. 12051 as inmate number 12A5735. The Clerk of the Court is directed to update the docket to reflect Plaintiff's new address.

3    Plaintiff appears to have abandoned his claim under the First Amendment.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2003 WL 24243989
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Salvatore OGNIBENE, Plaintiff,

v.

NIAGARA COUNTY SHERIFF'S DEPARTMENT,
Niagara County District Attorney's Office, Samuel
Novara, Esq., Town of Wheatfield Court, Niagara
County Court, Niagara County Supreme Court, New
York State Appellate Division, 4 TH Judicial Dept.,
and New York State Court of Appeals, Defendants.

No. 03–CV–0678E(SR).
|
Dec. 1, 2003.

**Attorneys and Law Firms**

Salvatore Ognibene, Niagara Falls, NY, pro se.

DECISION AND ORDER

ARCARA, J.

*INTRODUCTION*

 **\*1**  Plaintiff has filed this *pro se* action seeking relief under
42 U.S.C. § 1983 (Docket No. 1, 3) and has requested
permission to proceed *in forma pauperis* (Docket No.
2). Plaintiff claims that the defendants have violated his
constitutional rights in relation to an arrest that occurred on
July 10, 1997 for which plaintiff was given an Adjournment
in Contemplation of Dismissal ("ACD") [1] on November 17,
1997 in the Town of Wheatfield (New York) Town Court.
(Complaint, ¶ 5). Apparently, plaintiff later filed some type
of motion or appeal in the Town Court of Wheatfield seeking
to dismiss the ACD. (Docket No. 3, Table of Contents). [2]
This motion was denied and appeals ensued through the state
court system all the way to the New York Court of Appeals,
which denied plaintiff leave to appeal on or about September
17, 2003. (Complaint, ¶¶ 5–10; Table of Contents, ¶¶ 2–6).
For the reasons discussed below, plaintiff's request to proceed
as a poor person is granted and the complaint is dismissed
pursuant to 28 U.S.C. § 1915(e)(2)(B).

*DISCUSSION*

Because plaintiff has met the statutory requirements of 28
U.S.C. § 1915(a), plaintiff is granted permission to proceed *in
forma pauperis.* Section 1915(e)(2)(B) of 28 U.S.C. provides
that the Court shall dismiss a case in which *in forma pauperis*
status has been granted if, at any time, the Court determines
that the action (i) is frivolous or malicious; (ii) fails to state
a claim upon which relief may be granted; or (iii) seeks
monetary relief against a defendant who is immune from such
relief.

In evaluating the complaint, the Court must accept as true all
factual allegations and must draw all inferences in plaintiff's
favor. *See King v. Simpson,* 189 F.3d 284, 287 (2d Cir.1999).
Dismissal is not appropriate "unless it appears beyond doubt
that the plaintiff can prove no set of facts in support of
his claim which would entitle him to relief." *Conley v. Gibson,*
355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "This
rule applies with particular force where the plaintiff alleges
civil rights violations or where the complaint is submitted *pro
se.*" *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998).

Based on its evaluation of the complaint, the Court finds that
plaintiff's claims must be dismissed pursuant to 28 U.S.C. §
1915(e)(2)(B)(ii) because they fail to state a claim upon which
relief may be granted.

*Plaintiff's Allegations*

Plaintiff alleges that his constitutional rights were violated
and therefore brings this action pursuant to 42 U.S.C. § 1983.
In order to state a claim under § 1983, plaintiff must allege
(1) that the challenged conduct was attributable at least in part
to a person acting under color of state law, and (2) that such
conduct deprived plaintiff of a right, privilege, or immunity
secured by the Constitution or laws of the United States.
*Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993).

Plaintiff names as defendants: (1) the Niagara County
Sheriff's Department ("Sheriff's Department"), the law
enforcement agency that responded to his daughter's "911"
telephone call, which occurred while plaintiff was admittedly
striking her in his home on July 10, 1997, and took plaintiff
into custody (Complaint, Statement of Claim, ¶¶ 1–3); (2)
the Niagara County District Attorney's Office ("DA's Office")

that, assumably, prosecuted plaintiff following this arrest; (*id.,* ¶¶ 4–5); (3) Samuel J. Novara, plaintiff's defense counsel in the proceedings in Town Court (*id.,* ¶ 6); (4) the Town of Wheatfield Town Court ("Wheatfield Town Court"), "Presiding" Town Justice Robert Cliffe, where plaintiff was prosecuted and obtained an ACD on November 17, 1997 (*id.,* ¶ 5); (5) the Niagara County Court ("County Court"), "Presiding" Judge, Hon. Peter Broderick, the court to which plaintiff appealed on or about April 14, 2000 (Complaint; Table of Contents, ¶ 3); (6) the New York Supreme Court, Niagara County ("State Supreme Court"), "Presiding" Justice, Hon. John Lane, the court to which plaintiff appealed on or about February 16, 2001 and which denied his request for relief on or about June 13, 2001 (Table of Contents, ¶ 3); (7) the New York State Supreme Court, Appellate Division, Fourth Department ("Appellate Division"), "Presiding" Justice Pine, and Justices Hayes, Hurlburt, Kehoe and Burns, the court to which plaintiff further appealed and which dismissed plaintiff's appeal on April 23, 2002 for failure to prosecute (Complaint, Statement of Claim, ¶ 8; Table of Contents, ¶ 6 A—B); and (8) the New York Court of Appeals ("Court of Appeals"), "Presiding" Justice, Hon. Judith Kaye, which denied plaintiff leave to appeal on or about September 17, 2003. (Complaint, ¶ 10; Table of Contents, ¶ 7).

**\*2** The plaintiff's complaint, liberally construed, appears to allege a violation of plaintiff's civil rights based upon claims of false arrest and false imprisonment on July 10–11, 1997 arising out of his arrest (Complaint, Statement of Claim, ¶¶ 2–4), and the "faulty procedures" of the prosecutor and the courts. The complaint also alleges that the prosecutor and the courts named as defendants failed to insure that plaintiff obtained his *Miranda* warnings and his "right" to give a statement, and that they failed to insure that he obtained his various Sixth Amendment rights, such as the right to a speedy public trial, the right to an impartial jury, the right to notice of the charges against him, the right to confront witnesses, the right to compulsory process, and the right to counsel. (*Id.,* ¶¶ 4–10). The complaint also includes a claim of either a violation of § 1983 or legal malpractice or both against plaintiff's defense attorney. (*Id.,* ¶ 6).

*Claims against Sheriff's Department,*
*DA's Office and Wheatfield Town Court*

Plaintiff's claims against the Sheriff's Department, the DA's Office and the Wheatfield Town Court must be dismissed.

First, plaintiff's § 1983 claims against these three defendants accrued at the earliest on July 10, 1997 when he was arrested, and at the latest either on November 17, 1997, when the charges against him were resolved by means of an ACD (Complaint, Statement of Claim, ¶¶ 3–5; Table of Contents, ¶¶ 1–2), or on March 28, 2000, when a motion plaintiff made in the Town Court was denied. (Table of Contents, ¶ 2). The statute of limitations for an action filed under 42 U.S.C. § 1983 in a federal court sitting in New York is three years. *Owens v. Okure,* 488 U.S. 235, 251, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); *Jewell v. County of Nassau,* 917 F.2d 738, 740 (2d Cir.1990). Therefore, any and all claims against these defendants are time barred.

Second, the claims against the Sheriff's Department, the DA's Office, and the Wheatfield Town Court must also be dismissed because there is no allegation that any of the individual government officials, such as the Town Justice, deputies or assistant prosecutors, were acting pursuant to a policy or custom of the Town of Wheatfield or Niagara County. In the absence of such an allegation, the complaint fails to state a claim for relief and must be dismissed. *See Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Municipalities are not subject to § 1983 liability solely on the basis of a respondeat *superior* theory. *Collins v. City of Harker Heights,* 503 U.S. 115, 121, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); *Monell,* 436 U.S. at 694.

Additionally, to the extent that the plaintiff may have intended to sue the Town Justice individually (Complaint, Defendant's Information), in addition to or instead of the Town Court, the Town Justice would be entitled to absolute judicial immunity. *See Stump v. Sparkman,* 435 U.S. 349, 356–57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (internal quotations and citation omitted). The same would be true with respect to the District Attorney or any Assistant District Attorneys involved in the prosecution of plaintiff. Prosecutors are entitled to absolute immunity from suits brought under § 1983 "arising out of [their] prosecutorial duties that are 'intimately associated with the judicial phase of the criminal process.'" *Doe v. Phillips,* 81 F.3d 1204, 1209 (2d Cir.1996) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)), *cert. denied,* 520 U.S. 1115 (1997). Accordingly, the claims against the Sheriff's Department, the DA's Office, the Wheatfield Town Court and, to the extent he is a defendant herein, the Town Justice, Robert B. Cliffe, are dismissed.

*Claims against County Court, State Supreme Court, Appellate Division, and Court of Appeals*

**\*3** Plaintiff's complaint purports to allege that these courts somehow violated his numerous Sixth Amendment rights. In reality, however, what plaintiff is alleging is that these courts were in error when they denied or dismissed his various requests to overturn the ACD disposition of the charges arising from the July 10, 1997 incident. These claims too must be dismissed.

To the extent the plaintiff names various state courts as defendants and seeks either legal or equitable relief against them under § 1983, they are immune from such suit under the Eleventh Amendment. *Papasan v. Allain,* 478 U.S. 265, 276, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 98–100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). As agencies or arms of the State of New York, the courts are immune from suit under the Eleventh Amendment. *See Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114; *see also Saint–Fleur v. City of New York,* 2000 WL 280328, \*2 (S.D.N.Y., Mar.14, 2000) (collecting cases); *Fields v. Walthers,* No. 94–CV–1659, 1997 WL 204308 at \*2 (N.D.N.Y. April 5, 1997) ("For Eleventh Amendment purposes, governmental entities of the state that are considered 'arms of the state' receive Eleventh Amendment immunity."). Accordingly, plaintiff's claims against the County Court, the State Supreme Court, the Appellate Division, and the Court of Appeals must be dismissed.

*Claims against Samuel Novara*

The complaint names Samuel Novara, plaintiff's defense counsel, as a defendant, and either alleges a § 1983 claim or a state common law legal malpractice claim, or both, against him. In any event, the claim or claims pled against this defendant must be dismissed. First, assuming that plaintiff intended to sue defense counsel under § 1983, such a claim must be dismissed because criminal defense counsel are not "state actors" for purposes of the "state action" requirement of § 1983. *Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981). Second, assuming that plaintiff intended to sue his defense counsel for legal malpractice in relation to the handling and disposition of his criminal matter, this Court declines to exercise supplemental jurisdiction, 28 U.S.C. § 1367, over said claim because all the federal claims

have been dismissed at the initial stage of the litigation. *See Valencia ex rel. Franco v. Lee,* 316 F.3d 299, 305 (2d Cir.2003); 28 U.S.C. § 1367(c)(3); *see also Giordano v. City of New York,* 274 F.3d 740, 754 (2d Cir .2001) (noting that dismissal of pendent state law claims is appropriate where all federal claims have been dismissed and "it appears that the state issues substantially predominate") (internal quotation marks omitted). Accordingly, the complaint is dismissed without prejudice as against defendant Novara.

*CONCLUSION*

Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a). Accordingly, plaintiff's request to proceed *in forma pauperis* is granted and, for the reasons discussed above, the complaint is dismissed with prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), except with respect to the state common law legal malpractice claim against defendant Samuel Novara, which is dismissed without prejudice.

**\*4** The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

*ORDER*

IT HEREBY IS ORDERED, that plaintiff's request to proceed *in forma pauperis* is granted;

FURTHER, that the complaint is dismissed with prejudice, except with respect to the state common law legal malpractice claim against defendant Samuel Novara, which is dismissed without prejudice; and

FURTHER, that leave to appeal to the Court of Appeals as a poor person is denied.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2003 WL 24243989

---

### Footnotes

1    *See* N.Y.Crim. Proc. Law § 170.55. This disposition cannot be obtained without the consent of both parties and the court. *Id.*

2    Shortly after filing the complaint, plaintiff filed what he entitled a "Table of Contents" which outlines the dates of the various court filings and dispositions that are at issue in his complaint. This Court will treat this Table of Contents as a document attached to the complaint and incorporated by reference in the complaint. *Chance v. Armstrong,* 143 F.3d 698, 698 n. 1 (2d Cir.1998) ("the court may consider facts set forth in exhibits attached as part of the complaint as well as those in the formal complaint itself"); *see Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991) ("the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference").

---

End of Document                                         © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Riley v. Cuomo, Not Reported in Fed. Supp. (2018)

Case 3:23-cv-01547-BKS-ML    Document 43    Filed 10/08/25    Page 98 of 115

2018 WL 1832929
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Russell RILEY, Plaintiff,
v.
Andrew CUOMO, in his official capacity
as governor of the State of New York,
New York State Police, Defendant(s).

2:17-cv-01631 (ADS)(AYS)
|
Signed 04/16/2018

**Attorneys and Law Firms**

Christopher Joseph Cassar, 13 East Carver Street, Huntington, NY 11743, By: Christopher J. Cassar, Esq., Of Counsel, Attorney for the Plaintiff.

New York State Office of the Attorney General, Nassau Regional Office, 200 Old Country Road, Suite 240, Mineola, NY 11501, By: Christina H. Bedell, Assistant Attorney General, Counsel for the Defendants.

**MEMORANDUM OF DECISION & ORDER**

ARTHUR D. SPATT, United States District Judge

**\*1** The Plaintiff Russel Riley (the "Plaintiff") brought this federal civil rights action pursuant to 42 U.S.C. § 1983 ("Section 1983") against the Defendants Andrew Cuomo, in his official capacity of the Governor of the State of New York ("Governor Cuomo," the "Governor," or "Cuomo") and the New York State Police (the "NYSP") (collectively, the "Defendants").

Presently before the Court is a motion by the Defendants to dismiss the complaint pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P.") 12(b)(1) and 12(b)(6). For the following reasons, the Defendants' motion is granted in its entirety.

**I. BACKGROUND**

**A. The Relevant Facts**

The following facts are drawn from the Plaintiff's complaint, and for the purposes of the instant motion, are presumed to be true.

The Plaintiff owned and had a valid license for ten firearms. On January 9, 2017, members of the NYSP entered the Plaintiff's home without a warrant and seized ten firearms.

The firearms have not been returned to the Plaintiff, and there has been no hearing regarding the seizure of the firearms.

The Plaintiff makes broad references to the New York Secure Ammunition and Firearms Enforcement Act of 2013 (the "NY SAFE Act"), but does not explicitly state that his firearms were confiscated as a result of that statute.

**B. The Relevant Procedural History**

On March 23, 2017, the Plaintiff filed his complaint. The complaint alleges that the NY SAFE Act is unconstitutional under the Fourth and Fourteenth Amendments to the United States Constitution in that it fails to provide gun owners who have had their firearms seized with a hearing. However, the Plaintiff does not seek a declaratory judgment declaring that the NY SAFE Act is unconstitutional. Furthermore, as stated above, he does not explicitly state that his guns were seized because of that statute; or, if they were, how that statute caused his firearms to be seized.

The complaint alleges that the Plaintiff's Fourth, Fifth, and Fourteenth Amendment rights were violated when the Defendants seized his firearms without a warrant; failed to provide him with a hearing; and illegally obtained statements from him. In those ways, the Defendants allegedly violated Section 1983.

The Plaintiff seeks declaratory relief in the form of an order stating that the Defendants violated his constitutional rights. He asks that the Court order that the firearms be returned to him. Further, he seeks "a judgment ... requiring the Defendants to conduct a prompt hearing following the seizure of the property in all cases at which time the Defendants must demonstrate probable cause for the seizure of the property and that it was necessary that the property remain in the custody of the Defendants." (Compl. Wherefore Clause ¶ 3).

The Plaintiff seeks injunctive and declaratory relief; and a judgment requiring the Defendants to provide notice and a hearing to any future victims of seizures similar to the one experienced by the Plaintiff. The complaint does

Case 3:23-cv-01547-BKS-ML    Document 43    Filed 10/08/25    Page 99 of 115

Riley v. Cuomo, Not Reported in Fed. Supp. (2018)

not explicitly seek damages, but only reasonable attorneys' fees and costs. While the Court notes that the Plaintiff's memorandum in opposition to the motion to dismiss states that "the underlying complaint is not exclusively seeking an award of damages under § 1983," (Pl.'s Mem. in Opp. to Mot. to Dismiss at 4), a plaintiff is not permitted to amend his complaint by virtue of what is said in a memorandum of law, *Uddoh v. United Healthcare*, 254 F. Supp. 3d 424, 429 (E.D.N.Y. 2017) ("A plaintiff, however, is not permitted to interpose new factual allegations or a new legal theory in opposing a motion to dismiss...." (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) ) ). The complaint does not explicitly seek damages, and the Court cannot construe it otherwise.

**\*2** On September 25, 2017, the Defendants filed the instant motion to dismiss the complaint for lack of jurisdiction pursuant to Rule 12(b)(1), and for failure to state a claim pursuant to Rule 12(b)(6).

## II. DISCUSSION

### A. As to the Defendants' Motion to Dismiss Based on Sovereign Immunity

The Defendants have moved for dismissal based on sovereign immunity pursuant to Rule 12(b)(1).

As an initial matter, the Court first observes that within the Second Circuit, the question of whether a motion to dismiss made on sovereign immunity grounds should be reviewed under Rule 12(b)(1) or under Rule 12(b)(6) remains unresolved. *See Carver v. Nassau Cty. Interim Fin. Auth.*, 730 F.3d 150, 156 (2d Cir. 2013) ("[W]hether the claim of sovereign immunity constitutes a true issue of subject matter jurisdiction or is more appropriately viewed as an affirmative defense is an open question in the Supreme Court and the Second Circuit." (citing *Wisc. Dep't of Corr. v. Schacht*, 524 U.S. 381, 391, 118 S. Ct. 2047, 141 L.Ed. 2d 364 (1998) ) ); *see also Garcia v. Paylock*, 13-CV-2868 KAM, 2014 WL 298593, at \*2 n.3 (E.D.N.Y. Jan. 28, 2014) ("It is an open question in the Second Circuit whether the claims of sovereign immunity should be viewed as raising a question of subject matter jurisdiction, and thus be evaluated under \*339 Rule 12(b)(1), or as an affirmative defense analyzed under Rule 12(b)(6).").

This "distinction is significant," because "while [a district court] must accept all factual allegations in a complaint as true when adjudicating a motion to dismiss under FED. R. CIV. P. 12(b)(6), ... in adjudicating a motion to dismiss for lack of subject-matter jurisdiction [pursuant to FED. R. CIV. P. 12(b)(1) ], a district court may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits." *State Employees Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 (2d Cir. 2007) (internal citations omitted). As such, in accordance with the approach taken by other district courts within this Circuit, the Court will apply the stricter standard set under Rule 12(b)(6) while analyzing Defendants' sovereign immunity arguments. *See Tiraco v. New York State Bd. of Elections*, 963 F. Supp. 2d 184, 191 n.6 (E.D.N.Y. 2013) (noting that "[t]his distinction [ ] does not alter the outcome" of the case because "the court [ ] considered only the pleadings and the relevant state and federal law and [drew] all inferences in Plaintiff's favor") (citations omitted); *McMillan v. N.Y. State Bd. of Elections*, No. 10-CV-2502 (JG)(VVP), 2010 WL 4065434, at \*3 (E.D.N.Y. Oct. 15, 2010) (looking "only to the pleadings and to state and federal law" to resolve questions regarding sovereign immunity).

### 1. The Rule 12(b)(6) Standard

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bold Electric, Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free School Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

**\*3** Under the now well-established *Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed. 2d 929 (2007). The Second Circuit has explained that, after *Twombly*, the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second,

Case 3:23-cv-01547-BKS-ML   Document 43   Filed 10/08/25   Page 100 of 115

Riley v. Cuomo, Not Reported in Fed. Supp. (2018)

only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940, 173 L.Ed. 2d 868 (2009) ).

Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and ... determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679.

## B. The Eleventh Amendment

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." *Rowland*, 494 F.3d at 95 (quoting U.S. CONST. AMEND. XI). The Eleventh Amendment bars federal courts from exercising subject matter jurisdiction over claims against states absent their consent to such a suit or an express statutory waiver of immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 90-100, 104 S. Ct. 900, 79 L.Ed. 2d 67 (1984); *see also Huminski v. Corsones*, 386 F.3d 116, 133 (2d Cir. 2004). Although the plaintiff generally bears the burden of proving subject matter jurisdiction, the entity claiming Eleventh Amendment immunity bears the burden to prove such. *See Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 237 (2d Cir. 2006).

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode*, 423 U.S. 362, 370-71, 96 S. Ct. 598, 46 L.Ed. 2d 561 (1976) (quoting 42 U.S.C. § 1983). It is well-settled that states are not "persons" under section 1983 and, therefore, Eleventh Amendment immunity is not abrogated by that statute. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L.Ed. 2d 45 (1989).

### 1. Claims Against State Administrative Agencies

Regardless of the type of relief sought, the Eleventh Amendment bars this Court from assuming jurisdiction over plaintiffs' claims asserted against the State of New York and its agencies. When the state or one of its "arms" is the defendant, sovereign immunity bars federal courts from entertaining lawsuits against them "regardless of the nature of the relief sought." *Pennhurst*, 465 U.S. at 100.

#### a. Application to the Plaintiff's
#### Claims Against the NYSP

**\*4** As the Eleventh Amendment bars all suits against administrative agencies of a state, the Plaintiff's claims against the NYSP cannot be sustained. Defendant New York State Police is a division in the executive department of New York—*see* section 210 of New York's Executive Law—and is therefore immune from all claims, both federal and state. Congress has not overridden states' sovereign immunity respecting constitutional claims brought under 42 U.S.C. § 1983. *Will*, 491 U.S. at 109. And it is well established that "New York State has not waived its sovereign immunity from Section 1983 claims." *Nolan v. Cuomo*, No. 11 CV 5827 (DRH)(AKT), 2013 WL 168674, at \*7 (E.D.N.Y. Jan. 16, 2013) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 39-40 (2d Cir. 1977) ); *see also Mamot v. Bd. of Regents*, 367 Fed.Appx. 191, 192 (2d Cir. 2010) (summary order); *Dube v. State Univ. of New York*, 900 F.2d 587, 594-95 (2d Cir. 1990) (holding that the Eleventh Amendment precludes an action under Section 1983 against SUNY, an integral part of the State of New York). Therefore, the NYSP is entitled to sovereign immunity on the Plaintiff's claims.

Accordingly, the Defendants' motion to dismiss the Plaintiff's claims against the NYSP is granted.

### 2. Claims Against State Officials in Their Official Capacity

A suit for damages against a state official in his or her official capacity "is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993); *see also Will*, 491 U.S. at 71; *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003). However, "the applicability of the Eleventh Amendment bar [to suits against individuals in their official capacities] depends on the form of relief sought." *Lee v.*

*Dep't of Children & Families,* 939 F.Supp.2d 160, 165-66 (D. Conn. 2013). Money damages cannot be recovered from state officers sued in their official capacities. *See e.g., Will,* 491 U.S. at 71 ("[A] suit against a state official in his or her official capacity is not a suit against an official but rather is a suit against the official's office."); *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S. Ct. 1347, 39 L.Ed. 2d 662 (1974) ("[A] suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."); *Goonewardena v. New York,* 475 F. Supp. 2d 310, 329 (S.D.N.Y. 2007) ("[S]overeign immunity also extends to bar claims for monetary damages brought against state officers sued under section 1983 in their official capacities.").

Similarly, "judgments against state officers declaring that they violated federal law in the past" are also not permitted. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy,* 506 U.S. 139, 146, 113 S. Ct. 684, 121 L.Ed. 2d 605 (1993) (citing *Green v. Mansour,* 474 U.S. 64, 73, 106 S. Ct. 423, 88 L.Ed. 2d 371 (1985) ). However, prospective injunctive relief is available against individuals being sued in their official capacities in order to correct an ongoing violation of federal law. *See Edelman,* 415 U.S. at 663; *Ex Parte Young,* 209 U.S. 123, 28 S. Ct. 441, 52 L.Ed. 714 (1908). In this regard, through the doctrine of *Ex Parte Young,* a party may bring "a suit for injunctive [or declaratory] relief challenging the constitutionality of a state official's actions in enforcing state law." *CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs.,* 306 F.3d 87, 98 (2d Cir. 2002) (internal quotation marks and alteration omitted); *see also Arthur v. Nyquist,* 573 F.2d 134, 138 (2d Cir. 1978).

In order to determine whether the *Ex parte Young* exception allows the Plaintiff to bring suit against state officials, this Court must first determine whether the complaint alleges an ongoing violation of federal law and second, whether the Plaintiff seeks relief properly characterized as prospective. *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 645, 122 S. Ct. 1753, 152 L.Ed. 2d 871 (2002). "[T]o successfully avoid the Eleventh Amendment bar, a plaintiff must prove that a defendant's violation of federal law is of an ongoing nature as opposed to a case 'in which federal law has been violated at one time or another over a period of time in the past.' " *Papasan v. Allain,* 478 U.S. 265, 277-78, 106 S. Ct. 2932, 92 L.Ed. 2d 209 (1986) (quotation omitted). The inquiry for determining whether an "ongoing violation" exists is, "does the enforcement of the law amount to a continuous violation of plaintiffs constitutional rights or a single act that

continues to have negative consequences for plaintiffs." *New Jersey Educ. Ass'n v. New Jersey,* No. 11-5024, 2012 WL 715284, at *4 (D.N.J. Mar. 5, 2012).

**\*5** Furthermore, when a plaintiff seeks prospective relief against a state official in their official capacity where the plaintiff alleges that a particular statute is unconstitutional, "the state officer ... 'must have some connection with the enforcement of the act' " that includes "both a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Kelly v. New York State Civil Serv. Comm'n,* No. 14 CV 716 VB, 2015 WL 861744, at *3 (S.D.N.Y. Jan. 26, 2015) (quoting *Ex Parte Young,* 209 U.S. at 157), *aff'd sub nom. Kelly v. New York Civil Serv. Comm'n,* 632 Fed.Appx. 17 (2d Cir. 2016); *see also CSX Transp.,* 306 F.3d at 99 (amenability to suit under Eleventh Amendment requires "both the power and the duty" to take challenged action).

### a. Application to the Plaintiff's Claims Against Governor Cuomo in His Official Capacity

As stated above, the complaint does not explicitly seek damages. However, even if it did, the Plaintiff would be unable to seek that relief against Governor Cuomo in his official capacity. *Ying Jing Gan,* 996 F.2d at 529 ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." (internal citations omitted) ).

As to his requests for declaratory and injunctive relief, the Court finds that the Plaintiff does not explicitly seek prospective relief. Instead, he seeks a declaration that the Defendants violated federal law in the past, and a return of his firearms. Courts have held that neither of these types of relief are prospective. *See Puerto Rico Aqueduct and Sewer,* 506 U.S. at 146 (stating that "judgments against state officers declaring that they violated federal law in the past" are not permitted under the *Ex Parte Young* doctrine); *Dotson v. Griesa,* 398 F.3d 156, 177 n.16 (2d Cir. 2005) (holding that Second Circuit precedent "preclude[s] a federal court from ordering affirmative action by either the state or federal government employees in their official capacities"); *Nat'l R.R. Passenger Corp. v. McDonald,* 978 F. Supp. 2d 215, 233 (S.D.N.Y. 2013) ("[C]ourts in this Circuit have [held] ... that the return of property taken by the state is barred by the

Eleventh Amendment because that constitutes 'retrospective' relief." (collecting cases) ), *aff'd*, 779 F.3d 97 (2d Cir. 2015); *Dean v. Abrams*, No. 94 CIV. 3704 (LAK), 1995 WL 791966, at *2 n.5 (S.D.N.Y. Dec. 26, 1995) ("The only exception to the Eleventh Amendment's protection is for 'prospective injunctive relief,' but Dean's demand for ... the return of her property does not qualify for this exception." (collecting cases) ).

While the Plaintiff does ask for an order declaring that the Defendants must afford any future victims of such seizures a prompt and fair hearing, the Plaintiff has not plead sufficient facts to demonstrate that he has standing to request such relief. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185, 120 S. Ct. 693, 706, 145 L.Ed. 2d 610 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought.")

"In seeking prospective relief like an injunction, a plaintiff must show that he can reasonably expect to encounter the same injury again in the future—otherwise there is no remedial benefit that he can derive from such judicial decree." *MacIssac v. Town of Poughkeepsie*, 770 F. Supp. 2d 587, 593 (S.D.N.Y. 2011) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S. Ct. 1660, 75 L.Ed. 2d 675 (1983) ). A plaintiff cannot seek injunctive relief merely for past injury. *O'Shea*, 414 U.S. at 495-96, 94 S. Ct. 669; *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998). Instead, "the injury alleged must be capable of being redressed through injunctive relief 'at that moment.' " *Robidoux v. Celani*, 987 F.2d 931, 938 (2d Cir. 1993) (quoting *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 51, 111 S. Ct. 1661, 114 L.Ed. 2d 49 (1991) ).

**\*6** Here, the Plaintiff does not allege that his guns will again be seized in the future. Indeed, as stated above, the Plaintiff did not state why his guns were seized. He does not plead sufficient facts to demonstrate standing to seek an order forcing the state to afford any future victims of seizures a prompt and fair hearing because he has not alleged that he will be a victim of such a seizure in the future.

Therefore, the Plaintiff does not seek prospective relief for an ongoing violation of federal law, and cannot avail himself of the *Ex Parte Young* doctrine. Governor Cuomo therefore has sovereign immunity with regard to the Plaintiff's claims.

The Plaintiff contends that he should be permitted to proceed on his theory of supervisory liability until he is able, through discovery, to determine which subordinate officials should

be added to the complaint. This argument is completely unavailing.

First, "[a] defendant's supervisory authority is insufficient in itself to demonstrate liability under § 1983." *LaMagna v. Brown*, 474 Fed.Appx. 788, 789 (2d Cir. 2012) (citing *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) ); *Richardson*, 347 F.3d at 435 ("[M]ere linkage in the prison chain of command is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." (citations and internal quotation marks omitted) ). Instead, "to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (collecting cases). As the Second Circuit has stated, a supervisory defendant's personal involvement can be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [the plaintiff] by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (emphasis omitted) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) ).

Accordingly, "supervisory liability may be imposed when an official has actual or constructive notice of unconstitutional practices and demonstrates 'gross negligence' or 'deliberate indifference' by failing to act." *Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989) (quoting *McCann v. Coughlin*, 698 F.2d 112, 125 (2d Cir. 1983) ). The Plaintiff does not

allege that any of the above factual circumstances are present here.

Second, the Plaintiff does not even allege that the Governor supervises the NYSP. Indeed, the complaint does not contain any allegations that are specific to Governor Cuomo.

Furthermore, as to the Plaintiff's argument that he should be permitted to maintain suit against Governor Cuomo until he has been afforded an opportunity to identify subordinate officials who have personal liability, the Plaintiff does not meet that "exception" to the supervisory liability rule here. The case cited by the Plaintiff for this very proposition held "[p]ermitting plaintiffs to use discovery as a fishing expedition undermines the principle that only portions of a complaint which satisfy a plausibility standard, *i.e.,* more than possible and less than probable, should unlock the doors of discovery." *Dudek v. Nassau Cty. Sheriff's Dep't,* 991 F. Supp. 2d 402, 414 (E.D.N.Y. 2013) (internal citations and quotation marks omitted).

**\*7** The *Dudek* court relied on the fact that the complaint failed to contain a single factual allegation that any of the supervisory defendant's subordinates were personally involved in the action. Here too, the Plaintiff does not allege that Governor Cuomo supervises members of the NYSP, nor does he allege any specific acts by any individual John Doe officers of the NYSP. Nor would the Plaintiff be permitted to avail himself of the exception allowing discovery to go forward where a litigant raises colorable claims against supervisors because that exception only applies to *pro se* litigants. *See Davis v. Kelly,* 160 F.3d 917, 922 (2d Cir. 1998) ("We therefore hold that when a *pro se* plaintiff brings a colorable claim against supervisory personnel, and those supervisory personnel respond with a dispositive motion grounded in the plaintiff's failure to identify the individuals who were personally involved, under circumstances in which the plaintiff would not be expected to have that knowledge, dismissal should not occur without an opportunity for additional discovery."); *Soto v. Brooklyn Corr. Facility,* 80 F.3d 34, 34 (2d Cir. 1996) (holding that where a pro se litigant mistakenly failed to name the individual corrections officers who might be liable, the pro se plaintiff would be afforded opportunity to amend his complaint after discovery); *Satchell v. Dilworth,* 745 F.2d 781, 785 (2d Cir. 1984) (same).

Finally, the Plaintiff is also unable to bring claims against Governor Cuomo based on his allegation that the NY SAFE Act is unconstitutional. The Court notes again that the Plaintiff does not seek an order stating that the NY SAFE Act is unconstitutional. He instead alleges that it is unconstitutional, and seeks an order requiring the Defendants to afford victims of gun seizures fair hearings.

In any event, the Plaintiff has not alleged that the Governor has any duty to enforce the NY SAFE Act. Nor does N.Y. PENAL LAW § 400, the only specific statute cited by the Plaintiff, afford any duty or power to the Governor. To the extent that the Plaintiff relies on the fact that the NY SAFE Act was signed by Governor Cuomo, which the Court notes that he did not allege, "[t]he well-settled doctrine of absolute legislative immunity ... bars actions against legislators or governors ... on the basis of their roles in enacting or signing legislation." *Warden v. Pataki,* 35 F.Supp.2d 354, 358 (S.D.N.Y. 1999), *aff'd sub nom. Chan v. Pataki,* 201 F.3d 430 (2d Cir. 1999). Furthermore, "the vast majority of courts ... have held ... that a state official's duty to execute the laws is not enough by itself to make that official a proper party in a suit challenging a state statute." *Warden,* 35 F. Supp. 2d at 359.

Therefore, the Plaintiff has failed to allege that Governor Cuomo has the power or duty to take action regarding the NY SAFE Act, and the Governor has sovereign immunity over those claims.

Accordingly, the Defendants' motion to dismiss the Plaintiff's claims against Governor Cuomo is granted.

### III. CONCLUSION

For the reasons stated above, the Defendants' motion to dismiss the complaint based on sovereign immunity is granted in its entirety. The Clerk of the Court is respectfully directed to close the case.

It is **SO ORDERED.**

### All Citations

Not Reported in Fed. Supp., 2018 WL 1832929

---

    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 1755201
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Nikolaos XYDOUS, Plaintiff,

v.

The CITY OF UTICA; Sergeant Woodin;
Officer Mowers; Officer Moretti; Officer
Rios; and Lieutenant Howe, Defendants.

6:24-CV-0135 (GTS/MJK)
|
Signed June 25, 2025

**Attorneys and Law Firms**

Gary S. Fish, Gary S. Fish, Esq., New York, NY, for Plaintiff.

David H. Walsh IV, Daniel Cartwright, Foti Henry PLLC, Buffalo, NY, Zachary Oren, City of Utica, Utica, NY, for Defendants City of Utica, Sergeant Woodin, Officer Mowers, Officer Moretti, Officer Rios, Lieutenant Howe.

**DECISION and ORDER**

Glenn T. Suddaby, United States District Judge

**\*1** Currently before the Court, in this civil rights action filed by Nikolaos Xydous ("Plaintiff") against the City of Utica and five of its police officers ("Defendants"), is Defendants' motion to dismiss Plaintiff's Amended Complaint for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and/or for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 19, Attach. 6.) For the reasons set forth below, Defendants' motion is granted.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Claims

Generally, liberally construed, Plaintiff's Amended Complaint asserts three claims of abuse of process against Defendants under the Fourteenth Amendment and 42 U.S.C. § 1983 arising from events that occurred in Utica, New York, between July 1, 2021, and October 2022. (Dkt. No. 12.)

More specifically, Plaintiff's first claim arises from Defendants' alleged refusal, between October 1, 2022, and November of 2022, to investigate four reports by Plaintiff of criminal activity (including trespass, assault, and/or possession of weapons) by approximately 12 people on or near that rental properties that he owned, managed and/or was responsible for at or near 1202-1204 Stark Street in Utica, New York (for which Plaintiff was foreseeably both civilly and criminally liable), and their allegedly instead telling Plaintiff that any further requests by him, or any entry made by him onto the real property in question, would result in him being arrested. (*Id.* at ¶¶ 1-16.)

Plaintiff's second claim arises from Defendants Mowers' and Moretti's alleged act, between approximately July 1, 2021, and approximately July 26, 2021, of preventing the performance of Plaintiff's contract with Zelinski Tree Cutters (to whom Plaintiff's project manager had paid approximately $2,000.00) to remove trees from a rental property that Plaintiff managed at or near 1204 Stark Street in Utica, New York, for the false and pretextual reason that the tree cutters were not using "the right chain saw," when in fact those two Defendants were retaliating against Plaintiff for reporting that Deon William (a tenant of Plaintiff's management company) had been harassing Plaintiff and other tenants. (*Id.* at ¶¶ 16-21.)

Plaintiff's third claim arises from Defendants Mowers' and Moretti's alleged act, between approximately July 1, 2021, and approximately July 26, 2021, of refusing to stop tenant Deon Williams (whom the police department "favored") from, or arrest him for, "push[ing] a camera ... into the face of" Plaintiff (and calling Plaintiff racial epithets) for the pretextual reason that their laptop computer's Report Managing System was not working, when in fact those two Defendants bore personal animus against Plaintiff and threatened him with adverse action if they had to return to his property. (*Id.* at ¶¶ 22-26.)

Familiarity with these claims, and the factual allegations supporting them in Plaintiff's Amended Complaint, is assumed in this Decision and Order, which is intended primarily for review by the parties.

### B. Summary of Parties' Arguments on Defendants' Motion

#### 1. Defendants' Memorandum of Law

**\*2** Generally, in support of their motion to dismiss, Defendants assert the following five arguments:[1] (1) as a threshold matter, this Court does not have subject-matter

jurisdiction over Plaintiff's second and third claims under the *Rooker-Feldman* doctrine, because, based on the documents adduced by Defendants, it is clear that (a) Plaintiff received a state-court judgment against him on November 7, 2022, (b) his second and third claims complain of injuries caused by that state-court judgment (which rejected claims arising from the same events that give rise to his second and third claims), (c) by seeking a favorable adjudication on his second and third claims, he is inviting this Court to review and reject that state-court judgment, and (d) the state-court judgment was rendered before Plaintiff filed his second and third claims; (2) even if the Court did possess subject-matter jurisdiction over Plaintiff's second and third claims, he has failed to state either claim under the doctrine of *res judicata*, because, on November 7, 2022, he received a judgment against him based on claims arising from the same events that give rise to his second and third claims, he has not appealed that judgment, and the time in which to do so has expired; (3) in any event, none of the three claims in Plaintiff's Amended Complaint has stated a viable claim for abuse of process, because (a) none of the three claims allege facts plausibly suggesting that Defendants Mowers and/or Moretti actually initiated any "legal process" against Plaintiff (but only denied him "police services," threatened him with arrest, and/or incorrectly told Plaintiff not to cut down some trees because he did not have the correct chainsaw), (b) none of the three claims allege facts plausibly suggesting that Defendants Mowers and/or Moretti acted with intent to do harm without excuse of justification (but rather allege that fact only conclusorily), and (c) none of the three claims allege facts plausibly suggesting that Defendants Mowers and/or Moretti acted in order to obtain a collateral objective that is outside the legitimate ends of the process (but rather allege that fact only conclusorily or allege the existence of a retaliatory motive, which is insufficient under *Savino v. City of New York*, 331 F.3d 63, 76 [2d Cir. 2003]); (4) in any event, none of the three claims in Plaintiff's Amended Complaint has stated a viable claim for abuse of process under 42 U.S.C. § 1983, because, based on the factual allegations of the Amended Complaint, Defendants are protected from liability as a matter of law by the doctrine of qualified immunity, in that no clearly established law states that *in*action by the police provides a basis for an abuse-of-process claim; and (5) Plaintiff's municipal liability claim against Defendant City of Utica must be dismissed, because (a) as explained above, Plaintiff has failed to allege facts plausibly suggesting any underlying constitutional violation for which a municipality could be liable, and (b) in any event, Plaintiff has failed to allege facts plausibly suggesting the existence of any municipal policy, ordinance, regulation, or

decision that caused an underlying constitutional violation, as required by *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). (*See generally* Dkt. No. 19, Attach. 6 [Defs.' Memo. of Law].)

### 2. Plaintiff's Opposition Memorandum of Law

Generally, in Plaintiff's response to Defendants' motion, he asserts the following five arguments: (1) federal subject-matter jurisdiction exists because the Court possesses such jurisdiction over Plaintiff's first claim, and therefore it also possesses jurisdiction over his second and third claims (each of which is "incorporated" by first claim); (2) the doctrine of *res judicata* does not apply because (a) the state-court dismissal was not "on the merits" but resulted from the fact that "a 50-h hearing of claimant Nikolaos Xydous was not held," (b) the state-court case did not involve a municipal-liability claim (under *Monell*), and (c) the state-court case was not against Defendants Woodin, Rios and Howe; (3) all of the three claims in Plaintiff's Amended Complaint have stated a viable claim for abuse of process, because (a) they have each alleged the elements of such a claim with sufficient specificity and concreteness for purposes of *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), (b) in support of his first claim, he has alleged a deliberate shutting down of the police department Report Managing System ("RMS"), (c) in support of his second claim, he has alleged Defendants Mowers and Moretti's interference with Plaintiff's "intellectual property" (specifically, his company contract with Zelinski Tree Cutters), and (d) in support of his third claim, he has alleged a "Nixonian fabrication and/or loss of evidence" (specifically video footage of the criminal activity reported by Plaintiff); (4) the actions taken by the police officers support a *Monell* claim against Defendant City of Utica, because the alleged actions of Defendants Mowers and Moretti were "consonant with deliberate municipality driven action"; and (5) finally, the affidavit of defense counsel (Dkt. No. 19, Attach. 1) and its four exhibits should be "entirely disregarded" as "false" and "defective," and Plaintiff should be provided an additional 20 days in which to file a Second Amended Complaint. (*See generally* Dkt. No. 21 [Plf.'s Opp'n Memo. of Law].)

### 3. Defendants' Reply Memorandum of Law

Generally in their reply, Defendants assert the following three arguments: (1) as a threshold matter, Plaintiff's second and third claims must be dismissed based on the *Rooker-Feldman* doctrine and the doctrine of qualified immunity, because Plaintiff has failed to effectively respond to Defendants'

arguments regarding those doctrines, and has thus lightened Defendants' burden on those arguments to one of showing only facial merit, which they have met; (2) in any event, Plaintiff's second and third claims must be dismissed based on the doctrine of *res judicata*, because Defendants Woodin, Rios and Howe in this action were privies of the City of Utica in the state-court action during the alleged incidents; and (3) in any event, all three of Plaintiff's claims must be dismissed, because he is suing Defendants due to their alleged failure to act rather than alleged actual affirmative action. (*See generally* Dkt. No. 24 [Defs.' Reply Memo. of Law].)

## II. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing Motions to Dismiss for Lack of Subject-Matter Jurisdiction

**\*3**  It is a fundamental precept that federal courts are courts of limited jurisdiction. *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Generally, a claim may be properly dismissed for lack of subject-matter jurisdiction where a district court lacks constitutional or statutory power to adjudicate it. *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). A district court may look to evidence outside of the pleadings when resolving a motion to dismiss for lack of subject-matter jurisdiction. *Makarova*, 201 F.3d at 113. The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]). When a court evaluates a motion to dismiss for lack of subject-matter jurisdiction, all ambiguities must be resolved and inferences drawn in favor of the plaintiff. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Makarova*, 201 F.3d at 113).

Under the *Rooker-Feldman* doctrine,[2] federal courts may "lack [subject-matter] jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany Cnty. Bd. of Electors*, 422 F.3d 77, 84 (2d Cir. 2005). A claim is barred under the *Rooker-Feldman* doctrine if the following four requirements are met: (1) the federal court plaintiff lost in state court; (2) the federal court plaintiff complains of injuries caused by a state court judgment; (3) the federal court plaintiff invites the federal court to review and reject that state court judgment; and (4) the state court judgment was rendered before the commencement of proceedings in the federal court. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005); *Hoblock*, 422 F.3d at 85.

Such a dismissal must be without prejudice because the *Rooker-Feldman* doctrine deprives the Court of the subject-matter jurisdiction necessary to render a ruling on the merits. *See Charles v. Levitt*, 716 F. App'x 18, 22 (2d Cir. 2017) ("[T]he *Rooker-Feldman* doctrine implicates federal courts' subject matter jurisdiction, rather than the substantive merits of a case.... [W]here a court lacks subject matter jurisdiction, it also lacks the power to dismiss with prejudice.") (internal citation and quotation marks omitted); *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014) ("The *Rooker-Feldman* doctrine pertains not to the validity of the suit but to the federal court's subject matter jurisdiction to hear it."); *Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 124 (2d Cir. 1999) ("In sum, we hold that, because the district court lacked subject matter jurisdiction, it did not have the power to dismiss the complaint with prejudice.").

### B. Legal Standard Governing Motions to Dismiss for Failure to State Claim

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

**\*4**  On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp.2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what

the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212, n.17 (citing Supreme Court cases) (emphasis added). [3]

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp.2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak*, 629 F. Supp.2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-52, 173 L.Ed.2d 868 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id.* at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "[D]etermining

whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955.

**\*5** Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case. [4]

### C. Legal Standard Governing Plaintiff's Claim of Abuse of Process

**\*6** The elements of a claim under 42 U.S.C. § 1983 for malicious abuse of process are provided by state law. *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994). Generally, in New York, "[a]buse of process has three essential elements: (1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a

collateral objective." *Cutiano v. Suozzi*, 63 N.Y.2d 113, 480 N.Y.S.2d 466, 468, 469 N.E.2d 1324 (N.Y. 1984). More specifically, "[t]o prove abuse of process, plaintiff must show [the following three elements]: (1) regularly issued process compelling the performance or forbearance of some prescribed act, (2) the person activating the process must have been motivated to do harm without economic or social excuse or justification, and (3) the person activating the process must be seeking some collateral advantage or corresponding detriment to the plaintiff which is outside the legitimate ends of process." *Bernard v. United States*, 25 F.3d 98, 104 (2d Cir. 1994) (citing *Hornstein v. Wolf*, 109 A.D.2d 129, 491 N.Y.S.2d 183, 187 [N.Y. App. Div., 2d Dep't 1985], *aff'd*, 67 N.Y.2d 721, 499 N.Y.S.2d 938, 490 N.E.2d 857 [N.Y. 1986]); *see also Bd. of Ed. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Teachers Ass'n, Inc., Local 1889 AFT AFL-CIO*, 38 N.Y.2d 397, 380 N.Y.S.2d 635, 642, 343 N.E.2d 278 (N.Y. 1975) ("Despite the paucity of New York authority, three essential elements of the tort of abuse of process can be distilled from the preceding history and case law. First, there must be regularly issued process, civil or criminal, compelling the performance or forbearance of some prescribed act. Next, the person activating the process must be moved by a purpose to do harm without that which has been traditionally described as economic or social excuse or justification ... Lastly, defendant must be seeking some collateral advantage or corresponding detriment to the plaintiff which is outside the legitimate ends of the process.") (citations omitted).

With regard to the first element, the "process" in question must be "initiated ... against [the] plaintiff." 14 *N.Y. Prac., New York Law of Torts* § 1:88: "Abuse of process—Use of regularly issued process" (Aug. 2023) (citing, *inter alia, Williams*, 23 N.Y.2d at 596, 298 N.Y.S.2d 473, 246 N.E.2d 333 ["Process is a direction or demand *that the person to whom it is directed* shall perform or refrain from the doing of some prescribed act."] [emphasis added]). Moreover, the "process" must be "issued by or filed in a court ...." *Id.* (citing *Glaser v. Kaplan*, 5 A.D.2d 829, 170 N.Y.S.2d 522, 525 [N.Y. App. Div., 2d Dep't 1958] ["The first cause of action ... is not sufficient as one for abuse of process since the notice of lien and sale served and published by appellants was not process issued by or filed in a court."]).

For example, a refusal to arrest a third-party at a plaintiff's request is not considered "process" on which an abuse-of-process claim may be based. *See Hogan v. County of Lewis*, 11-CV-0754, 2015 WL 1400496, at *19 (N.D.N.Y. March 26,

2015) (Kahn, J.) ("Even if it were true that Croneiser and Lehman unlawfully refused to arrest Plaintiffs' neighbors, such a finding would not demonstrate that legal process was abused as against Mr. Hogan ...."). [5] Similarly, a failure to investigate something or someone at a plaintiff's request is also not considered such a "process." *See Gibbs v. City of New York*, 213 N.Y.S.3d 705, at *2, 83 Misc.3d 1250A (N.Y. Sup. Ct., N.Y. Cnty. 2024) (granting the defendants' motion to dismiss "Plaintiff's cause of action for abuse of process ... because he does not allege any cognizable fact to support ... [that] abuse of process claim," only that Defendants, inter alia, "failed to investigate or evaluate evidence") (internal quotation marks omitted); *Nabatkhorian v. Cnty. of Nassau*, 12-CV-1118, 2013 WL 1233247, at *7 (E.D.N.Y. March 27, 2013) ("[T]he Complaint states that the abuse of process was caused by the County Defendants' collective failure to adequately investigate the allegedly false charges made against him.... Accordingly, the Court finds that Plaintiff has failed to state a claim for abuse of process against Detectives Moran and Faltings, and those claims are hereby DISMISSED."); *Cabble v. City of New York*, 04-CV-9413, 2009 WL 890098, at *4 (S.D.N.Y. Mar. 30, 2009) ("In his Amended Complaint, Plaintiff alleges that the abuse of process was caused by the City's continued refusal to adequately investigate the allegedly false charges made against him by his accusers.... Notably, Plaintiff does not allege that Defendant engaged in the legal process to compel performance or forbearance of some act."). [6]

**\*7** With regard to the third element, "[t]he gist of the action for abuse of process lies in the improper use of process *after it is issued*" (not simply the malicious causing of process to issue). *Dean v. Kochendorfer*, 237 N.Y. 384, 390, 143 N.E. 229 (N.Y. 1924) (emphasis added), *accord, Hauser v. Bartow*, 273 N.Y. 370, 373, 7 N.E.2d 268 (N.Y. 1937), *Williams v. Williams*, 23 N.Y.2d 592, 596, 298 N.Y.S.2d 473, 246 N.E.2d 333 (N.Y. 1969); *see also Curiano*, 480 N.Y.S.2d at 468, 469 N.E.2d 1324 ("[P]laintiffs have not alleged the gist of the action for abuse of process, which is the improper use of process after it is issued.") (internal quotation marks omitted).

Finally, with regard to both the first and third elements, a claim for abuse of process requires "unlawful interference" with the plaintiff's "person or property." *See Curiano*, 480 N.Y.S.2d at 468, 469 N.E.2d 1324 ("Relevant on this appeal are the first and last of these elements.... [T]he process used must involve an unlawful interference with one's person or property.") (internal citations omitted); *Julian J. Studley, Inc. v. Lefrak*, 41 N.Y.2d 881, 393 N.Y.S.2d 980, 982, 362

N.E.2d 611 (N.Y. 1977) ("Since here there was no unlawful interference with Studley's person or property pursuant to regularly issued process, a cause of action for its abuse does not lie."); *Williams v. Williams*, 23 N.Y.2d 592, 298 N.Y.S.2d 473, 477, 246 N.E.2d 333 (N.Y. 1969) ("It follows that there must be an unlawful interference with one's person or property under color of process in order that action for abuse of process may lie.").

Such an unlawful interference with person or property must be the type that is associated with, or occurs through, the use of a provisional remedy (such as an arrest, injunction, attachment, receivership, or notice of pendency). *See Tenore v. Kantrowitz, Goldhamer & Graifman, P.C.*, 76 A.D.3d 556, 907 N.Y.S.2d 255, 257 (N.Y. App. Div., 2d Dep't 2010) (dismissing the defendant's counterclaim for abuse of process because, *inter alia*, "the defendant did not allege that the plaintiff interfered with the defendant's property rights after the issuance of process by resorting to a provisional remedy"); *Niagara Mohawk Power Corp. v. Testone*, 272 A.D.2d 910, 708 N.Y.S.2d 527, 531 (N.Y. App. Div., 4th Dep't 2000) ("The proposed counterclaims fail to allege interference with Testone's person or property through the use of a provisional remedy, a necessary element of [a] cause[ ] of action for ... abuse of process ....") (citation omitted); *Otiniano v. Magier*, 181 A.D.2d 438, 580 N.Y.S.2d 759, 760 (N.Y. App. Div., 1st Dep't 1992) ("The abuse of process claim fails because, *inter alia*, plaintiff was not subjected to the wrongful use of a provisional remedy [such as attachment, arrest or injunction].); *Sokol v. Sofokles*, 136 A.D.2d 535, 523 N.Y.S.2d 155, 157 (N.Y. App. Div., 2d Dep't 1988) ("[T]he appellant can state no cause of action to recover damages for abuse of process as he was not subject to the wrongful use of a provisional remedy."); *Bio-Tech. Gen. Corp.*, 886 F. Supp. at 382-83 ("To have a legally sufficient claim for abuse of process ..., there must be the type of interference with property that is associated with the issuance of a provisional remedy...."); *Ferran v. Town of Grafton*, 979 F. Supp. 944, 947 (N.D.N.Y. 1997) (Scullin, J.) ("[T]he Court finds that Plaintiffs have failed under New York law to establish ... their malicious abuse of process claim as to any of the Defendants.... [T]here is absolutely no evidence that Plaintiffs' persons or property were interfered with through the issuance of a provisional remedy such as attachment or arrest.").

**\*8** For example, such interference may occur through the closing down of the plaintiff's business. *See* 86 *N.Y. Jur. 2d Process and Papers* § 165, "Unlawful interference with

plaintiff's person or property as element of actionable abuse of process" (2d ed. 2025) ("Interference can be established by a showing, for example, that ... the person's business was closed down.") (citing *Tender Trap, Inc. v. Town of Huntington*, 100 Misc.2d 108, 418 N.Y.S.2d 537, 541 [N.Y. Sup. Ct., Suffolk Cnty. 1979] ["There was no arrest in this case, no closing down of the operation, or other interference with property [of the bar and grill corporation or its president], and consequently, the cause of action for abuse of process is dismissed."].).

However, such interference may not occur through merely causing the plaintiff to lose business, lose the ability to enter into a third-party contract, or incur litigation expenses. *See Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 886 F. Supp. 377, 382-83 (S.D.N.Y. 1995) ("Plaintiff argues that its $2 million in attorney's fees and its loss of the ability to enter into third party contracts is sufficient to fulfill this requirement [of showing an interference with property]. However, the clear weight of case law is to the contrary."), *aff'd*, 267 F.3d 1325 (Fed. Cir. 2001); *Unitrode Corp. v. Dynamics Corp. of Am.*, 79-CV-0990, 1980 U.S. Dist. LEXIS 11503, at \*4 (S.D.N.Y. May 21, 1980) ("Nor, it has been stated, does 'interference' which results in a loss of business, injury to reputation, or expense arising from the litigation, constitute the type of interference with person or property necessary to sustain an abuse of process claim."), *accord*, *Ann-Margret v. High Soc. Magazine, Inc.*, 498 F. Supp. 401, 407 (S.D.N.Y.1980); *The Savage is Loose Co. v. United Artists Theatre Circuit, Inc.*, 413 F. Supp. 555, 562 (S.D.N.Y.1976) ("The fact that [the defendant] has been unable to repeat its direct deal distribution plan [with a third-party producer] may be attributed to nothing more than the uniqueness of this type of financial arrangement in the movie industry. The other events cited by [the defendant in support of its counter-claim of abuse of process] as interfering with its property are a concomitant of any lawsuit and do not support a cause of action for abuse of process."). [7]

### III. ANALYSIS

#### A. Whether Plaintiff's Second and Third Claims Must Be Dismissed Without Prejudice for Lack of Subject-Matter Jurisdiction Pursuant to the *Rooker-Feldman* Doctrine

After carefully considering the matter, the Court answers this question in the negative for the following reasons.

As a threshold matter, the Court observes that it is tempted to agree with Defendants that Plaintiff has effectively conceded their *Rooker-Feldman* argument by not adequately opposing it in his opposition memorandum of law. Generally, in this District, when a non-movant fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument, the movant need only show that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(a)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & nn.2, 3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

**\*9** Here, Defendants spent approximately two full pages of their memorandum of law-in-chief asserting arguments regarding the *Rooker-Feldman* doctrine (including an application of the doctrine's four requirements to the facts of this case). (Dkt. No. 19, Attach. 6, at 23-25 [pages "20" through "22" of Defs.' Memo. of Law].) In response, Plaintiff argued that "Plaintiff incorporates herein, I [sic] above analysis, in support of the argument that federal subject matter jurisdiction exists herein." (Dkt. No. at 4.) However, Plaintiff's above-cited "analysis" was merely that "federal subject matter jurisdiction exists in the [1 st count of plaintiff [sic] first amended complaint as of right, a fortiori, also applies to both the 2 nd and 3 rd counts, which are incorporated therein, by the 1 st count." (*Id*. at 2 [capitalization removed].)

Nowhere in his opposition memorandum of law does Plaintiff even attempt to rebut Defendants' argument that each of the four requirements of the doctrine apply to Plaintiff's second and third claims. Moreover, Plaintiff cites no authority for the point of law that he may save from dismissal two federal claims that are essentially precluded by a prior state court judgment simply by incorporating into those claims factual allegations giving rise to a third claim that is not so precluded. [8]

In any event, even if the Court were to subject Defendants' *Rooker-Feldman* argument to the less-rigorous scrutiny appropriate for an uncontested argument, the Court would have trouble finding that the argument survives that scrutiny. As explained above in Part II.A. of this Decision and Order, a claim is barred under the *Rooker-Feldman* doctrine if the following four requirements are met: (1) the federal court plaintiff lost in state court; (2) the federal court plaintiff complains of injuries caused by a state court judgment; (3) the federal court plaintiff invites the federal court to review and reject that state court judgment; and (4) the state court judgment was rendered before the commencement of proceedings in the federal court.

Certainly, before filing this action, Plaintiff lost in state court. However, Plaintiff's Amended Complaint in this action does not expressly complain of injuries caused by his prior state-court judgment, nor does it even expressly reference that judgment. (*See generally* Dkt. No. 12.) [9] Moreover, it is difficult for the Court to conclude that the second and third claims in Plaintiff's Amended Complaint even *implicitly* complain of injuries caused by his prior state-court judgment. Rather, Plaintiff's second and third claims (which are for abuse of process and are asserted against the City of Utica and five of its police officers, specifically, Sergeant Woodin, Officer Mowers, Officer Moretti, Officer Rios, and Lieutenant Howe) arise mainly from Officers Mowers' and Moretti's alleged acts, between approximately July 1, 2021, and approximately July 26, 2021, of preventing the performance of Plaintiff's contract with Zelinski Tree Cutters, refusing to stop Deon Williams from pushing a camera into Plaintiff's face, and threatening to retaliate against Plaintiff for again complaining to the police. (Dkt. No. 12, at ¶¶ 16-26.) Meanwhile, the six claims in Plaintiff's state-court complaint (which are for slander, intentional interference with a contractual relationship, slander per se, and three claims of intention infliction of severe emotional distress, and are asserted against the City of Utica and three of its police officers, specifically Officer Morrows, Officer Moretti and John Doe) arise from Officers Mowers' and Moretti's alleged acts of intentionally wrongfully accusing Plaintiff, on or about July 6, 2021, of harassing his tenants, and intentionally wrongfully threatening to take away Plaintiff's properties, thereby causing him to subsequently lose business opportunities and tenancy rent proceeds. (Dkt. No. 19, Attach. 4 [attaching *Xydous v. City of Utica, et al.*, Civil Index Number EFCA2022-001257, Amended Complaint (N.Y. Sup. Ct., Oneida Cnty. filed Sept. 20, 2022)].)

**\*10**  For all of these reasons, the Court is unable to find that the *Rooker-Feldman* doctrine deprives the Court of subject-matter jurisdiction over Plaintiff's second and third claims.

Before proceeding to the remaining arguments presented by Defendants, the Court hastens to add that, in rendering its above-stated finding, the Court in no way accepts Plaintiff's argument that the four exhibits attached to defense counsel's affidavit should be disregarded as "false" and "defective." (Dkt. No. 21, at 2.) Plaintiff does not cite the rule or statute on which he bases this request, as required by Local Rule 7.1(b)(1) of the Court's Local Rules of Practice. (*See generally* Dkt. No. 21.) To the extent that he relies on Fed. R. Civ. P. 12(f), that rule does not apply, because an affidavit is not a "pleading." Moreover, to the extent that he argues that defense counsel's affidavit is "false" or "defective" not because the exhibits attached thereto are not true and accurate copies of what they are purported to be but because the exhibits do not trigger the application of either the *Rooker-Feldman* doctrine or the doctrine of *res judicata*. However, the inapplicability of those doctrines would not render the affidavit "false" or "defective." – especially given the factual (and not argumentative) nature of defense counsel's representations about the exhibits. (Dkt. No. 19, Attach. 1, at 2-3.) Simply stated, a party cannot strike an opponent's affidavit merely by impugning the affiant's honesty. *Cf. Island Software and Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005) ("Broad, conclusory attacks on the credibility of a witness will not, by themselves, present questions of material fact."); *McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 280 (2d Cir. 1999) (explaining that a plaintiff does not create a genuine issue of fact merely by "impugning [a witness'] honesty").

### B. Whether Plaintiff's First Claim – and His Second and Third Claims if They Have Not Been Dismissed for Lack of Subject-Matter Jurisdiction – Must Be Dismissed with Prejudice Because of the Numerous Pleading Defects Identified by Defendants

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' memoranda of law. *See, supra*, Parts I.B.1 and I.B.3 of this Decision and Order. To those reasons, the Court adds the following analysis.

As an initial matter, the Court does not rely on the doctrine of *res judicata* in rendering its above-stated finding with regard to Plaintiff's second and third claims. [10]  For the sake

of brevity, the Court will not linger on its prior finding that Plaintiff's second and third claims in this action arose out of events that are somewhat different (if not broader in scope) than the events giving rise to his six claims in his state court action. *See, supra*, Part III.A. of this Decision and Order (comparing the factual allegations of both pleadings). [11]  More important is that the Court is inclined to agree with Plaintiff that his state-court case "was dismissed not on the merits ... but because a 50-h hearing of claimant Nikolaos Xydous was not held ...." (Dkt. No. 21, at 2 [citing page 4 of a decision by N.Y. Supreme Court Justice David A. Murad], which is attached at Dkt. No. 19, Attach. 5.) Generally, a dismissal under N.Y. Gen. Mun. L. § 50-h is not one that is treated as "on the merits" for purposes of the doctrine of *res judicata. See Wilson v. New York City Housing Auth.*, 15 A.D.3d 572, 791 N.Y.S.2d 567,568 (N.Y. App. Div., 2d Dep't 2005) ("On a prior appeal in this case ..., this court dismissed the plaintiffs' original complaint based on their failure to comply with a condition precedent to the commencement of an action against the defendant (see General Municipal Law § 50–h). Such an order would not ordinarily bar the commencement of a second action after the plaintiffs' omission has been cured .... As a general rule, where a dismissal does not involve a determination on the merits, the doctrine of res judicata does not apply ....") (internal citations and quotation marks omitted); *DeRonda v. Greater Amsterdam Sch. Dist.*, 91 A.D.2d 1088, 458 N.Y.S.2d 310, 311 (N.Y. App. Div., 3d Dep't 1983) ("Clearly there, Special Term's original dismissal of the infant's cause of action was not on the merits of the claim, but only for the failure to comply with the condition precedent of section 50–h."). [12]

**\*11**  In any event, the Court *does* accept and adopt Defendants' remaining arguments. More specifically, for the reasons stated above in Part II.C. of this Decision and Order, the Court finds that Plaintiff's first claim is defective, because (in addition to the effect of the doctrine of qualified immunity and the lack of showing of municipal liability) refusing to arrest a third-party based on a plaintiff's complaint is not a legal process *against* the plaintiff (e.g., compelling the plaintiff to perform or forbear some prescribed act) that is *regularly issued by or filed in a court*, such that the process is capable of being abused, regardless of the reason (whether pretextual in nature or not). *See Hogan*, 2015 WL 1400496, at \*19 ("Even if it were true that Croneiser and Lehman unlawfully refused to arrest Plaintiffs' neighbors, such a finding would not demonstrate that legal process was abused as against Mr. Hogan ...."); *cf. Town of Castle Rock*, 545

U.S. at 768, 125 S.Ct. 2796 ("[T]he benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations. This result reflects our continuing reluctance to treat the Fourteenth Amendment as 'a font of tort law.' "); *DeShaney*, 489 U.S. at 195, 109 S.Ct. 998 ("[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors."); *Pitchell*, 13 F.3d at 548-549 ("[A] State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."); *Sandage*, 548 F.3d at 597 ("No one has a federal constitutional right to have another person jailed.").

Moreover, for the reasons stated above in Part II.C of this Decision and Order, the Court finds that Plaintiff's second claim is defective, because (again, in addition to the effect of the doctrine of qualified immunity and the lack of showing of municipal liability) a claim for abuse of process requires "unlawful interference" with the plaintiff's "person or property," which interference must be the type that is associated with, or occurs through, the use of a provisional remedy (such as an arrest, injunction, attachment, receivership, or notice of pendency); as a result, such interference may not occur through merely causing the plaintiff to lose the ability to enter into a third-party contract (again, regardless of the reason). *See Bio-Tech. Gen. Corp.*, 886 F. Supp. at 382-83 ("Plaintiff argues that ... its loss of the ability to enter into third party contracts is sufficient to fulfill this requirement [of showing an interference with property]. However, the clear weight of case law is to the contrary."), *aff'd*, 267 F.3d 1325 (Fed. Cir. 2001); *The Savage is Loose Co.*, 413 F. Supp. at 562 ("The fact that [the defendant] has been unable to repeat its direct deal distribution plan [with a third-party producer] may be attributed to nothing more than the uniqueness of this type of financial arrangement in the movie industry. The other events cited by [the defendant in support of its counter-claim of abuse of process] as interfering with its property are a concomitant of any lawsuit and do not support a cause of action for abuse of process.").

Finally, for the reasons stated above in Part II.C of this Decision and Order, the Court finds that Plaintiff's third claim is defective, because (again, in addition to the effect of the doctrine of qualified immunity and the lack of showing of municipal liability) refusing to investigate a plaintiff's reports of criminal activity is not a legal process that is *regularly issued by or filed in a court*, such that the process is capable of being abused, regardless of the reason (whether pretextual in nature or not). *See Gibbs*, 213 N.Y.S.3d 705 at *2, 83 Misc.3d 1250(A) (granting the defendants' motion to dismiss "Plaintiff's cause of action for abuse of process ... because he does not allege any cognizable fact to support ... [that] abuse of process claim," only that Defendants, inter alia, "failed to investigate or evaluate evidence") (internal quotation marks omitted); *Nabatkhorian*, 2013 WL 1233247, at *7 ("[T]he Complaint states that the abuse of process was caused by the County Defendants' collective failure to adequately investigate the allegedly false charges made against him.... Accordingly, the Court finds that Plaintiff has failed to state a claim for abuse of process against Detectives Moran and Faltings, and those claims are hereby DISMISSED."); *Cabble*, 2009 WL 890098, at *4 ("In his Amended Complaint, Plaintiff alleges that the abuse of process was caused by the City's continued refusal to adequately investigate the allegedly false charges made against him by his accusers.... Notably, Plaintiff does not allege that Defendant engaged in the legal process to compel performance or forbearance of some act.").

**\*12** Similarly, although an arrest is the sort of provisional remedy whose use may constitute an unlawful interference with the plaintiff's person or property, *threatening* to arrest the plaintiff for an offense committed in the officer's presence (e.g., falsely reporting an incident or harassing a tenant) is not a legal process that is capable of being abused, because such a *warrantless* arrest – much less a mere *threat* to effect a warrantless arrest – is not a legal process that is *regularly issued by or filed in a court* (unlike, for example, an arrest *warrant* issued by a judge, or the application for such a warrant which is filed in a court). *See, e.g., Remley v. New York,* 174 Misc.2d 523, 665 N.Y.S.2d 1005, 1008 (N.Y. Ct. Cl. 1997) (finding a claim for abuse of process to be without merit where it was based on, in part, the plaintiff's arrest without a warrant), *accord, Schanbarger v. Kellogg,* 43 A.D.2d 362, 352 N.Y.S.2d 50, 53 (N.Y. App. Div., 3d Dep't 1974); *Sforza v. City of New York,* 07-CV-6122, 2009 WL 857496, at *17 (S.D.N.Y. March 31, 2009) ("Sforza's abuse-of-process claim fails on multiple grounds. Her opposition to the City's motion does not attempt to address the point that her claim, based on a warrantless arrest, does not involve legal process."); *cf. Singer v. Fulton Cnty. Sheriff,* 63 F.3d 110, 117 (2d Cir. 1995) ("In this case, Singer's arrest cannot serve as the predicate deprivation of liberty because it occurred prior to his arraignment and without a warrant, and therefore was not pursuant to legal process.") (quotation marks omitted). [13]

For all of these reasons, Plaintiff's three claims are dismissed with prejudice.

#### C. Whether Plaintiff Should Be Given Leave to File a Second Amended Complaint

After carefully considering the matter, the Court answers this question in the negative.

For the sake of brevity, the Court will not linger on the fact that Plaintiff has already availed himself of the opportunity to state such a claim in an Amended Complaint yet has failed to do so. *See Dyson v. N.Y. Health Care, Inc.*, 353 F. App'x 502, 503-04 (2d Cir. 2009) ("[T]he district court did not abuse its discretion by dismissing Dyson's third amended complaint with prejudice.... [T]he district court afforded Dyson three opportunities to file an amended complaint so as to comply with Rule 8(a)(2), and, despite these, she did not plead any facts sufficient to show that she was plausibly entitled to any relief."); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim [i.e., despite having been given leave to replead its claim], a complaint should be dismissed with prejudice.").

More important is that the fact that defects in Plaintiff's claims are so substantive (and not merely formal) that amendment would not appear likely to cure the pleading defects. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.1993) ("Where it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend."), *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted); *see also Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (finding that denial was not abuse of discretion where amendment would be futile); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.") (citation omitted); *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir.1990) ("[W]here ... there is no merit in the proposed amendments, leave to amend should be denied").

**\*13 ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss Plaintiff's Amended Complaint (Dkt. No. 19) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 12) is **DISMISSED with prejudice**.

#### All Citations

Slip Copy, 2025 WL 1755201

---

### Footnotes

1 The Court has rearranged Defendants' five arguments so as to present the argument based on a lack of subject-matter jurisdiction before the arguments based on a failure to state a claim.

2 *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1982).

3 *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (Munson, J.); *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (McAvoy, C.J.).

4 *See Fed. R. Civ. P. 10(c)* ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 647 F.3d 419, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference

in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.... Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint.... However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

5    *Cf. Town of Castle Rock v. Gonzales,* 545 U.S. 748, 768, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005) ("[T]he benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations. This result reflects our continuing reluctance to treat the Fourteenth Amendment as 'a font of tort law.' "); *DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) ("[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors."); *Pitchell v. Callan*, 13 F.3d 545, 548-549 (2d Cir. 1994) ("[A] State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."); *Sandage v. Bd. of Com'rs of Vanderburgh Cnty.*, 548 F.3d 595, 597 (7th Cir. 2008) ("No one has a federal constitutional right to have another person jailed.").

6    *See also Spector v. Bd. of Tr. of Comm.-Tech. Colleges*, 06-CV-0129, 2007 WL 4800726, at *13 (D. Conn. Dec. 27, 2007) ("Neither a failure to investigate nor surveillance constitutes a 'legal process' for the purposes of an abuse of criminal process claim.") (albeit presumably applying Connecticut law).

7    This is so even if the intent of the loss of business was to force the plaintiff's business to close. *See Korova Milk Bar of White Plains, Inc. v. PRE Props., LLC*, 11-CV-3327, 2013 WL 417406, at *16 (S.D.N.Y. Feb. 4, 2013) ("Plaintiff does not allege that Defendants interfered with its property under color of process, other than stating that Defendants intended to cause economic injury to Korova and ultimately force the business to close. Accordingly, Defendants' motion for judgment on the pleadings for the abuse of process claim is GRANTED.").

8    Of course, regardless of whether the second and third claims are "incorporated" by the first claim (or vice versa), the second and third claims arise from alleged events distinct from the alleged events giving rise to the first claim. (*Compare* Dkt. No. 12, at ¶¶ 1-16 [asserting first claim based on alleged events regarding Plaintiff's four reports of criminal activity between approximately October 1, 2022, and November 2022] *with* Dkt. No. 12, at ¶¶ 16-26 [asserting second claim based on alleged events regarding Zelinski Tree Cutters occurring between approximately July 1, 2021, and approximately July 26, 2021, and third claim based on alleged event of Deon Williams pushing a camera into Plaintiff's face between approximately July 1, 2021, and approximately July 26, 2021].)

9    *Cf. Sowell v. Southbury-Middlebury Youth and Fam. Servs., Inc.*, 18-CV-1652, 2019 WL 3552405, at *5 (D. Conn. Aug. 5, 2019) ("To the extent that these two counts explicitly reference the Connecticut Supreme Court's decision in *Mendillo* and seek on that basis a ruling that would invalidate the Connecticut Supreme Court's prior application of Rule 72-1(b) and its stare decisis doctrine, Counts Nine and Ten are similarly barred by the *Rooker-Feldman* doctrine. On the other hand, to the extent that these causes of action seek more generally to challenge the constitutional validity of Rule 72-1(b) and stare decisis apart from how these rules were applied in the prior state court proceedings in *Sowell* and *Mendillo*, then I conclude that this aspect of Counts Nine and Ten falls outside the scope of the *Rooker-Feldman* doctrine.").

10   The Court notes that, in rendering this finding, it does not rely on Plaintiff's arguments that the doctrine of *res judicata* does not apply because (1) the state-court case did not involve a municipal-liability claim (under *Monell*), and (2) the state-court claims were not asserted against Defendants Woodin, Rios and Howe: the Court rejects both arguments as unpersuasive.

11   The Court acknowledges that some of the alleged events giving rise to Plaintiff's amended complaint in his state-court action are referenced among the allegations giving rise to the third claim of Plaintiff's Amended Complaint in this action. (Dkt. No. 12, at ¶ 23.)

12   Plaintiff does not allege in his Amended Complaint that, before filing this action, he satisfied the condition precedent required by N.Y. Gen. Mun. Law § 50–h. (*See generally* Dkt. No. 12.) However, Defendants do not appear to assert that argument in their memoranda of law, and the Court is wary of evaluating it *sua sponte.* (*See generally* Dkt. Nos. 19, 24.)

13   *See also Place v. Ciccotelli*, 121 A.D.3d 1378, 995 N.Y.S.2d 348, 352 (N.Y. App. Div., 3d Dep't 2014) ("Here, plaintiff's allegations in the complaint pertaining to this cause of action, even construed liberally, fail to allege that defendant actually used process improperly—either the order of protection or the arrest *warrant*—in a manner inconsistent with the purpose for which it was designed ....") (internal quotation marks and citations omitted; emphasis added); *Miles v. City of Hartford,* 445 F. App'x 379, 383 (2d Cir. 2011) ("We assume *arguendo* that the filing of documents to obtain Miles's arrest warrant constituted the initiation of judicial process."); *Leibovitz v. City of New York*, 14-CV-3297, 2016 WL 3671232, at *7 (S.D.N.Y. March 17, 2016) ("The arrest warrant that Detective Valle procured was employed for the very purpose of its filing, namely the plaintiff's arrest for criminal contempt in the second degree and aggravated harassment in the second degree.") (internal quotation marks omitted), *adopted,* 2016 WL 3661530 (S.D.N.Y. June 1, 2016).

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.   12